UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
---------------------------x
RALPH DEMMICK, on behalf of  :
himself and all others simi-
larly situated; DONALD BARTH, 
on behalf of himself and all 
others similarly situated,   :

              Plaintiffs,    :

v.                           :

CELLCO PARTNERSHIP, a Dela-  :
ware General Partnership doing
business as Verizon Wireless;
and DOES 1 through 10,       :

              Defendants.    :
---------------------------x
```

Civil Action No. 2:06-cv-2163

Honorable José L. Linares
Honorable Claire C. Cecchi

(Electronically Filed)

Date for Argument:

October 23, 2006

---

PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS THE COMPLAINT

---

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
One Gateway Center
Newark, New Jersey 07102-5386
Tel: (973) 621-9020
Fax: (973) 621-7406

and

Robert A. Curtis, Esq.
FOLEY BEZEK BEHLE & CURTIS LLP
15 West Carrillo Street
Santa Barbara, California 93101
Tel: (805) 962-9495
Fax: (805) 962-0072

and

J. Paul Gignac, Esq.
ARIAS OZZELLO & GIGNAC LLP
4050 Calle Real, Suite 130
Santa Barbara, California 93110
Tel: (805) 683-7400
Fax: (805) 683-7401

Attorneys for Plaintiffs

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . ii

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . 3

     A.   Plaintiff Demmick's Family SharePlan . . . . . . 4

     B.   Plaintiff Barth's Family SharePlan . . . . . . . 5

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 8

     A.   Verizon Wireless Has Not Met Its Burden With Respect
          to Its Alleged "Disclosure" Defense . . . . . . . 8

          1.   The Marketing Brochure Is Not Part Of The
               Contract As A Matter of Law . . . . . . . . 9

          2.   Serious Doubt Exists As To The Meaning, And
               Therefore Any Legal Effect, Of The Allowance
               Minutes Disclosure . . . . . . . . . . . . 11

     B.   Verizon Wireless Has Not Met Its Burden With Respect
          To Its Argument That Plaintiff Barth's Claim Is
          Moot . . . . . . . . . . . . . . . . . . . . . . 15

          1.   As A Threshold Matter, The Supposed Relief
               Extended To Barth Was Not Complete As Required
               By The Mootness Doctrine . . . . . . . . . . 16

          2.   Even If The Defendants Had Provided Barth With
               Complete Individual Relief Prior To Class
               Certification, U.S. Supreme Court Precedent
               and *Weiss v. Regal Collections* Preclude A
               Finding Of Mootness . . . . . . . . . . . . 18

          3.   *Weiss v. Regal Collections*, Not *Lusardi v.
               Xerox Corp., Is Directly Applicable* . . . . . 20

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . 21

i

## TABLE OF AUTHORITIES

**Cases Cited**                                                         **Page**

*Caldwell v. KFC Corp.,*
    958 F.Supp. 962 (D.N.J. 1997) . . . . . . . . . . . . 10

*Comer v. Cisneros,*
    37 F.3d 775 (2d Cir. 1994) . . . . . . . . . . . . . . 20

*Conley v. Gibson,*
    355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . 8,15

*County of Los Angeles v. Davis,*
    440 U.S. 625 (1979) . . . . . . . . . . . . . . . . . 16

*Deposit Guaranty National Bank v. Roper,*
    445 U.S. 326 (1980) . . . . . . . . . . . . . . . 18,19,21

*Driscoll Constr. Co. v. N.J. Dept. Transp.,*
    371 N.J.Super. 304 (App. Div. 2004) . . . . . . . . . 14

*Hakimoglu v. Trump Taj Mahal Assocs.,*
    876 F.Supp. 625 (D.N.J. 1994), *aff'd,* 70 F.3d 291
    (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . 8,15

*In re Estate of Miller,*
    90 N.J. 210 (1982) . . . . . . . . . . . . . . . . . . 14

*Lusardi v. Xerox Corp.,*
    975 F.2d 964 (3d Cir. 1992) . . . . . . . . . . . . . 20,21

*Mercedes-Benz Credit Corp. v. Lotito,*
    306 N.J.Super. 25 (App. Div. 1997) . . . . . . . . . . 10

*Rudbart v. North N.J. Dist. Water Supply Comm'n.,*
    127 N.J. 344 (1992) . . . . . . . . . . . . . . . . . 10

*Tamarind Resort Assocs. v. Govt. of the Virgin Islands,*
    138 F.3d 107 (3d Cir. 1998) . . . . . . . . . . . . . 14

*Unico v. Owen,*
    50 N.J. 101 (1967) . . . . . . . . . . . . . . . . . . 10

*United States Parole Commission v. Geraghty,*
    445 U.S. 388 (1980) . . . . . . . . . . . . . . . . . 18,19

*Weiss v. Regal Collections,*
    385 F.3d 337 (3d Cir. 2004) . . . . . . . . . . . . . 15-22

*Zacarias v. Allstate Ins. Co.,*
     168 N.J. 590 (2001) . . . . . . . . . . . . . . . . . 10,12

