NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RALPH DEMMICK, et al., | Civil Action No.: 06-2163 (JLL) |
| Plaintiffs, | **OPINION** |
| v. | |
| CELLCO PARTNERSHIP, et al., | |
| Defendants. | |

**LINARES, District Judge.**

This matter comes before the Court on a motion for class certification filed by Plaintiffs Ralph Demmick and Donald Barth ("Plaintiffs"). Plaintiffs now seek class certification for the following causes of action: violations of the consumer protection statutes of New Jersey and Maryland; common law fraud; breach of contract; violation of the Federal Communications Act ("FCA") § 201, and declaratory judgment. Plaintiffs assert these claims on behalf of two different proposed classes: an Overage Minutes Class and an In-Network/In-Family Class. Plaintiffs' motion is opposed by Defendant Cellco Partnership, a Delaware General Partnership doing business as Verizon Wireless ("Verizon"). On May 26, 2010, this Court heard oral argument on Plaintiffs' motion. The Court has considered all of the parties' submissions and the arguments made at the May 26 hearing. For the reasons set forth below, the Court grants in part and denies in part Plaintiffs' motion for class certification.

## I.      BACKGROUND

On May 11, 2006, Plaintiffs, on behalf of themselves and all others similarly situated, filed a class action Complaint against Verizon. Plaintiffs filed a Second Amended Complaint on

March 27, 2008.  In the amendment, Plaintiffs allege that on or around July 2004, Mr. Demmick,

a Maryland resident, "contracted with [Verizon] for a wireless telephone service Family Share

Plan ["FSP"]."  (Second Am. Compl. [hereinafter "Am. Compl."] ¶¶ 5, 12)  Mr. Demmick's FSP

"included a 'bucket' of 3,000 general minutes that were to be shared among one primary phone

and three secondary phones, for a flat monthly charge of $149.99 plus [an additional] $20.00 per

month for each of the three secondary phones." (Id. at ¶ 12.)  His plan also included free "In-

Network calling."  (Id. at ¶¶ 12, 18.)  With respect to Mr. Barth, a New Jersey resident, the

amended complaint alleges that on or about February 2004, he also "contracted with [Verizon]

for a wireless telephone service [FSP]."  (Id. at ¶¶ 6, 19.)  Mr. Barth's FSP "included a 'bucket'

of 1,600 general minutes that were to be shared among one primary phone and two secondary

phones, for a flat monthly charge of $99.99 plus [an additional] $20.00 per month for each of the

two secondary phones."  (Id. at ¶ 19.)   The FSPs at issue in this case included a provision that

stated that the monthly allowance minutes would be apply to the primary line first at the end of

the month.  (See Def.'s Br. in Opp'n to Pls.' Mot. for Class Cert. [hereinafter "Def.'s Opp'n"],

Ex. A (Calling plan materials).)

　　　　According to Plaintiffs, their respective Verizon FSPs provided that an "additional per

minute charge" would apply for any minutes incurred "after allowance."  (Am. Compl. ¶¶ 13, 20;

see also Def.'s Opp'n, Ex. A (Calling plan materials), at VM 1830.)  Overage minutes, those

"after allowance," were to be charged, for both Mr. Demmick's and Mr. Barth's FSPs, at a rate

of .25¢ per minute for the primary phone and .45¢ per minute for any secondary phones. (Am.

Compl. ¶¶ 13, 20.)  Plaintiffs allege that, as a result of an undisclosed billing practice, Verizon

assessed them additional per minute charges "in excess of what they should have been charged[,]

and [that they] have been damaged thereby." (Id. at ¶¶ 23-24.)  They argue that overage minutes

"after allowance" were to be determined on a real-time basis. They argue that a contrary meaning negates the "sharing" term of the FSPs. Additionally, Plaintiffs allege that Mr. Demmick "has been wrongfully charged [for] 'In-Network' calling." (<u>Id.</u> at ¶ 18.) Plaintiffs presently move to certify two classes for all claims asserted in the Amended Complaint: an Overage Minutes Class and an In-Network/In-Family Class.

## II.   CLASS CERTIFICATION REQUIREMENTS

"Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." <u>In re Hydrogen Peroxide Antitrust Litigation</u>, 552 F.3d 305, 309 (3d Cir. 2008) (quoting <u>Gen Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 161(1982)). To meet the prerequisites of Rule 23, a plaintiff must establish both that the four requirements of Rule 23(a) have been met–numerosity, commonality, typicality, and adequacy–and that the pleading requirements of Rule 23(b)(1), (2), or (3) have been met. Fed. R. Civ. P. 23; <u>see also</u> <u>Hydrogen Peroxide</u>, 552 F.3d at 309 n.6. The plaintiff bears this burden by a preponderance of the evidence. <u>Hydrogen Peroxide</u>, 552 F.3d at 320. Plaintiffs move for class certification under Rule 23(b)(3). Rule 23(b)(3) requires that a plaintiff also establish "that the questions of law or fact common to the class members predominate over any questions affecting only individual members [(predominance)], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [(superiority)]." Fed. R. Civ. P. 23(b)(3); <u>see also</u> <u>Hydrogen Peroxide</u>, 552 F.3d at 310.

In analyzing whether Rule 23's requirements have been met, "the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." <u>Hydrogen Peroxide</u>, 552 F.3d at 307. This is true even if the class certification inquiry overlaps with the merits of the causes of action. <u>Id.</u>

Additionally, if there is any doubt as to whether the Rule 23 requirements have been met,
certification should be denied, regardless of the area of substantive law.  Id. at 321 (discussing
the Rule 23 2003 Amendments).

## III.    Choice of Law

It is undisputed that federal law applies to Plaintiffs' FCA claims.  It also is undisputed
that the FSPs at issue in this case contain a choice of law provision which provides that the FSP
is "governed by the laws of the state encompassing the area code assigned to [the] wireless
phone number, without regard to the conflicts of laws rules of that state."  (Pls.' Br. in Supp. of
Mot. for Class Cert. [hereinafter "Pls.' Br."], at 40-41.)  Because of this provision, Plaintiffs
acknowledge that their breach of contract claims are governed by the law of the state of the area
code assigned to each plaintiffs' wireless number, and that, therefore, only certification of state
classes, one for New Jersey and one for Maryland, is appropriate for the breach of contract
claims.  But, Plaintiffs argue that this provision does not govern their consumer fraud and
common-law fraud claims.  Instead they argue that the choice of law question for these claims
must be determined by reference to New Jersey's most significant relationship test.  They argue
that, using this test, "New Jersey law applies to the claims for violation of the NJCFA and
common-law fraud."  (Id., at 30.)  Verizon, on the other hand, argues that the choice of law
provision in the FSPs does govern Plaintiffs' fraud claims because the claims "stem directly from
[Verizon]'s alleged failure to bill the proposed class members for after-allowance minutes and
in-network calls in the manner set forth in FSP contract materials."  (Def.'s Opp'n, at 16.)  In
other words, Verizon argues that the fraud claims "arise from the contract language."  (Id., at
17.)

In resolving choice of law issues, this Court applies the choice of law analysis of New

Jersey, the state in which the Court sits.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007).  In New Jersey, "effect [is given] to contracting parties' private choice of law clauses unless they conflict with New Jersey public policy."  General Motors Corp. v. New A.C. Chevorlet, Inc., 263 F.3d 296, 331 n.21 (3d Cir. 2001) (citing Instructional Sys., Inc. v. Computer Curriculum Corp., 614 A.2d 124, 133 (N.J. 1992)); see also North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 730 A.2d 843, 847 (N.J. 1999).  Where a contract's choice of law provision is "broad and all-encompassing," the provision "encompasses all tort claims that may arise from the [contract]." Sullivan v. Sovereign Bancorp Inc., 33 F. App'x 640, 642 (3d Cir. 2002) (unpublished); see also Verizon N.J., Inc. v. DMJM Harris, Inc., No. 08-3028, 2009 WL 1283173, at *4 (D.N.J. May 1, 2009) (holding that a contract's forum selection clause applied to tort claims because the claims "stemmed from the performance of the contract itself"); Pro v. Hertz Equip. Rental Corp., No. 06-3830, 2008 WL 5218267, at *5 (D.N.J. Dec. 11, 2008) ("Choice of law clauses that use the language 'governed and construed by' . . . are considered to be broad capturing both contract and tort claims, particularly tort claims that relate to the contract."), amended on other grounds, 2009 WL 1010622 (D.N.J. Feb. 3, 2009); Delany v. Am. Express Co., No. 06-5134, 2007 WL 1420766, at *3, 5 (D.N.J. May 11, 2007) (applying New Jersey law to all of the plaintiff's claims, including fraud claims, where the contract at issue stated that it was "governed by the laws of the state in which it is delivered").  On the other hand, contract provisions which only use the term "construed under" are considered narrower and "*sometimes* [are] limited to contract claims and generally do not apply to tort claims that *arise independent of the contract*."  Hertz Equip, 2008 WL 5218267, at *5 (emphasis added).  In Hertz Equip, the court distinguished between cases where the tort claims "could be decided without consideration of the terms of the

contract at issue" and those where the tort claims are "closely tied to the contract."  Id., at *6.