**Constitutional Provisions, Statutes and Rules**

<u>U.S. Const</u>. Art. III § 2 . . . . . . . . . . . . . . . . . . 16

15 U.S.C. § 1692 . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . 17

Federal Rule of Civil Procedure 12(b)(1) . . . . . . . . . . 21

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . 8,9,15

Federal Rule of Civil Procedure 68 . . . . . . . . . . . . 19

## I.   <u>INTRODUCTION</u>

In its Motion to Dismiss, defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless" or "Defendant") launches two separate attacks on the Complaint filed by plaintiffs Ralph Demmick and Donald Barth (collectively, "Plaintiffs"). First, Verizon Wireless attempts to defend its deceptive billing practices by relying on a purported "disclosure" (the "Allowance Minutes Disclosure") that was inconspicuously buried in certain marketing materials allegedly given to its customers at the point-of-sale. Second, Verizon Wireless argues that plaintiff Barth's claims are moot because it issued him a $405.90 credit, after the lawsuit was filed and just a few days before it filed this very motion. Unfortunately for Verizon Wireless, neither of these attacks carries the day.

With respect to the "disclosure" argument, the undisclosed and deceptive billing practice of Verizon Wireless (billing all additional per minute charges incurred on Family SharePlans at the higher per minute rate associated with the secondary phones --- even if the calls were placed from or received by the primary phone) appears to be a carefully crafted fraud.

The fraud begins with the language used in the Allowance Minutes Disclosure. <u>See</u> text at p. 12, <u>infra.</u>  A plain reading of that language demonstrates that the disclosure is incomplete, inaccurate, misleading and, most importantly, inapplicable on its face to the wrongful conduct alleged in the Complaint. The Allowance Minutes Disclosure is clearly limited to "Allowance

Minutes," and does not purport to cover "additional" or "overage" minutes. This gives unwary consumers the false impression that minutes used after exhaustion of one's "Allowance Minutes" will be billed to the phone that placed or received the call. However, this is not the case. Instead, under Verizon Wireless' deceptive billing methodology, minutes used after exhaustion of one's "Allowance Minutes" are always billed at the higher per minute rate associated with the secondary phones --- even if the calls were placed from or received by the primary phone. The fraud culminates with the choice of placement of the Allowance Minutes Disclosure --- namely, burying it in a supplemental marketing document called the Calling Plan Brochure. This document is not contractual in nature, and Verizon Wireless has not demonstrated that it was delivered to its customers at the time of formation of the contract between the parties.

With regard to Verizon Wireless' alleged mootness argument, it is axiomatic that a defendant cannot derail a class action simply by paying off the class representative's individual claim after the institution of a lawsuit. To allow such behavior would render the class action device meaningless, since any savvy defendant would simply return the hundreds or even thousands of dollars due to the class representative rather than face a potential liability of hundreds of thousands or even millions to the entire class.

2

Therefore, for the reasons stated herein, Plaintiffs respectfully request that this Court deny Verizon Wireless' Motion to Dismiss in its entirety.

## II. **FACTUAL BACKGROUND**

Defendant is in the business of marketing and selling wireless telecommunication products, including cellular telephones, accessories and service. Plaintiffs have brought this consumer class action against Defendant for, *inter alia,* violations of federal law, New Jersey and Maryland state law and common law arising out of the unfair, deceptive and misleading billing practices engaged in by Defendant. Specifically, Plaintiffs allege that Defendant has perpetrated a scheme whereby it: (1) misapplies customers' usage of "included minutes" and "additional minutes" and, as a result, assesses excess "additional per minute charges"; (2) fails to disclose to customers that all additional per minute charges incurred on "Family Share Plans" will be charged at the higher per minute rate associated with the secondary phones --- even if the calls were placed from or received by the primary phone; and (3) fails to properly credit and account for "In-Network" calling (calls between two Verizon Wireless cellular telephones). Complaint, ¶ 2.