Plaintiffs argue that, because the choice of law provision in the FSPs only uses the term "governed by" and not "governed by and construed under" state law, the provision is narrow, applying "solely to the claim for breach of contract."  (Pls.' Br., at 41.)   The Court disagrees.  In the cases discussing broad versus narrow provisions, the focus of the discussion is on whether the contract is to be "governed by" a particular law.  See, e.g., Sullivan, 33 F. App'x at 641 ("[T]he parties agreed that Pennsylvania law would *govern* their contract.") (emphasis added). Plaintiffs cite to no case holding that a contract using only the term "governed by" is narrow.  All of Plaintiffs' claims relate to the performance of the FSPs; the factual basis for all of the claims is the same. Additionally, this is not a case where the choice of law provision has no relation to the plaintiffs.  The provision points to the state corresponding to each customer's wireless area code number.  Therefore, the Court finds that both Plaintiffs' breach of contract and fraud claims (common law and consumer fraud) are governed by the law of the state of the area code assigned to each plaintiffs' wireless number.

Even if the fraud claims were not covered by the choice of law provision in the FSPs, this Court would nevertheless find that application of New Jersey law to Plaintiffs' fraud claims is appropriate.  New Jersey's choice of law analysis is a two step process.  First, a court must determine if an actual conflict in law exists among the states.  See P.V. ex rel. T.V. v. Camp Jaycee, 962 A.2d 453, 460 (N.J. 2008); Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006). Once it has been determined that a conflict exists, the court must determine which state has the "most significant relationship" to the claim at issue.  Camp Jaycee, 962 A.2d at 455.  This test is applied "on an issue-by-issue basis" and "is qualitative, not quantitative."  Id. at 460.

Courts applying New Jersey law hold that Section 148 of the Restatement of Conflict of Laws provides the relevant guidance as to which state has the "most significant relationship" to a plaintiff's fraud claims.  See, e.g., Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 462 (D.N.J. 2009); see also Nafar v. Hollywood Tanning Sys., Inc., 339 F. App'x 216, 221 (3d Cir. 2009) (unpublished).  Section 148 provides:

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
>
> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148.  Courts are to evaluate these factors in light of the following principles: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states."  Camp Jaycee, 962 A.2d at 463.

Here, the parties do not dispute that an actual conflict of state laws exists for the fraud claims.  The Court agrees that a conflict exists.  See Agostino, 256 F.R.D. at 464; In re Ford

Motor Co. Ignition Switch Prods. Liab. Litig., 174 F.R.D. 332, 350-51 (D.N.J. 1997); see also

Cooper v. Samsung Elecs. Am., Inc., No. 08-4736, 2010 WL 1220946, at *3 (3d Cir. Mar. 30,

2010) (unpublished); Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc., No. 08-5380,

2010 WL 1424014, at *3 (D.N.J. Apr. 8, 2010).  The parties do dispute which state has the most

significant relationship to Plaintiffs' fraud claims.

 Plaintiffs argue that the most significant relationship test points to application of New

Jersey law because Verizon is headquartered in New Jersey, it developed the nationwide FSP in

New Jersey, and the acts of reliance, using the phones, potentially occurred nationwide.  On the

other hand, Verizon argues that each plaintiff's home state law should be applied to the fraud

claims because the proposed class members received the marketing materials at issue in their

home state, they signed the FSPs in their home states, the contracts had a home state choice of

law provision, and Plaintiffs suffered injury, if at all, in their home state.

 Applying the most significant relationship test under similar circumstances, some district

courts have concluded that it is appropriate to apply New Jersey law nationwide to fraud claims

where the defendant company is headquartered in New Jersey and develops its products and

business strategies in New Jersey.  See, e.g., Elias v. Ungar's Food Products, Inc., 252 F.R.D.

233, 247 (D.N.J. 2008).   But, this Court has declined to do so.  See, e.g., Warma Witter, 2010

WL 1424014, at *4 (holding that Illinois law applied to the fraud claim of an Illinois resident,

who purchased a printer from the defendant in Illinois for use in Illinois despite the fact that the

defendant was headquartered in New Jersey and was alleged to have designed the defect at issue

in New Jersey).   Additionally, in Cooper, the Third Circuit affirmed this Court and held that

New Jersey law was not applicable where the "transaction in question bears no relationship to

New Jersey other than the location of [the defendant's] headquarters."  2010 WL 1220946, at *4.

The Court held that the claims bore the most significant relationship to Arizona, "the state in which the television was marketed, purchased, and used." Id.

Applying the § 148 factors to the facts in this case, this Court concludes, as it did in Cooper and Warma Witter, that Plaintiffs' fraud claims bear the most significant relationship to the state where Plaintiffs contracted for the services, where they primarily used their phones, and where they suffered any injury. An allegation that Verizon is headquartered in New Jersey and designed the FSP in New Jersey in a way that mislead consumers across the nation does not outweigh these other, more significant ties to the proposed class member's home states.

## V.      Overage Minute Class

Plaintiffs assert that all FSPs are sold as calling plans that permit participating family members to "share" a contracted for amount of allowance minutes. For minutes "after" the allowance minutes, the FSPs provide that an overage minute charge applies, 45¢ per minute for secondary lines and between 20¢ and 45¢ for the primary line, depending on the plan chosen. Plaintiffs' overage class claims are based on the allegation that nothing in the FSP contractual documents discloses the way Verizon actually bills for overage minutes. Plaintiffs argue that this undisclosed billing practice is unreasonable and fraudulent, and that it contradicts the terms of the FSPs.

### A.      Class Definition

Plaintiffs propose the following definition for the national Overage Minutes Class:

All residents of the United States of America who used wireless telephone service provided by Defendant between May 11, 2002 and May 10, 2006 under a Family SharePlan covering two or more persons with different additional minute rates for minutes used above the plan allowance, and were assessed additional minute charges at a rate higher than the contractual rate for the phone used to make or receive the calls that caused the additional minute charges to be incurred.

(Notice of Mot. for Class Cert. ¶ 1(A).)  Verizon argues that such a class may not be certified because it is an impermissible fail-safe class.  It argues that a class may not be certified where a determination of the class membership turns on a merits inquiry.  Specifically, Verizon argues that the language "rate higher than the contractual rate" is problematic because it requires this Court to determine that Verizon breached a proposed class member's contract in order to ascertain that the person is part of the class.  (Def.'s Opp'n, at 14 (citing Pastor v. State Farm Mut. Auto. Ins. Co., No. 05-1459, 2005 WL 2453900, at *2-3 (N.D. Ill. Sept. 30, 2005), aff'd 487 F.3d 1042 (7th 2007).)  See also Agostino, 256 F.R.D. at 479.  Plaintiffs disagree that class members are not ascertainable using the current definition without engaging in a merits inquiry.  But, at the May 26 hearing, they asserted that, if the Court agrees with Verizon, the definition simply may be reformed. In their briefs and at the May 26 hearing, Plaintiffs also clarified that the scope of their proposed class is limited to customers who were billed using Verizon's VISION or I2K billing systems, a limitation not reflected in the proposed definition.  (See Pls.' Reply Br. in Supp. of Mot. for Class Cert. [hereinafter "Pls.' Reply"], at 14 n.11; May 26 Hearing Tr. [hereinafter "Hearing Tr."] 12:24-13:18.)

The Court agrees with Verizon that the definition is problematic.  Whether proposed class members were charged more than what was agreed to in the contract is a central issue in this case.  But, because this Court has the discretion to reform a class definition, see Finberg v. Sullivan, 634 F.2d 50, 64 n.9 (3d Cir. 1980), it agrees with Plaintiffs that class certification should not be denied on this basis alone.  Instead, the Court finds that minor reformation of the definition is appropriate.  Therefore, the Court uses the following definition of the Overage Minute Class for its analysis of the Rule 23 requirements:

All residents of the United States of America who used wireless telephone service

provided by Defendant between May 11, 2002 and May 10, 2006 under a Family Share Plan covering two or more persons with different additional minute rates for minutes after the shared plan allowance, were billed under the VISION or I2K billing systems, and were assessed additional minute charges at a rate higher than the rate associated with the phone used to make or receive the calls after the allowance minutes were exhausted, calculated on a real time basis.