A.  <u>**Plaintiff Demmick's Family SharePlan**</u>[1]

In or about July 2004, plaintiff Demmick, a Maryland resident, contracted with Defendant for wireless telephone service. Demmick selected a "Family SharePlan" ("Demmick's Plan"), which included a "bucket" of 3,000 "Shared Monthly Home Airtime Allowance Minutes" ("allowance minutes") allocated among one primary phone and three secondary phones. Defendant agreed to provide these services for a flat monthly charge of $149.99 plus $20.00 per month for each of the three secondary phones. Demmick's Plan also included certain features and promotions, such as "unlimited shared night and weekend minutes" and "In-Network calling," which allows each phone to make unlimited calls to other Verizon Wireless "In-Network calling" customers.

Demmick's Plan further provided that if the four cellular, phones covered by Demmick's Plan used, in the aggregate, more than the allotted 3,000 minutes during any given month, certain "additional per minute" charges or "overage" charges would apply. Under Demmick's Plan, the additional per minute charge varied according to which phone made or received the excess calls. Specifically, once the four phones collectively exhausted a given month's bucket of 3,000 shared allowance minutes, Verizon Wireless agreed to assess $.25 for each additional minute of calls made from or received by the primary phone for the remainder of the month. Likewise, after the four phones utilized

---

[1]  Complaint, ¶¶ 5, 12-17.

4

the monthly shared 3,000-minute allotment, Verizon Wireless agreed to assess overage charges of $.45 per minute for calls made from or received by each secondary phone for the remainder of the month.

However, Defendant Verizon Wireless did not bill plaintiff Demmick in accordance with the plain language of his Family SharePlan. Instead, Defendant engaged in an undisclosed practice and policy[2] of applying all additional minutes to the secondary phones and therefore consistently charging the more expensive $.45 per minute overage fee. In other words, under Defendant's billing scheme, all additional usage is applied only to the secondary phones and billed at the higher additional per minute charge applicable to those secondary phones - regardless of which phone was used to incur the additional minutes.

### B.   **Plaintiff Barth's Family SharePlan[3]**

In or about February 2004, plaintiff Barth, a New Jersey resident, contracted with Defendant for wireless telephone service. Barth selected a "Family SharePlan" ("Barth's Plan"), which included a "bucket" of 1,600 "Shared Monthly Home Airtime

---

[2]  Defendant touts a four-line statement buried in a Family SharePlan marketing pamphlet as a "disclosure" of its surreptitious billing practice and policy. However, as outlined in more detail below, this alleged Allowance Minutes Disclosure: 1) is not properly incorporated into the wireless service contract, and 2) on its face, is limited only to "allowance minutes," and does not refer to "additional per minute" or "overage" use.

[3]  Complaint, ¶¶ 6, 18-24.

Allowance Minutes" ("allowance minutes") allocated among one primary phone and two secondary phones. Defendant agreed to provide these services for a flat monthly charge of $99.99 plus $20.00 per month for each of the two secondary phones. Barth's Plan also included certain features and promotions, such as "unlimited shared night and weekend minutes" and "In-Network calling," which allowed at least the primary phone to make unlimited calls to other Verizon Wireless customers.

Like Demmick's Plan, Barth's Plan further indicated that certain "additional per minute" charges or "overage" charges would apply if the three phones covered by Barth's Plan used, in the aggregate, more than the allotted 1,600 monthly minutes. Again, the additional per minute charge varied according to which phone made or received the excess calls. Specifically, once the three phones collectively exhausted a given month's bucket of 1,600 shared allowance minutes, Verizon Wireless agreed to assess $.25 for each additional minute of calls made from or received by the primary phone for the remainder of the month. Likewise, after the three phones consumed the monthly shared 1,600-minute allotment, Verizon Wireless agreed to assess overage charges of $.45 per minute for calls made from or received by each secondary phone for the remainder of the month.

As explained above in the discussion of Demmick's Plan, Defendant did not bill Barth in accordance with the plain language of Barth's Plan.  Instead, Defendant billed all

6

additional usage to the more expensive secondary phones.  In other words, under Defendant's undisclosed and deceptive billing scheme,[4] all additional usage is applied only to the secondary phones and billed at the higher additional per minute charge applicable to those secondary phones, even when the primary phone was used to incur the additional minutes.