According to this definition, if a *primary* user with a FSP which included 1600 of allowance minutes made a call involving the 1601-1610 actual real time minutes of the month and was charged an overage fee at the *secondary* line overage rate instead of the rate associated with the primary line, that person would be a class member.  This does not require a finding that the charge or Verizon's billing practice breached that person's FSP or was otherwise unlawful.  It merely identifies the group of people who would be entitled to a remedy if Plaintiffs' view of the FSP is successful.

### B.     Rule 23(a) Requirements

Verizon does not contest that numerosity, commonality, and adequacy of counsel have been met.  Of the Rule 23(a) requirements, it argues that typicality and adequacy of class representative are not met.

### 1.     Typicality

Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  In In re Schering Plough Corporation ERISA Litigation, the Third Circuit held:

> [T]he proper consideration in assessing typicality . . . include[s] three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

589 F.3d 585, 599-600 (3d Cir. 2009) (finding that the named plaintiff's "interests and incentives

may not be sufficiently aligned with those of the class").  The Schering Plough Court stated that

"[a] common thread running through the various components of typicality–the requirements of

similarity of legal claims, factual similarity, and absence of defenses unique to the

representative–is the interest in ensuring that the class representative's interests and incentives

will be generally aligned with those of the class as a whole."  Id. at 599 (citing Amchem Prods.

v. Windsor, 521 U.S. 591, 626 n.20 (1997)).

 In additional to being a proposed national class representative, Mr. Demmick is the

proposed class representative for any Maryland subclass.  Verizon argues that he is not a typical

class representative because Verizon has a counterclaim against him for unpaid bills.  As a result

of this counterclaim, Verizon argues that Mr. Demmick's interests will not be sufficiently

aligned with other class members because he will have a greater interest in and focus on the

claims brought against him than the claims brought on behalf of the class.  This Court disagrees.

"[C]lass certification is inappropriate where a putative class representative is subject to unique

defenses *which threaten to become the focus of the litigation*."  Gary Plastic Packaging Corp. v.

Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) (emphasis added);

see also Osgood v. Harrah's Entm't, Inc., 202 F.R.D. 115, 125 (D.N.J. 2001).  As noted by

Plaintiffs, the class claims are based on allegations that Mr. Demmick was overcharged because

of Verizon's billing practices.  If the class is successful in proving that Verizon overcharged

class members, Mr. Demmick will not owe some or all of the amounts that Verizon seeks in its

counterclaim against him.  Thus, his interests are aligned with those of the class—both the class

and Mr. Demmick seek to demonstrate that Verizon's billing was erroneous and unlawful.

Additionally, apart from the issues present in the class's claims, the counterclaim asserted against Mr. Demmick appears to be a straightforward claim for past due amounts. The Court finds that any issues related to the counterclaim, which are not also issues in the class's claims, are unlikely to be a major focus in the litigation.

Verizon also asserts that, at his deposition, Mr. Demmick admitted that language in the FSP explains how after allowance minutes would be billed and agreed that Verizon billed him consistently with term of the FSP agreement. It also asserts that he admitted that he did not read the relevant FSP materials, and that had he read them, he would have understood Verizon's billing practice. At Mr. Demmick's deposition, counsel for Verizon asked him if he "understood when [he] was a customer that the allowance minutes would be applied to the primary line first at the end of the billing cycle." (See Def.'s Opp'n, Ex. B (Demmick Dep.), Tr. 96:7-10.) Mr. Demmick responded that he did not. (Id., at 96:11.) After having an opportunity to read that provision, he was then asked to explain his understanding of what it meant using a hypothetical example. (See id., at 97:25-99:25.) Verizon argues that Mr. Demmick's response, which was consistent with how Verizon bills, undermines the class claim that there was an undisclosed billing policy. For this reason, it also argues that he is not a typical class member. But, as Plaintiffs point out, Mr. Demmick also testified on numerous occasions that Verizon's billing practice for *overage* minutes, as opposed to *allowance* minutes, was not disclosed, and that Verizon's billing of the overage minutes was not consistent with his understanding of the plan while he was a customer or as he read it at the deposition. (See Reply Dec. of Stephen L. Dreyfuss in Supp. of Mot. for Class Cert. [hereinafter "Dreyfuss Dec."], Ex. A (Demmick Dep.), Tr. 142:4-143:4, 196:7-21, 237:20-238:5, 245:9-23; Def.'s Opp'n, Ex. B, Tr. 94:9-20, 96:7-11.)

The testimony highlighted by Verizon focuses on the allowance minutes billing provision

in isolation.  Plaintiffs' case is not simply about what that provision means.  Rather, Plaintiffs'

claims are based on their allegation that Verizon's billing practice is inconsistent with the FSP as

a whole.  Plaintiffs argue that, despite the provision regarding how allowance minutes would be

allocated, the FSPs do not clearly disclose how any overage minutes would be billed.  The point

of Plaintiffs' claims is that the FSP were intentionally misleading, and that they failed to make

Verizon's billing practices for overage minutes clear.  (See Pls.' Br., at 11 ("No less than five

confidential and proprietary studies conducted by Verizon found, as one put it, that Family

SharePlan customers 'do not have a clear understanding [of] how they are currently being

charged for overages.'" ).)  Mr. Demmick's testimony that Verizon's practice for billing for

overage minutes was undisclosed is consistent with Plaintiffs' position.  While testimony

favorable to Verizon regarding the meaning of one portion of the FSP may be used by Verizon in

support of its position, such testimony will be only one part of the proofs offered; other portions

of his testimony support the class's claims.  Thus, the Court finds that Plaintiffs have satisfied

the typicality requirement with respect to Mr. Demmick.

In addition to also being a proposed national class representative, Mr. Barth is the

proposed class representative for any New Jersey subclass.  Verizon argues that Mr. Barth also

made admissions at his deposition that are fatal to the claims brought by the class.  (See Def.'s

Opp'n, Ex. E (Barth Dep.), Tr. 192:20-193:11; 194:18-22 (agreeing that Verizon applied the

*allowance* minutes as stated in the allowance minute allocation provision).)  But, Plaintiffs

respond that, like Mr. Demmick, Mr. Barth testified on numerous occasions that Verizon's

billing practice for *overage* minutes was not disclosed.  (See Dreyfuss Dec., Ex. B (Barth Dep.),

Tr. 88:11-89:8, [138:7-139:3, 139:25-141:8], 190:12-191:22.)  For the reasons discussed above

for Mr. Demmick, the Court disagrees with Verizon that Mr. Barth's testimony, as a whole, is

inconsistent with Plaintiffs' claims.  Therefore, the Court also finds that Plaintiffs have satisfied

the typicality requirement for Mr. Barth.

      2.    <u>Adequacy of Class Representative</u>

The Third Circuit in <u>Schering Plough</u> also clarified the standard for adequacy under Rule

23.  With regard to whether a named plaintiff is an adequate representative of a class, the Third

Circuit stated that "the adequacy inquiry seeks to uncover conflicts of interest between named

parties and the class they seek to represent."  <u>Schering Plough</u>, 589 F.3d at 602 (internal

quotations omitted).  The Court further stated that "[b]ecause of the similarity of [the typicality

and adequacy] inquiries, certain questions—like whether a unique defense should defeat class

certification—are relevant under both."  <u>Id.</u> (internal quotations omitted; alteration in original).

Verizon bases its adequacy and typicality objections on the same arguments.  Thus, for the

reasons discussed above, the Court also finds that the named plaintiffs are adequate

representatives of the class; no conflicts of interest have been demonstrated.

**C.**    **Rule 23(b)(3) Requirements**

1.    <u>Superiority</u>

Rule 23 requires that "a class action [be] superior to other available methods for the fair

and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  In making its

superiority determination, the Court considers four nonexclusive factors:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
> (D) the likely difficulties in managing a class action.

<u>Id.</u>; <u>see also</u> <u>Amchem Prods.</u>, 521 U.S. at 615-16.  Although Verizon states that the proposed

class "fail[s] the predominance *and superiority* requirements of Rule 23(B)(3)," (Def.'s Opp'n, at 15 (emphasis added)), it does not make any specific arguments addressing these factors. In making its predominance arguments Verizon repeatedly asserts that there are unique and individualized differences between proposed class member's claims. The Court assumes that Verizon is arguing against superiority on the basis that there are likely to be litigation management difficulties. Apart from the rulings related to predominance issues made below denying class certification for certain claims, the Court disagrees that the superiority requirement is not met for this class.