In addition, Barth has been wrongfully charged for services that Verizon Wireless contracted to provide him free of charge in connection with his Family SharePlan. First, Barth has been improperly billed for Verizon Wireless "In-Network" calling on his primary phone, even though Defendant concedes that Barth's Plan clearly states that his primary phone can make or receive unlimited "In-Network" calls at no additional charge. Defendant's Memorandum of Law at 7.  Second, Barth has been improperly charged for calls between his primary and secondary phones despite the fact that his Plan expressly provides for unlimited "In-Family" calling. *Id.* Not only has Defendant assessed these illegitimate charges at a rate as high as $.45 per minute, Defendant also has counted what should have been free "In-Network" and "In-Family" calls against Barth's shared monthly allotment of 1,600 minutes!  In sum, Verizon Wireless has imposed

---

[4] As described in Footnote 2, *supra,* despite Defendant's contentions, the purported Allowance Minutes Disclosure in a Family SharePlan advertisement brochure was not part of the wireless service contract, and certainly did not provide the wireless consumer with fair and adequate disclosure regarding Verizon Wireless' "additional per minute" or "overage" billing practices.

upon Barth outrageous additional charges for services that
Verizon Wireless specifically agreed to provide at no additional
charge.[5]

### III.  <u>ARGUMENT</u>

### A.   Verizon Wireless Has Not Met Its Burden With Respect to <u>Its Alleged "Disclosure" Defense</u>

When considering a motion to dismiss under Federal Rule of
Civil Procedure 12(b)(6) "for failure to state a claim upon which
relief can be granted," the reviewing court must accept all
well-pleaded allegations in the complaint as true and view them
in the light most favorable to the plaintiff." *Hakimoglu v. Trump
Taj Mahal Assocs.,* 876 F.Supp. 625, 628 (D.N.J. 1994), *aff'd,* 70
F.3d 291 (3d Cir. 1995).  The defendant bears a heavy burden
under Rule 12(b)(6), because the plaintiff's complaint should not
be dismissed "unless it appears *beyond doubt* that the plaintiff
can prove no set of facts in support of his claim which would
entitle him to relief." *Id.* (quoting *Conley v. Gibson,* 355 U.S.
41, 45-46 (1957))(emphasis added). In contrast, to withstand a
defendant's Rule 12(b)(6) motion, "it is not necessary for the
plaintiff to plead evidence" or to even "plead the facts that
serve as the basis for the claim." *Id.* at 628-629. Instead, the
plaintiff's pleadings need only provide the defendant with "fair

---

[5]  Verizon Wireless now claims that Barth's "In-Network" and
"In-Family" claims are "moot" because, *after* being contacted by
Barth and/or his representative and *after* initiation of this
lawsuit, it issued certain credits to Barth's account. However,
as discussed herein, binding Third Circuit precedent demonstrates
that these token credits do not moot Barth's claims or those of
the class that he seeks to represent.

notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (citations omitted).

Plaintiffs' pleadings satisfy the procedural requirements outlined above, and Verizon Wireless' motion cannot defeat Plaintiffs' well-pleaded allegations.   Specifically, Verizon Wireless' motion hinges on two faulty premises: (1) that the Calling Plan Brochure is properly part of the contract with Plaintiffs; and (2) that the Calling Plan Brochure unambiguously discloses Verizon Wireless' deceptive billing methodology. As discussed more fully below, Verizon Wireless is wrong on both counts and therefore cannot meet its heavy burden on this Rule 12(b)(6) motion.

## 1.   The Marketing Brochure Is Not Part Of The Contract As A Matter of Law

Verizon Wireless did not require its customers to sign any document which contains the alleged Allowance Minutes Disclosure. Instead, Verizon Wireless relies on a marketing brochure allegedly given to customers at the point-of-sale as the basis for its disclosure "defense." Thus, in addition to imposing upon its customers a Customer Agreement filled with fine-print terms and obligations, Verizon Wireless apparently seeks to bind its unsuspecting customers to the additional terms and conditions contained in a generic marketing pamphlet that may or may not be given to its customers at the point-of-sale.  While these pamphlets appear to the reasonable consumer to be nothing more than an advertisement, Verizon Wireless surreptitiously inserts ambiguous, one-sided terms and conditions into these pamphlets in

9

order to claim later that the unsuspecting consumer is bound by them.