The Court agrees with Plaintiffs that, "[i]n this case, the typical individual claim is far too small for any individual class member to be expected to pursue it in a separate action." (Pls.' Br., at 45.) Additionally, Plaintiffs have asserted that they are not aware of any other "previously commenced litigation concerning the billing practices at issue in this action." (Id., at 46.) With regard to any management difficulties, a court is not required to find that there will be no management difficulties. Rather, a court need only determine whether certification would create relatively more management problems than any other alternative. See Klay v. Humana, Inc., 382 F.3d 1241, 1272-73 (11th Cir. 2004). Plaintiffs have identified a proposed class of thousands and thousands of Verizon customers. Verizon has identified no management difficulties of class certification apart from any predominance specific issues. This Court finds that a class action will likely provide the only efficient and realistic opportunity for the proposed class members to seek redress for their alleged injuries. The Court, therefore, determines that superiority, as required by Rule 23(b)(3), has been satisfied, and that proceeding as a class action would be superior to other available methods.

2.    <u>Predominance</u>

"Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out [at trial] in order to determine whether common or individual issues predominate in a given case."  <u>Hydrogen Peroxide</u>, 552 F.3d at 311 (citations and quotations omitted).   "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."  <u>Id.</u> (quoting <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 172 (3d Cir. 2001)).  In order to do this, a Court must examine the likely proofs and issues related to each element for all of the causes of action for which a plaintiff seeks certification.  Plaintiffs argue that the following common  questions are at the core of all of their Overage Minutes Class claims:  Verizon commonly represented the FSPs as "share" plans; Verizon commonly represented that overage charges would apply to "after allowance" minutes; Verizon billed its FSP customers in a uniform manner; and Verizon uniformly failed to disclose it billing practice for overage charges.

*Breach of Contract*

Plaintiffs seek certification of the breach of contract claims for two state subclasses:  New Jersey and Maryland.  The parties in this case agree that the FSP contract for each proposed class member is comprised of the Customer Agreement, the Calling Plan, and the Customer Information Overview.  (<u>See, e.g.</u>, Pls.' Sur-Reply, June 10, 2010.)  To establish a claim for breach of contract under New Jersey and Maryland law, the required showing is similar.  A plaintiff must show: 1) the existence of a contract, 2) a material breach of the contract by the defendant, and 3) damages resulting from the breach.  See <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 421 F. Supp. 2d 831, 833 (D.N.J. 2006), <u>aff'd</u>, 482 F.3d 247 (3d Cir.

2007); Antonio v. Sec. Servs. of Am., LLC, 701 F.Supp.2d 749, 761 (D. Md. 2010) (quoting

Parlette v. Parlette, 596 A.2d 665, 671 (Md. Ct. Spec. App. 1991)).  Verizon argues that

certification of Plaintiffs' breach of contract claims for the Overage Minutes Class is

inappropriate under either New Jersey or Maryland law because: (1) the terms of each proposed

class member's contract varied, and (2) "even if all putative class members had received the

same plan language, the jury would still have to conduct individualized inquiries regarding each

proposed class member's interactions with [Verizon] and his or her understanding of the billing

terms."  (Def.'s Opp'n, at 34.)

      With regard to its first argument, Defendant cites to this Court in McNair v. Synapse, No.

06-5072, 2009 WL 1873582 (D.N.J. June 29, 2009).  In McNair, this Court did find that class

certification of breach of contract claims was not appropriate where the terms of the proposed

class member's agreements varied.  See 2009 WL 1873582, at *13.  But, the facts in this case are

distinguishable from those in McNair.  In McNair, not only were there a "myriad of different

contracts" in which language varied, but the contracts were for different types of subscriptions—

some were trial, some new, and some were renewals.  Id., at *4-6, 13.  Here, the scope of the

overage minutes class is limited only to those individuals who were billed using the VISION or

I2K billing systems.  Therefore, at most, the trier of fact will need to consider twenty one

different versions of the FSP contract, the relevant portions of which are quite short.  (See Pls.'

Reply, at 14; see also Hearing Tr. at 29:13-15.)  Additionally, although there are minor

differences in the wording of the various FSP contracts, the Court finds that the FSPs do not

materially differ in the respects at issue in this case.  They all provide for monthly "allowance

minutes" that are to be "shared" among family members enrolled in the plan, and they all

provide per minute rates for "after allowance" minutes that vary depending on whether the

primary or secondary line generated the "after allowance" minute.  They all provide that the monthly "allowance minutes" would apply first to the primary line at the end of each billing cycle.  And, they all fail to include the disclosure which Plaintiffs argue is required to justify Verizon's billing practice in light of the FSPs taken as a whole.  Thus, although the FSPs varied in some respects, the Court finds that they are sufficiently uniform with regard to the terms at issue.  Additionally, the parties do not dispute that "Verizon billed all of its FSP customers for overage minutes in the same manner."  (Pls.' Reply, at 12.)  The Court agrees with Plaintiffs that what is at issue in their breach of contract claims is a common billing scheme which Plaintiffs assert represents a uniform breach of the FSPs.

Verizon also argues that certification on the breach of contract claims is improper because interpreting the FSPs to determine if there has been a breach will depend on individualized evidence related to each proposed class member's understanding of the contract. Verizon argues that Plaintiffs can only prove their case by relying on evidence of the individual interactions between Plaintiffs and Verizon representatives as part of the contracting process. Plaintiffs argue that, not only will such evidence be unnecessary, but that it will be inadmissible because all the FSPs contain integration clauses precluding reference to such evidence.  Plaintiffs assert that their breach of contract claims will be based solely on the FSP documents; they represent that they will not rely on any extrinsic evidence.  Verizon argues that Plaintiffs cannot use the parole evidence rule to exclude relevant evidence from consideration on class certification, and that the individual interactions of Plaintiffs are relevant in interpreting the FSPs.  (Def.'s Sur-Reply, June 13, 2010, at 2.)   In other words, Verizon argues that "[P]laintiffs cannot satisfy the predominance requirement by simply proposing a trial that excludes relevant, individualized evidence."  (Def.'s Sur-Reply, June 6, 2010, at 3.)

In determining whether class certification is appropriate, a court must "consider carefully all relevant evidence and make a definitive determination that the requirements of Rule 23 have been met before certifying a class." Hydrogen Peroxide, 552 F.3d at 320.  Under New Jersey law, "even when [a] contract on its face is free from ambiguity," extrinsic evidence "is always admissible in aid of the *interpretation* of an integrated agreement." Conway v. 287 Corporate Ctr. Assocs., 901 A.2d 341, 347 (N.J. 2006) (emphasis added) (quoting Atl. N. Airlines v. Schwimmer, 96 A.2d 652, 656 (N.J. 1953)).  Thus, in New Jersey, "[e]xtrinsic evidence may be used to uncover the true meaning of contractual terms," so long as it is not used "to vary the terms of the contract." Id. at 347; see also Maple Shade Motor Corp. v. Kia Motors of Am., Inc., 384 F. Supp. 2d 770, 776-77 (D.N.J. 2005) (holding that, where a contract contains an integration clause, extrinsic evidence is "inadmissible to vary the terms of a final written contract").  Under Maryland law, "[i]f the contract is ambiguous, the court must consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." County Comm'rs of Charles County v. St. Charles Assocs. Ltd. P'ship, 784 A.2d 545, 556 (Md. 2001).  A contract is ambiguous if it "is susceptible of more than one meaning to a reasonably prudent person." Id.

Based on these rules, Verizon argues that, even if Plaintiffs intend to rely only on the documents, evidence of the individual interactions will be admissible and will vary depending on each proposed class member's experience.  Thus, it argues that individual issues will predominate for the breach of contract claims.  In the abstract, this argument seems persuasive.  But, what a court is required to do in analyzing whether certification is appropriate is to predict how the issues actually will play out at trial.  In reality, that evidence is admissible does not mean that it will be admitted or even that it is likely to be used at trial.  Here, Verizon's position

is that the FSPs are unambiguous.  It repeatedly points to the language stating that allowance minutes are allocated to the primary line first to argue that its billing practice was clear. Additionally, although Mr. Demmick and Mr. Barth testified that the discussions with representatives informed their understanding of the FSPs, their testimony more likely supports Plaintiffs' interpretation of the FSPs, not Verizon's.  Thus, it is far from clear that Verizon is likely to use such individualized evidence as opposed to relying on the language of the FSPs themselves, as it repeatedly did in its briefing and at the May 26 hearing.

Finally, this Court agrees with Verizon that a plaintiff cannot frame his case in a way to avoid individualized evidence simply for the purpose of satisfying the predominance requirement and succeeding in certifying a class.  But, the Court also finds that a defendant should not be able to point to evidence that possibly could be admitted for the purpose of defeating certification where a plaintiff proposes a reasonable theory of a claim that overwhelmingly presents common questions, and the individualized evidence is unlikely to form the basis of the defendant's case. Where there are sufficient material common questions, "[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members."  Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003); see also Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 924 (3d Cir.1992) ("Given a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations has not prevented certification of class actions in securities cases.") (internal quotation omitted).