Wireless service agreements, such as the Customer Agreement entered into by Plaintiffs with Verizon Wireless, are contracts of adhesion. Verizon Wireless' Customer Agreement is a "standardized printed form" presented to Plaintiffs and other consumers on a "take-it-or-leave-it basis." *Rudbart v. North N.J. Dist. Water Supply Comm'n.,* 127 N.J. 344, 353 (1992). Plaintiffs had no opportunity to negotiate the terms of their contracts. *Id.*

When analyzing adhesion contracts such as insurance policies or the contract at issue here, "special rules of interpretation" apply. *Zacarias v. Allstate Ins. Co.,* 168 N.J. 590, 595 (2001)(quotations and citations omitted); *see also Mercedes-Benz Credit Corp. v. Lotito,* 306 N.J.Super. 25, 31 (App. Div. 1997) (citing *Unico v. Owen,* 50 N.J. 101, 110, 112 (1967))(due to inequality in "economic and bargaining power," along with a commercial entity's "greater expertise" and "ability to write adhesion contracts that unduly favo[r]" it, courts should give "special scrutiny" to contracts involving a typical consumer and a commercial entity). Indeed, this Court should "interpret the contract to comport with the reasonable expectations of the [ordinary, reasonable adhering party], even if a close reading of the written text reveals a contrary meaning." *Zacarias,* 168 N.J. at 595 (citation omitted). This "fundamental rule of interpretation, known as the doctrine of reasonable expectations, has long been a part" of New Jersey law. *Id. Accord: Caldwell v. KFC Corp.,* 958 F.Supp. 962, 974 (D.N.J. 1997) (Irenas, J.).

10

Applying the doctrine of reasonable expectations to Plaintiffs' case, it is evident that the Calling Plan Brochure cannot be considered contractual in nature. Rather, to the objective, reasonable consumer, the Calling Plan Brochure appears to be nothing more than a marketing ploy. Instead of being a plan-specific document, it contains "limited-time promotional offer[s]" and information about *multiple* calling plans - not just information about *"Your* Calling Plan," as described in the alleged incorporation provision. July 20, 2006 Declaration of Daniel Malutich ("Malutich Decl."), Exhs. B, E (emphasis added). Moreover, approximately three paragraphs above the so-called Allowance Minutes Disclosure, the pamphlet instructs customers to "refer to the Customer Agreement" for more information and indicates that "[s]ervice is subject to the *Customer Agreement."* Malutich Decl., Exhs. B, E (emphasis added). This directive reinforces the reasonable consumer's impression that the pamphlet merely contains promotional propaganda while a separate document, appropriately entitled the Customer Agreement, contains the contractual obligations governing wireless service. Thus, the Allowance Minutes Disclosure cannot properly be considered part of Plaintiffs' contractual agreements with Defendant.

> **2.  Serious Doubt Exists As To The Meaning, And Therefore Any Legal Effect, Of The Allowance Minutes Disclosure**

Verizon Wireless relies on the following language from the Allowance Minutes Disclosure to argue that its billing methodology (billing all additional per-minute charges incurred on Family SharePlans at the higher per-minute rate associated

11

with the secondary phones - even if the calls were placed from or
received by the primary phone) is unambiguously described and
authorized:

> . . . Monthly Home Airtime Allowance Minutes apply to
> the primary line first at the end ofthe billing cycle.
> If there are allowance minutes remaining, they will be
> applied to the additional line(s) with the highest
> usage.

For several reasons, this disclosure is legally insufficient
to authorize Verizon Wireless' deceptive billing practice.[6]

*First,* the Allowance Minutes Disclosure is plainly limited
to "Allowance Minutes" and does not even purport to apply to the
"additional" or "overage" minutes that are the basis of
Plaintiffs' complaint. This clause, which Verizon Wireless would
have this Court apply to typical, individual consumers, should be
interpreted in accordance with the typical consumer's objective
understanding. *Zacarias,* 168 N.J. at 595 (2001) (citations
omitted). The doctrine of reasonable expectations applies even if
the objectively reasonable expectation of the typical consumer
contradicts Verizon Wireless' contractual intent or differs from
the Court's understanding of the contract, because this short
clause - buried in the back of a marketing pamphlet that has no
contractual significance - "contains hidden pitfalls, cannot be
understood without employing subtle or legalistic distinctions,
is obscured by fine print, [and] requires strenuous study to
comprehend." *Id.* at 595, 601 (citations omitted).

---

[6] As shown in Section III(A)(1), *supra,* this alleged
disclosure does not constitute part of the wireless service
contract between Plaintiffs and Defendant.

In this case, in fact, an additional document just produced by Verizon Wireless in discovery confirms that the consumer's reasonable billing expectation would be precisely the opposite of what Verizon Wireless claims it "disclosed."  In what appears to be a two-sided card entitled "Family SharePlan Frequently Asked Questions" that Verizon Wireless presumably distributed to consumers at the point-of-sale (it begins "Congratulations on your Family SharePlan purchase!"), Verizon Wireless provided the following question and answer:

> **"What's the per-minute charge if I go over my monthly anytime minutes allowance?**
>
> **Once the monthly** home airtime anytime minutes allowance is depleted, the primary line's home airtime per-minute rate applies <u>for minutes used for the primary line</u>. Each additional line's per-minute rate is 45¢.  Please see your Calling Plan brochure for more details."