It is possible that there may be individual questions presented by Verizon through the introduction of extrinsic evidence as to the meaning of the FSP's terms, but this Court finds that such questions are not likely to predominate over the common questions. For these reasons, this

Court will certify the Overage Minute Class for Plaintiffs' breach of contract claims for a New Jersey and a Maryland subclass.

*Common Law Fraud*

Plaintiffs seek certification of its common law fraud claim on behalf of a national class applying New Jersey law. In the alternative, they seek certification of this claim for the two state subclasses. However, because this Court found above that application of New Jersey law to a national class was inappropriate, the Court, in this section, analyzes only whether certification of the fraud claim is appropriate on behalf of the New Jersey and Maryland subclasses.

In New Jersey, to state a claim for fraudulent misrepresentation or omission, a plaintiff must establish: "(1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichart Co. Realtors, 691 A.2d 350, 367 (N.J. 1997). Under Maryland law, a plaintiff must show:

> (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

Lloyd v. General Motors Corp., 916 A.2d 257, 274 (Md. 2007). Thus, under both state's laws, a plaintiff must demonstrate that he acted in reliance on the omission.

Verizon argues that, without reference to individualized evidence, Plaintiffs cannot demonstrate that they would have made different decisions in choosing the FSPs had the disclosures been made. In other words, Verizon argues that individual issues will predominate on the issue of reliance. But, Plaintiffs do not assert that they would have chosen a different plan

had the agreements contained additional disclosures.  Rather, Plaintiffs argue that the reliance at

issue is a proposed class member's decision to make "after allowance" calls.  They assert that the

"class members were defrauded by Verizon's non-disclosure of its billing practice for overage

minutes every time they made a call under that plan."  (Pls.' Reply, at 9.)  The Court finds this to

be a distinction without a difference.  Whether the question is why a proposed class member

chose a FSP or why a proposed class member picked up his phone to make a call and how that

behavior would have been different had the disclosures been made, the reliance element will

depend on evidence of each customer's understanding, intent, and preferences.

       Perhaps Plaintiffs could demonstrate reliance using common proofs if there was some

basis to support an assertion that most proposed class members read and relied on the contract

language as opposed to other materials or oral representations, and that they were likely to react

to that information in a uniform way.  But, here, the deposition testimony of the named plaintiffs

is either that they did not read the FSP or that they did not remember what formed the basis of

their understanding of their plans.  (See, e.g., Dreyfuss Dec., Ex. A (Demmick Dep.), Tr. 196:22-

197:3 ("I do not recall whether I reviewed this piece of paper prior to that or not.  I know that

was more or less the understanding that I had coming out of the store after speaking with

everybody . . . .").)  Generally, a plaintiff cannot show that he relied on a document that he did

not read.  See, e.g., Johnson v. HBO Film Mgmt., Inc., 265 F.3d 178, 189-90 (3d Cir. 2001);

Parlette, 596 A.2d at 669 ("The circuit court was correct in concluding that Ms. Parlette, who

was not a party to any misrepresentations made by Mr. Parlette to Wayne [and] who never even

knew of the alleged misrepresentations until after Wayne's death . . . could not have relied on

these alleged misrepresentations.").  Thus, to prove reliance, Plaintiffs first would need to

establish what they relied on.  This would require Plaintiffs to introduce evidence of their

individual interactions with Verizon representatives and of any oral representations made by Verizon employees on which they allege they relied.

Class certification is typically found to be inappropriate where plaintiffs must rely on oral representations made to each proposed class member.  See, e.g., HBO Film Mgmt., 265 F.3d at 185-86, 190); see also In re Life USA Holding, Inc., 242 F.3d 163, 147 (3d Cir. 2001) (finding that even the commonality requirement was not satisfied where the court found that the plaintiffs were relying on "non-standardized and individualized sales pitches" made by the sales representatives) (internal quotations omitted).  Plaintiffs, however, argue that "the presence of [such] individual questions as to the reliance of each [class member] does not mean that common questions of law and fact do not predominate.'"  (Pls.' Br., at 43 n.15 (quoting In re Prudential Ins Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 315 (3d. Cir. 1998)).)   But, Prudential was a settlement case affirming a district court decision where reliance was presumed for the fraud-based claims).  148 F.3d at 314-15.  In light of subsequent New Jersey Supreme Court and Third Circuit cases, as more fully discussed in the next section, this Court finds that a presumption of reliance is not appropriate in this case.  Therefore, because this Court  finds that establishing reliance will require predominantly individualized inquiries into what each class member relied on, which may vary significantly because of the varied oral representations, the Court finds that common issues do not predominate for the fraud claims; certification of these claims is not appropriate.

### New Jersey Consumer Fraud Act

Plaintiffs also seek certification of its NJCFA claim on behalf of a national class.  In the alternative, they seek certification of this claim for the New Jersey subclass.  The Court has found that application of the NJCFA to a national class is not appropriate.  Therefore, in this

section, the Court analyzes only whether certification of this claim is appropriate on behalf of the New Jersey subclass.

To establish a claim under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §§ 56:8-1 et. seq., a plaintiff must show: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009) (quoting Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 929 A.2d 1076, 1086 (N.J. 2007)). Where a NJCFA claim is based on an omission, to establish unlawful conduct, the plaintiff also must show that "the defendant (1) knowingly concealed (2) a material fact (3) with the intention that [the] plaintiff rely upon the concealment." Judge v. Blackfin Yacht Corp., 815 A.2d 537, 541 (N.J. Super. Ct. App. Div. 2003; see also Bosland, 964 A.2d at 749. Once the plaintiff in an omission case has established unlawful conduct, "he must also prove that the omission proximately caused any loss he may have suffered." Blackfin, 815 A.2d at 542. Unlike having to establish reliance or but-for causation, however, "the NJCFA does not require that the allegedly unlawful conduct serve as the lone cause of Plaintiffs' loss, but merely that it be a cause." Arcand v. Brother Intern. Corp., 673 F. Supp. 2d 282, 304 (D.N.J. 2009); see also Zorba Contractors, Inc. v. Housing Auth., 827 A.2d 313, 321 (N.J. Super. Ct. App. Div. 2003) ("The only noteworthy difference between the causes of action is that common law fraud requires proof of reliance while consumer fraud requires only proof of a causal nexus between the concealment of the material fact and the loss.") (internal quotations omitted). Finally, "once a plaintiff has established a significant relationship between the defendant's practices and the plaintiff's ascertainable losses it becomes the defendant's responsibility to isolate particular losses which do not have the required causal connection." Roberts v. Cowgill, 719 A.2d 668,

673 (N.J. Super. Ct. App. Div. 1998).

Verizon argues that Plaintiffs cannot demonstrate the unlawful conduct and causation elements without resort to individualized evidence.  With respect to the unlawful conduct element, which for a claim based on an omission includes intent, Plaintiffs assert that "Verizon knows that the description of its billing practice is confusing and inadequate."  (Pls.' Br., at 11.) They point to various studies which they argue support a finding that Verizon knew the FSPs were misleading.  They argue that these studies by Verizon "underscore[] the unfair and deceptive nature of Verizon's billing practice."  (Id.)  The Court finds that the intent aspect of this element will be focused on Verizon's conduct, which is alleged to involve a common scheme. Thus, the question of Verizon's intent is unlikely to present individualized issues. Additionally, to the extent that Verizon's challenge is based on its assertion that the FSPs varied, presenting individualized issues, this Court has already rejected that argument.  As discussed above, although there may be minor variations in the language of the twenty one plans at issue, the Court finds that the plans are the substantially the same in the relevant aspects and all omit the disclosure which Plaintiffs assert should have been made.  The Court, therefore, finds that common issues will predominate for the unlawful conduct element.  However, the Court reaches a different conclusion with regard to the causation element.

In their briefing related to the proofs required for the causation element, Plaintiffs focus on Verizon's allegedly uniform conduct in failing to disclose its practice for billing for overage minutes.  Plaintiffs argue that "[i]n a consumer fraud action, predominance of common issues is clear where (as here) the defendant has engaged in a common course of conduct by making uniform misrepresentations or omissions of material facts to all class members."  (Pls.' Reply, at 11-12 (citing Blackie v. Barrack, 524 F.2d 891, 902 (9th Cir. 1975).)  In other words, to meet

their burden for the causation element, Plaintiffs rely on a presumption of causation.  They argue that "[a]pplying the presumption of causation principle eliminates the need to prove causation as to each individual class member and thereby facilitates certification of consumer fraud claims under the NJCFA."  (Pls.' Br., at 44 (citing Elias, 252 F.R.D. at 238).)  Plaintiffs also rely on In re Mercedes-Benz Tele Aid Contract Litigation, 257 F.R.D. 46 (D.N.J. 2009), for their proposition that a presumption is appropriate where a common course of conduct is alleged.  In Mercedes-Benz, the court held that, "if Plaintiffs demonstrate at trial that Mercedes failed to disclose the impending obsolescence of analog Tele Aid, that omission will be presumed to have caused Plaintiffs' loss and there will be no need for individualized evidence regarding causation."  257 F.R.D. at 74 (citing Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153 (1972)).  In Ute Citizens of Utah, the Supreme Court allowed a presumption of reliance in a securities fraud case where the defendant had an "obligation to disclose" information that it allegedly failed to disclose.  406 U.S. at 153-54.  Aside from the fact that this is a different type of case, no such allegation is present here.