Document VM 001799, attached as part of Exhibit A to the Declaration of Stephen L. Dreyfuss, Esquire filed herewith (emphasis added).

The only reasonable expectation that any consumer could have after reading this question and answer is that after the shared anytime minutes allowance "bucket" is exhausted, additional calls made from or to the primary line will be billed at the primary line's lower excess minute rate (" . . . the primary line's home airtime per-minute rate applies for minutes used for the primary line.").  Since the relevant documents plainly contradict Verizon Wireless' position that it disclosed that such calls would be billed at the secondary lines' higher per-minute rate, the record before this Court on the present motion is insufficient, to say

13

the least, to support Verizon Wireless' motion seeking dismissal of plaintiffs' claims "[b]ecause plaintiffs' overage minute claims are plainly contradicted by their agreements." Defendant's Memorandum of Law, at 2.

*Second,* at best the Allowance Minutes Disclosure is incomplete and ambiguous with respect to "additional" or "overage" minutes.  The Allowance Minutes Disclosure's language is ambiguous because it is capable of "at least two reasonable alternative interpretations." *Driscoll Constr. Co. v. N.J. Dept. Transp.,* 371 N.J.Super. 304, 318 (App. Div. 2004); *see also Tamarind Resort Assocs. v. Govt. of the Virgin Islands,* 138 F.3d 107, 110-111 (3d Cir. 1998) ("[A] contract is unambiguous if it is reasonably capable of only one construction.").  While the Allowance Minutes Disclosure does indicate how Verizon Wireless intends to apply "Allowance Minutes" if allowance minutes remain, it does not clearly disclose to customers how Verizon Wireless will allocate excess minutes once the "Allowance Minutes" are exhausted. Where a contract is ambiguous, "the writing is strictly construed against the drafter." *Id.; see also In re Estate of Miller,* 90 N.J. 210, 221 (1982).  Moreover, "where there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation, then the doubtful provision should be left to the jury." *Driscoll Construction Co.,* <u>supra</u>, 372 N.J.Super. at 314 (citations omitted).  Moreover, as explained above, at least one of Verizon Wireless' customer disclosures flatly contradicts its actual billing practice and the position it takes in this motion.  <u>See</u> discussion of document VM 001799, <u>supra</u>.

14

In summary, questions remain as to the completeness, accuracy and legal effect of the disclosures. Therefore, because Defendant has not shown "*beyond doubt* that [Plaintiffs] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief," this Court must deny Defendant's Rule 12(b)(6) motion in full. *Hakimoglu,* supra, 876 F.Supp. at 628 (quoting *Conley v. Gibson,* supra, 355 U.S. at 45-46) (emphasis added).

**B.   Verizon Wireless Has Not Met Its Burden With Respect To Its Argument That Plaintiff Barth's Claim Is Moot**

Contrary to Verizon Wireless' rudimentary portrayal of the mootness doctrine, "[t]he question of mootness in the class action context is not a simple one." *Weiss v. Regal Collections,* 385 F.3d 337, 342 (3d Cir. 2004). Verizon Wireless' assertion that plaintiff Barth's claim is moot because it issued certain token credits to his account - *after* being contacted by Barth and/or his representative and *after* the initiation of this lawsuit - grossly ignores binding Third Circuit precedent. Indeed, as discussed in more detail below, *Weiss v. Regal Collections* unequivocally stands for the proposition that an individual offer of relief to a proposed representative plaintiff does not automatically render a putative class action moot --- even if the offer of relief is extended prior to class certification. *Weiss,* 385 F.3d at 346-348. The unreported, non-precedential Eleventh Circuit opinion cited by Verizon Wireless in a feeble attempt to counter the binding authority of *Weiss* obviously cannot defeat Third Circuit precedent in this

15

Court's consideration of the matter. Therefore, because Barth has presented a live "case or controversy" to this Court and because he possesses a "legally cognizable interest in the outcome," this Court may, and therefore must, properly exercise subject matter jurisdiction over plaintiff Barth's claims. U.S. Const. Art. III § 2; *Weiss,* 385 F.3d at 340 (citing *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979)).