Contrary to Plaintiffs' view, "at class certification [a plaintiff] must demonstrate that [each essential] element [of his claim] . . .  is capable of proof at trial through evidence that is common to the class rather than individual to its members."  Malack v. BDO Seidman, LLP, --- F.3d ----, 2010 WL 3211088, at *2 n.5 (3d Cir. 2010) (internal quotation marks omitted).  Additionally, courts have held that "the procedural device of Rule 23 cannot be allowed to expand the substance of the claims of class members."  Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 345 (4th Cir. 1998) (citing 28 U.S.C. § 2072(b)); see also Amchem, 521 U.S. at 613; Cimino v. Raymark Indus., Inc., 151 F.3d 297, 312 (5th Cir. 1998)).  Thus, a presumption may not be automatically used to eliminate a particular element.  The Court finds

that this is particularly true with regard to causation for a NJCFA claim.  See Bosland, 964 A.2d at 748 ("There are distinctions between the CFA requirements that govern claims pursued by the Attorney General and those permitted to be brought by private parties. . . . [t]he CFA requires a consumer to prove that the loss is attributable to the conduct that the CFA seeks to punish by including a limitation expressed as a causal link."); N.J. Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 178-79 (N.J. Super. Ct. App. Div. 2003) ("[A]dopting plaintiffs' version of causal nexus would . . . effectively eliminate the distinction in the Act itself respecting private rights of action created for consumers, N.J.S.A. 56:8-19, and the rights created to permit the Attorney General to pursue a remedy, even in the absence of harm to any particular individual, N.J.S.A. 56:8-2, a distinction that our Supreme Court has refused to obliterate."); see also Nafar, 339 F. App'x at 223 (discussing the New Jersey Supreme Court decision in International Union and holding that "evidence of plaintiffs' conduct relevant to the causation issue cannot be ignored without comment in a predominance analysis . . . because the Supreme Court of New Jersey has held that individual issues regarding plaintiff's behavior may, in certain cases, defeat predominance in a NJCFA class action, despite the uniformity of a defendant's misrepresentations or omissions").  Additionally, this Court held in McNair that alleging a uniform course of conduct by itself is not sufficient to satisfy the predominance element for the causation element of a NJCFA claim.  2009 WL 1873582, at *10.   Finally, the Third Circuit last month emphasized the limited application of presumptions in class action cases, noting that "the presumption of reliance is a powerful tool for plaintiffs seeking class certification and class certification puts pressure on defendants to settle claims, even if they are frivolous."  Malack, 2010 WL 3211088, at *11 (citing Hydrogen Peroxide, 552 F.3d at 310).

This does not mean that causation may never be established using a common method of

proof.  But, it does mean that the common proof must be capable of demonstrating causation as

to the individual proposed class members.  For example, the present case is not one where the

unlawful conduct alleged is a straightforward regulatory violation where New Jersey courts have

relaxed some aspects of proof and customers can reasonably be presumed to have had a common

reaction to the conduct at issue.  See, e.g., Bosland, 964 A.2d at 749, 751.   Nor is this class

claim one where all the Plaintiffs were faced with the same information when making their

decisions.  While the FSPs were sufficiently uniform, like with the reliance element for common

law fraud, it is hard to evaluate what factors caused each proposed class member's loss where

some of the plaintiffs made their decisions based on oral representations that may have varied.

Although the proof required for the causation element of a NJCFA claim may be less stringent

than for reliance, it is hard to imagine that any causal connection for this claim could be

established absent resort to individualized evidence.  Therefore, the Court finds that Plaintiffs

have not met their burden of showing that common issues will predominate for the causation

element of the NJCFA claim.  Class certification of this claim, therefore, is also inappropriate.

   *Maryland Consumer Protection Act*

Plaintiffs seek certification of the Maryland CPA claim only on behalf of the Maryland

subclass.  In order to state a claim under Maryland's CPA, a plaintiff must show that "the seller

of consumer goods or services . . ., either affirmatively or by omission, misrepresented a material

fact about the goods."  Lloyd, 916 A.2d at 276 n.13.  Additionally, Maryland courts have held

"that a private party suing under the Consumer Protection Act must establish 'actual injury or

loss,'" and that the loss resulted from the plaintiff's "reliance on the sellers' misrepresentation."

Id., at 277; see also Citaramanis v. Hallowell, 613 A.2d 964, 969 (Md. 1992) ("[A] private

enforcement proceeding pursuant to § 13-408(a) expressly only permits a consumer to recover

for injury or loss sustained by him as the result of a [prohibited] practice.") (internal quotation omitted).

For the reasons discussed above regarding the claim for common law fraud, this Court finds that individual questions will predominate in establishing the element of reliance under the Maryland CPA, making certification of this claim inappropriate. Even if the language "as a result of" the unlawful conduct, which is the same as in the NJCFA, were construed to mean something less than reliance as with the NJCFA, this cause of action could still not be certified for the reasons discussed above regarding causation under the NJCFA. Therefore, the Court denies Plaintiffs' motion to certify this cause of action for the Overage Minutes Maryland subclass.

*Federal Communications Act Claim*

Plaintiffs seek certification of the FCA claim on behalf of a national class. To demonstrate liability under § 201 of the FCA, a plaintiff must prove that the defendant employed a "charge, practice, classification, or regulation that is unjust or unreasonable." 47 U.S.C. § 201(b). Plaintiffs allege that "Defendants' billing practices and/or their failure to fully and adequately disclose such billing practices to their customers constitute(s) unjust and unreasonable charges and/or practices in connection with communication services, and therefore violate § 201(b) of the FCA." (Am. Compl. ¶ 41.) Verizon argues that, because the FSPs varied, Plaintiffs "can only prove that [Verizon] engaged in an 'unjust or unreasonable' practice by resort to individualized evidence." (Def.'s Opp'n, at 37.) It argues that "there is no single, common practice that could be evaluated under the Act." (Id.) However, this Court found above that any variations in the FSPs are not material to Plaintiffs' claims, and, thus, any individual questions related to the FSPs will be minor compared to the common questions. Additionally,

this claim is governed by federal law so there is no choice of law issue.  The parties do not

dispute that Verizon billed in a common way, and Plaintiffs allege that this common billing

practice for overage minutes was unreasonable.  The Court finds that common questions will

predominate for this claim.

Alternatively, Verizon argues that certification should not be granted for this claim

because Plaintiffs' claims are not cognizable under the FCA, or, that, if they are cognizable,

some of Plaintiffs' other causes of action will be preempted by the FCA.  Plaintiffs argue that the

Court should not consider this argument at this time since all that is presently before the Court is

a class certification motion.  The Court agrees.  While this Court must look to the merits of

Plaintiffs' claims, it does so upon a motion for class certification only for the purpose of

determining if Rule 23's requirements are met, not for evaluating the underlying merits of the

claims.  See Hydrogen Peroxide, 552 F.3d at 307.  Any arguments challenging the merits of the

claim should be made as part of future dispositive motion practice.  Certification of this claim on

behalf of a national class is granted.

*Declaratory Judgment*

Plaintiffs also seek certification of the declaratory judgment claim on behalf of a national

class.  The Declaratory Judgment Act ("DJA") provides that a court "may declare the rights and

other legal relations of any interested party seeking such declaration, whether or not further relief

is or could be sought."  28 U.S.C. § 2201(a).  Verizon argues that because "this cause of action

simply piggy-backs on plaintiffs' other claims[, it] cannot be certified if their other claims fail

the requirements of Rule 23."  (Def.'s Opp'n, at 38 n.11.)  Verizon makes no other argument

related to the DJA claim.  This Court has found that Plaintiffs' breach of contract and FCA

claims meet the Rule 23 requirements.  Thus, the Court also will certify a DJA claim for the

national class.