### 1.   As A Threshold Matter, The Supposed Relief Extended To Barth Was Not Complete As Required By The Mootness Doctrine

Defendants named in a putative class action cannot thwart a proposed class action plaintiff's claims by offering only partial relief or relief limited to the representative plaintiff. *Weiss,* 385 F.3d at 342. The plaintiff in *Weiss* brought a class action complaint against the defendant bill collectors seeking monetary damages, injunctive relief and declaratory relief for alleged violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692. *Weiss,* 385 F.3d at 339. Before the defendants filed an answer and before the plaintiff moved for class certification, the defendants made a Rule 68 offer of judgment to the plaintiff.  This offer provided the maximum monetary compensation allowed under the FDCPA to the plaintiff, but provided no relief to the putative class. *Id.*  After the plaintiff rejected the offer, the defendants argued that plaintiff's claims were moot, and a former Judge of this Court granted the defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on mootness. *Id.* at 340.

16

In reversing the district court's dismissal, the Third
Circuit found that the Rule 68 offer had provided the plaintiff
with all the relief individually available to him because the
FDCPA statutorily grants only monetary damages to private
litigants - not injunctive or declaratory relief. *Id.* at 342.
This finding would seemingly have destroyed the plaintiff's
appeal, since "[a]n offer of complete relief" generally moots a
plaintiff's claim because "at that point the plaintiff retains no
personal interest in the outcome of the litigation." *Id.* at 340
(citations omitted). Significantly, however, the Third Circuit
held that the mootness analysis did not end there. Although the
individual plaintiff was offered complete relief, mootness must
be addressed in light of the fact that the relief extended "did
not provide the maximum damages to the putative class." *Id.* at
342.

As in *Weiss,* the so-called "relief" extended by Verizon
Wireless to Barth does not automatically render Barth's case
moot. *First,* under *Weiss,* Verizon Wireless' attempted payoff of
Barth did not silence his interest in this litigation because it
was not complete. Specifically, though Verizon Wireless purports
to have made Barth financially whole through credits to his
account for improperly billed In-Network and In-Family calls (and
the interest thereon), Barth also has sought declaratory relief
pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et
seq.*  Unlike the plaintiff in *Weiss,* Barth faces no statutory bar
to declaratory relief.  Mere credits to Barth's account cannot
provide him with this requested remedy.  *Second,* even if this

17

Court finds that Verizon Wireless' issuance of credits to Barth satisfied Barth's personal interests in the litigation, the mootness analysis does not end there.  As per *Weiss,* this Court must consider the mootness analysis in light of the fact that simply crediting Barth's personal account does "not provide the maximum damages to the putative class." *Weiss,* 385 F.3d at 342.

> **2.    Even If The Defendants Had Provided Barth With Complete Individual Relief Prior To Class Certification, U.S. Supreme Court Precedent and *Weiss v. Regal Collections* Preclude A Finding Of Mootness**

In both *United States Parole Commission v. Geraghty,* 445 U.S. 388 (1980), and *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326 (1980), the U.S. Supreme Court "permitted a named plaintiff whose individual claims were mooted to appeal a denial of class certification." *Weiss,* 385 F.3d at 342. The *Weiss* Court indicated that, under *Geraghty,* even if a purported class representative's personal claim becomes moot through the passage of time, the plaintiff maintains a "'personal stake' in the class certification decision" because he has a "procedural . . right to represent a class." *Id.* at 343 (quoting *Geraghty,* 445 U.S. at 402, 404). Likewise, the *Weiss* Court cited *Roper* for the proposition that "'[r]equiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; . . .[and] would invite [the] waste of judicial resources.'" *Id.* at 343 (quoting *Roper,* 445 U.S. at 339).

18

Unlike the plaintiffs in *Geraghty* and *Roper,* the plaintiff
in *Weiss* had not yet filed a class certification motion.
Nevertheless, despite this difference in procedural posture, the
*Weiss* Court found the principles set forth in *Geraghty* and *Roper*
to be directly relevant and controlling. The *Weiss* Court
concluded that the Rule 68 offer could not terminate the
plaintiff's class action because allowing the defendants to "pick
off" the plaintiff "with an offer of judgment less than two
months after the complaint [was] filed" would "undercut the
viability of the class action procedure." *Id.* at 344.

Like the defendants in *Weiss* who tried to "pick off" the
plaintiff, Verizon Wireless has tried to "pick off" Barth by
crediting his account in an amount that allegedly compensates him
for erroneous In-Network and In-Family billing plus interest.