### E.    Summary of the Overage Minutes Class Holdings

Based on the foregoing, the Court finds that certification of the Overage Minutes Class is

appropriate for the following claims:

(1) the FCA and DJA claims on behalf of a national class;

(2) the New Jersey breach of contract claim on behalf of the New Jersey subclass; and

(3) the Maryland breach of contract claim on behalf of the Maryland subclass.

The following class definitions apply for the national class and each subclass, respectively:

(1) All residents of the United States of America who used wireless telephone service provided by Defendant between May 11, 2002 and May 10, 2006 under a Family Share Plan covering two or more persons with different additional minute rates for minutes after the shared plan allowance, were billed under the VISION or I2K billing systems, and were assessed additional minute charges at a rate higher than the rate associated with the phone used to make or receive the calls after the allowance minutes were exhausted, calculated on a real time basis;

(2) All residents of the state of New Jersey who used wireless telephone service provided by Defendant between May 11, 2002 and May 10, 2006 under a Family Share Plan covering two or more persons with different additional minute rates for minutes after the shared plan allowance, were billed under the VISION or I2K billing systems, and were assessed additional minute charges at a rate higher than the rate associated with the phone used to make or receive the calls after the allowance minutes were exhausted, calculated on a real time basis;

(3) All residents of the state of Maryland who used wireless telephone service provided by Defendant between May 11, 2002 and May 10, 2006 under a Family Share Plan covering two or more persons with different additional minute rates for minutes after the shared plan allowance, were billed under the VISION or I2K billing systems, and were assessed additional minute charges at a rate higher than the rate associated with the phone used to make or receive the calls after the allowance minutes were exhausted, calculated on a real time basis.

The Court holds that the requirements for certification have not been met for Plaintiffs' common

law fraud, NJCFA, and Maryland CPA claims.

VI.     **In-Network/In-Family Class**

Plaintiffs assert that the FSPs at issue all provided for free in-network and in-family calls, but that Verizon, nevertheless, charged some customers for these calls.  Verizon argues that "[t]hese claims are unsuited for class certification because they are based on alleged, random clerical errors, the vast majority of which were rectified by the Company on a case-by-case basis before the lawsuit was filed."  (Def.'s Opp'n, at 41.)

A.     **Class Definition**

Plaintiffs define the proposed national In-Network/In-Family Class as follows:

> All residents of the United States of America who used wireless telephone service provided by Defendant between May 11, 2002 and May 10, 2006 and were charged for 'In-Network' and/or 'In-family' calls despite having a Verizon Wireless calling plan that offered unlimited, free 'In-Network' and/or 'In-Family' calling.

(Notice of Mot. for Class Cert. ¶ 1(B).)  Verizon does not challenge this definition as a fail safe class.  But, it does argue that the proposed definition is broader than previously understood.  (See Def.'s Opp'n, at 40-41 n.12 ("Throughout this litigation, the parties have had an understanding that plaintiffs' proposed in-network class was limited to FSP subscribers who allege in-network and/or in-family billing errors.  The revised definition . . . appears to be broader, encompassing all [Verizon] customers who experienced such errors—regardless of what type of calling plan they subscribed to.")  At the May 26 hearing and throughout the briefs submitted by both parties, the focus has been on the FSPs.  Both of the named Plaintiffs have FSPs.  Plaintiffs have submitted no information regarding other plans that may be within the scope of the definition as presently proposed.  Such a lack of scope and clarity of the plans in the proposed definition presents various issues for certification.   Therefore, the Court finds it appropriate also to reform this class definition with regard to the scope of the plans covered, making the definition

consistent with the briefing and arguments.

The Court also finds that one additional change to the definition will address another issue raised by Verizon in arguing against certification of this class.  Verizon argues that any erroneous in-network charges were the result of random errors that in many cases were corrected through the reimbursement of the charges prior to the start of the lawsuit.  In fact, Mr. Barth's in-network related claims were previously dismissed by this Court for this reason.  (See CM/ECF Nos. 26 & 27, Opinion & Order, Mar. 13, 2007.)  Plaintiffs, on the other hand, argue that there are thousands of customers who were erroneously charged for such calls, many of whom have not been reimbursed, like Mr. Demmick.  Plaintiffs do not appear to argue that those customers who were reimbursed prior to suit have suffered any injury and should be part of the class.  Therefore, the Court will limit the scope of this class to those customers who have had charges which have not been reimbursed.

For these reasons, the Court uses the following definition of the In-Network/In-Family Class for its analysis of the Rule 23 requirements:

> All residents of the United States of America who used wireless telephone service provided by Defendant between May 11, 2002 and May 10, 2006 under a Family Share Plan that offered unlimited, free 'In-Network' and/or 'In-Family' calling, were billed under the VISION or I2K billing system, were charged for 'In-Network' and/or 'In-Family' calls, and who were not reimbursed for such calls prior to May 11, 2006.

### A.       Rule 23(a) Requirements

Mr. Demmick is the only named plaintiff representing the In-Network/In-Family proposed class.  Verizon argues that certification of this class must fail because Mr. Demmick is neither a typical or adequate class representative.  It argues that Mr. Demmick has no standing to represent this class because he never paid the alleged erroneous in-network or in-family charges,

and that he must be able to demonstrate damages and/or injury for the causes of action asserted. On the other hand, Plaintiffs argue that Mr. Demmick "paid the improperly assessed In-Network charges that appeared on his Aug 22, 2004 bill," but that Verizon has not credited him with the payment. (Pls.' Reply, at 17.) Mr. Demmick had an amount due of $1,418.65 on his August 2004 bill. (Def.'s Opp'n, App'x A(2) (Demmick August bill).) From August 22, 2004 through June 1, 2005, he paid Verizon $3,380.96. (Id., at A(3)-A(10) (Demmick September 2004 through June 2005 bills).) Thus, the amount Mr. Demmick paid Verizon during this period exceeds the amount of the charges in question; there simply is an issue as to how his payments to Verizon should have been credited. It is undisputed that Mr. Demmick was billed for the amounts which he argues were erroneous, and there is evidence he paid at least a portion of the charges. This is a sufficient injury for the filing of suit and making out a prima facie case. This is not a situation like Mr. Barth's where Verizon has completely refunded the alleged overcharges.

Additionally, as discussed above for typicality for the Overage Minutes Class, to the extent that Verizon argues that the dispute over these payments makes Mr. Demmick not a typical class representative, the Court is not persuaded. Mr. Demmick has an interest in prevailing on the class claim that he does not owe the disputed charges. In this respect, his interests are aligned with that of the proposed class. The Court finds that no conflict of interest exists between Mr. Demmick and the proposed class. Therefore, for these reasons and those discussed above, the Court finds that Plaintiffs have met their burden on the typicality and adequacy requirements for this proposed class.

**C.      Rule 23(b)(3)**

1.      <u>Superiority</u>

For the reasons discussed for the Overage Minutes Class, this Court also finds that

superiority is met for the proposed In-Network/In-Family Class.

2.      <u>Predominance</u>

Plaintiffs argue that the following common elements are at the core of all of their In-

Network and/or In-Family Class claims:  The FSPs at issue uniformly included in-network and

in-family calls as part of the flat monthly calling plan rate, and, for the proposed class members,

Verizon charged them for these calls without reimbursement.

*Breach of Contract*

Plaintiffs seek certification for the in-network breach of contract claim on behalf of a

Maryland subclass only.  As stated above, under Maryland law, to establish a breach on contract,

a plaintiff must show: 1) the existence of a contract, 2) a material breach of the contract by the

defendant, and 3) damages resulting from the breach.  <u>See</u> <u>Antonio v. Sec. Servs. of Am.</u>, LLC,

701 F.Supp.2d 749, 761 (D. Md. 2010) (quoting <u>Parlette v. Parlette</u>, 596 A.2d 665, 671 (Md. Ct.

Spec. App. 1991)).

Verizon argues that, to the extent that customers were incorrectly charged for in-network

or in-family calls that should have been free, such charges simply were due to error, and that

Verizon has made an effort to identify these customers and correct the errors.  Plaintiffs argue

that the reason for the errors is unimportant because intent is not an element for a breach of

contract claim.  They argue that proposed class members simply were charged for calls that were

supposed to have been included in their monthly flat rate.  If the FSPs provided that subscribers

should receive certain calls for free, but, in fact, the customers were erroneously charged for the

calls, then Verizon breached the contract absent some defense.  Verizon argues that "a jury would have to determine whether that individual was—in fact—erroneously billed for in-network calling and whether [Verizon] failed to reimburse him or her for its alleged error." (Def.'s Opp'n, at 43.)   Because the Court has reformed the class definition with regard to reimbursements, part of Verizon's argument is moot.  The Court interprets Verizon's other argument as one focused on whether varying defenses will present individualized versus common issues.