Verizon Wireless did not provide the first installment of credit
until *after* being contacted by Mr. Barth and/or his
representative in or around February 2006, and did not provide
the remainder of the credit until on or about July 19, 2006 ---
more than two months *after* Mr. Barth filed his lawsuit on May 11,
2006. Also, only a court can make Mr. Barth whole by awarding the
declaratory relief that he seeks under the Declaratory Judgment
Act. Thus, this Court should not grant Verizon Wireless' motion
to dismiss Barth's claims because doing so would effectively
allow Verizon Wireless to "pick off" a putative class
representative.

Moreover, where a putative class representative's individual
controversy becomes moot "before the district court can

19

reasonably be expected to rule on a certification motion," the certification motion may be characterized as "relat[ing] back" to the "filing of the complaint." *Weiss,* 385 F.3d at 346 (quoting *Sosna v. Iowa,* 419 U.S. 393, 402 n.11 (1975). This "relation back" principle precludes a finding of mootness where, as here, the plaintiff's claims are "'acutely susceptible to mootness' in light of defendants' tactic of 'picking off' lead plaintiffs" with an offer of relief to "avoid a class action." *Id.* at 347 (quoting *Comer v. Cisneros,* 37 F.3d 775, 797 (2d Cir. 1994)). The *Weiss* Court held that, "absent undue delay in filing a motion for class certification," where a defendant makes an offer to an individual plaintiff "that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of the class complaint." *Id.* at 348.

Similar to the defendants in *Weiss* who made a Rule 68 offer approximately six weeks after the plaintiff filed his class action complaint, Verizon Wireless provided Barth with individual "relief" before Barth had the opportunity to file a class certification motion and before this Court had a reasonable opportunity to review such a motion. This fact requires application of the *Weiss* "relation back" doctrine, and therefore defeats Verizon Wireless' Motion to Dismiss on mootness grounds.

### 3. *Weiss v. Regal Collections*, Not *Lusardi v. Xerox Corp., Is Directly Applicable*

Verizon Wireless relies on *Lusardi v. Xerox Corp.,* 975 F.2d 964 (3d Cir. 1992), in an effort to distance this case from the

principles set forth in *Weiss*. However, *Weiss* - not *Lusardi* - is
the governing and dispositive authority here. In *Lusardi,* the
purported class had been decertified before the plaintiffs'
voluntary settlement with the defendants.  *See Weiss,* 385 F.3d at
349 (citing *Lusardi,* 975 F.2d at 979). Like the plaintiff in
*Weiss,* however, Barth had not yet filed a class certification
motion when Verizon Wireless attempted to pay off his claims.
Barth's case clearly requires application of the "picking off"
principles detailed in *Roper,* and subsequently in *Weiss,* since
Verizon Wireless credited Barth's account "to thwart [his]
putative class action before the certification question could be
decided." *Weiss,* 385 F.3d at 349. Therefore, this Court should
follow the principles explained in *Weiss* and deny Verizon
Wireless' Rule 12(b)(1) motion.

## IV. <u>CONCLUSION</u>

Verizon Wireless cannot rely on its alleged Allowance
Minutes Disclosure to defeat Plaintiffs' well-pleaded class
action complaint, because (1) this purported "disclosure" was not
properly incorporated into Plaintiffs' Customer Agreement, and
(2) the meaning and any legal effect of this supposed
"disclosure" are unclear and highly doubtful, and in any event,
it does not address or accurately disclose the Verizon Wireless
billing practices as to excess minutes of which Plaintiffs
complain here.

Additionally, despite Defendant's oversimplified depiction
of mootness concepts based on a non-precedential, unreported
Eleventh Circuit opinion, binding Third Circuit precedent (as

21

found in *Weiss, supra)* precludes a finding of mootness with respect to plaintiff Barth.  Even if this Court considered the "relief" offered Barth to be complete, Verizon Wireless cannot properly "pick off" prospective class action plaintiffs one by one to avoid liability for its unlawful business practices.

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion to Dismiss the Complaint be in all respects denied.

Dated:    October 4, 2006

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP


By: /s/ Stephen L. Dreyfuss
        STEPHEN L. DREYFUSS
        A Member of the Firm

            and

Robert A. Curtis, Esq.
FOLEY BEZEK BEHLE & CURTIS LLP
15 West Carrillo Street
Santa Barbara, California 93101
Tel: (805) 962-9495
Fax: (805) 962-0072

            and

J. Paul Gignac, Esq.
ARIAS OZZELLO & GIGNAC LLP
4050 Calle Real, Suite 130
Santa Barbara, California 93110
Tel: (805) 683-7400
Fax: (805) 683-7401

Attorneys for Plaintiffs