As noted above, the mere presence of various affirmative defenses will not defeat class certification where there is a common nucleus of operative facts and issues which predominate. Here, the defenses noted by Verizon are even less problematic for certification than for the Overage Minutes Class.  The arguments related to this class seem to be more category related than individual specific and differentiating.    For example, Verizon asserts that it corrected many errors prior to the lawsuit, or it argues that some customers cancelled the primary line, making the calls no longer covered by the In-Network or In-Family provision.  These types of issues may be resolved by narrowing the class, as this Court did for the first example, or through dispositive motions, which Verizon may do for the second issue.  See, e.g., Bayshore v. Ford Motor Co., No. 99-741, 2009 WL 3817930, at *10 (D.N.J. Nov. 16, 2009) (holding that summary judgment was appropriate for a breach of contract claim against a group of class members who had signed releases).  Even if such issues are not resolved through motion practice, as presented by Verizon, they still are likely to present broader issues at trial as opposed to many individualized ones. Additionally, Plaintiffs allege that any "errors" are not random as asserted by Verizon.  They state: "Rather, the documents produced by Verizon in discovery demonstrate that the alleged cause of the overcharges incurred by plaintiff Demmick (a 'mismatch' of codes on his lines) is

common to many thousands of other class members." (Pls.' Reply, at 16.) The core of Plaintiffs' breach of contract claim for this class simply is that proposed class members contracted to receive certain calls for free, but that, instead, they were charged for them. This is a straightforward claim which is predominated by questions common to the class. Therefore, the Court will certify this claim on behalf of the Maryland subclass.

*Common Law Fraud*

Plaintiffs seek certification of the common law fraud claim on behalf of a national class applying New Jersey law. In the alternative, they seek certification of this claim on behalf of a Maryland subclass. However, because this Court found above that application of New Jersey law to a national class was inappropriate, the Court, in this section, analyzes only whether certification of the fraud claim is appropriate on behalf of the Maryland subclass. In Maryland, to state a claim for fraud based on a misrepresentation, a plaintiff must show:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

Md. Envtl. Trust v. Gaynor, 803 A.2d 512, 516 (Md. 2002) (internal quotations omitted).

In their reply brief, Plaintiffs state: "It makes no difference how or why Verizon breached its contracts by charging class members for In-Network/In-Family calls when they were supposed to be free, because intent is simply not an element of the class members' claims for breach of contract or for violation of the FCA, the DJA, the NJCFA, or the Maryland CPA." (Pls.' Reply, at 15-16.) Absent from this list is common law fraud, where intent must be proven. Although class certification is not a determination on the merits, the Court notes that Plaintiffs

have made only a speculative and cursory allegation in their Amended Complaint that Verizon

acted with any intent with regard to this claim.  In any case, what is before the Court is an

assertion that various "errors" were made in charging for In-Network or In-Family calls.  Thus

the intent element will likely involve testimony of the various ways in which errors were made;

common evidence of an intentional scheme does not appear likely to predominate, if it is present

at all.  Therefore, class certification of this claim is denied.

*Maryland Consumer Protection Act*

Plaintiffs seek certification of the Maryland CPA claim only on behalf of a Maryland

subclass.  As noted above, in order to state a claim under Maryland's CPA, a plaintiff must show

that "the seller of consumer goods or services . . ., either affirmatively or by omission,

misrepresented a material fact about the goods."  Lloyd, 916 A.2d at 276 n.13.  Additionally,

Maryland courts have held "that a private party suing under the Consumer Protection Act must

establish 'actual injury or loss,'" and that the loss resulted from the plaintiff's "reliance on the

sellers' misrepresentation."  Id., at 277.

Here, the single course of conduct alleged is the affirmative representation that in-

network and/or in-family calls were included in the monthly flat rate; this is common to the

class.  The question, then, is whether common questions will predominate in determining if

Plaintiffs' loss resulted from the alleged unlawful conduct.  As noted above, for the purpose of

evaluating a class certification motion, a court is not called upon to evaluate the underlying

merits of the claim, but, rather, to review the claims to determine if common questions will

predominate at trial.  Unlike for the Overage Minutes Class, for this class, the Court finds that for

this class they will.  The evidence is likely to vary as to whether customers read or did not read

the FSPs, and, so, it is conceivable that this claim also could involve oral representations of

Verizon employees.  But, the difference for this claim is that there is no assertion that what any employee may have said varied.  This is not a case where there is a dispute over what was represented or what any representation meant.  The proposed class members, by definition, contracted for plans that included unlimited in-network and/or in-family calling.  Even though we may not know exactly what was said to each proposed class member, there is no assertion that they were told something other than that in-network calls were unlimited.  Thus, the only real causation or reliance issue would be whether the customer's behavior varied in reaction to the common representations.  Again, the Court finds that the facts for this claim are the exception to the general rule that proving reliance involves individualized evidence.  Unlike the Overage Minutes Class claim, this claim is simply about signing up for a FSP with free in-network or in-family minutes but not getting the in-network or in-family minutes free.  The claim here is more akin to a regulatory violation where unlawful conduct is clear and undisputed.  It is reasonable in this case to presume that individuals who undisputedly contracted for unlimited in-network and in-family calling wanted and expected unlimited in-network and in-family calling.  If a defendant could defeat certification on a claim like this by simply saying "reliance," then it is hard to imagine a consumer fraud claim that could survive certification.  Additionally, where the alleged violation is straightforward and common to the class and the claims of each individual are small, class certification is especially suited, and may be the only way, to redress the wrong.  See Bosland, 964 A.2d. at 751.  Therefore, the Court will certify this claim on behalf of the Maryland subclass.

*FCA Claim*

Plaintiffs seek certification of the FCA claim on behalf of a national class.   For this class, as with the Overage Minutes Class, Plaintiffs allege that Verizon engaged in an unreasonable

billing practice by charging them for calls which should have been free.  For the reasons discussed above, this Court also will certify this claim on behalf of a national class.

*Declaratory Judgment Claim*

Plaintiffs finally seek certification of the declaratory judgment claim on behalf of a national class.  For the reasons discussed above for the Overage Minutes Class, this Court also will certify this claim on behalf of a national class.

### E.    Summary of the In-Network/In-Family Class Holdings

Based on the foregoing, the Court finds that certification of the In-Network/In-Family Class is appropriate for the following claims:

(1) the FCA and DJA claims on behalf of a national class;

(2) the Maryland breach of contract claim on behalf of the Maryland subclass; and

(3) the Maryland CPA claim on behalf of the Maryland subclass.

The following class definitions apply for the national class and the Maryland subclass, respectively:

(1) All residents of the United States of America who used wireless telephone service provided by Defendant between May 11, 2002 and May 10, 2006 under a Family Share Plan that offered unlimited, free 'In-Network' and/or 'In-Family' calling, were billed under the VISION or I2K billing system, were charged for 'In-Network' and/or 'In-Family' calls, and who were not reimbursed for such calls prior to May 11, 2006;

(2) All residents of the state of Maryland who used wireless telephone service provided by Defendant between May 11, 2002 and May 10, 2006 under a Family Share Plan that offered unlimited, free 'In-Network' and/or 'In-Family' calling, were billed under the VISION or I2K billing system, were charged for 'In-Network' and/or 'In-Family' calls, and who were not reimbursed for such calls prior to May 11, 2006.

The Court holds that the requirements for certification of this class have not been met for Plaintiffs' common law fraud claim.

## VII.   CLASS COUNSEL

The adequacy of class counsel has not been challenged.  This Court finds that the proposed counsel are adequate to represent the class.  Rule 23 provides four factors to be considered when appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class . . . .

Fed. R. Civ. P. 23(g)(1)(A).  The record in this case makes clear that the proposed class counsel have done a substantial amount of work on this case.  At the May 26 hearing, they argued diligently and effectively on behalf of the proposed classes.  The briefing and arguments of the proposed counsel demonstrate that they have knowledge of the applicable law.  Finally, they have represented to this Court that they are "ready, willing and able to commit the resources . . . that are required to litigate this case."  (Pls.' Br., at 47.)  For these reasons, this Court appoints as class counsel:

- Stephen L. Dreyfuss, Esq. of the firm of Hellring Lindeman Goldsteing & Siegal LLP;
- Peter J. Bezek, Esq. and Robert A. Curtis, Esq. of the firm of Foley Bezek Behle & Curtis, LLP; and
- J. Paul Gignac, Esq. of the firm of Arias Ozzello & Gignac LLP, as class counsel.

## VIII.   CONCLUSION

For the foregoing reasons, this Court grants in part and denies in part Plaintiffs' motion for class certification.  An appropriate Order accompanies this Opinion.


DATED: September 8, 2010                    /s/ Jose L. Linares
                                            JOSE L. LINARES
                                            UNITED STATES DISTRICT JUDGE