**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RALPH DEMMICK, et al., | Civil Action No.: 06-2163 (JLL) |
| Plaintiffs, | **OPINION** |
| v. | |
| CELLCO PARTNERSHIP, et al., | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion for judgment on the pleadings filed by Defendant Cellco Partnership, a Delaware General Partnership doing business as Verizon Wireless ("Verizon"), seeking dismissal of Plaintiffs' claims arising under the Federal Communications Act ("FCA"). The Court has considered the submissions in support of and in opposition to the present motion and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons sets forth below, Verizon's motion is denied.

## I. BACKGROUND

On May 11, 2006, Plaintiffs, on behalf of themselves and all others similarly situated, filed a class action Complaint against Verizon. Plaintiffs filed their Second Amended Complaint on March 27, 2008, alleging claims under the FCA and the Declaratory Judgment Act ("DJA"), and also under New Jersey and Maryland state law. Plaintiffs' allegations involve two distinct

disputes related to Verizon's Family Share Plan, which permits multiple cellular telephones to share minutes among a primary line and one or more secondary lines.  First, Plaintiffs allege that Verizon failed to disclose how "after-allowance," or "overage," minutes would be distributed among primary and secondary lines, causing Plaintiffs to be billed "in excess of what they should have been charged."  (Second Am. Compl. ¶ 24.)  Second, Plaintiffs allege that they were charged for "In-Network" calling between primary and secondary lines even though their service agreements provided that such calls would incur no charge.  Plaintiffs state that both of these claims allege that Verizon billed Plaintiffs based on an "undisclosed policy" that contradicts the terms of the relevant service agreements.  (Id. at ¶ 23; see CM/ECF Nos. 26 & 27, Opinion & Order, Mar. 13, 2007, at 7–8 (granting in part and denying in part Verizon's motion to dismiss).)

On September 8, 2010, this Court certified two nationwide classes asserting claims under the DJA and FCA: an Overage Minutes Class and an In-Network/In-Family Class.  The Overage Minutes Class also includes statewide New Jersey and Maryland subclasses asserting breach of contract claims, and the In-Network/In-Family Class includes a statewide Maryland subclass asserting breach of contract and Maryland Consumer Protection Act claims.  On November 2, 2010 the Third Circuit denied Verizon's petition for leave to appeal this Court's class certification ruling, and on December 15 Verizon filed the instant motion for judgment on the pleadings.

## II.     LEGAL STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Where, as here, a motion for judgment on the pleadings alleges that the complaint fails to state a claim upon which relief can be granted,

the court applies the same standards as under Rule 12(b)(6).  Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

For a complaint to survive dismissal under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard is not akin to a " 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient.  Id.  In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S.Ct. at 1949.  It is the underlying specific facts alleged in a complaint that should be treated as true and evaluated.

## III.   DISCUSSION

Verizon's principal argument is that the law of the Third Circuit requires that claims under § 201(b) of the FCA, prior to being filed in federal court, must be brought to the Federal Communications Commission ("FCC") for a determination regarding the reasonableness of the challenged conduct.  Absent a prior determination by the FCC, Verizon argues, Plaintiffs' claims must be dismissed.  Plaintiffs concede that they did not seek FCC review before bringing the instant action but dispute that such review is required under Third Circuit precedent.  Verizon alternatively argues that even if Plaintiffs' FCA claims are properly before this Court, they

should nonetheless be referred to the FCC under the doctrine of primary jurisdiction.  Verizon

finally argues that Plaintiffs' "after-allowance claims" are not cognizable under the FCA.

## A.      Private Right of Action for Damages

Verizon cites Hoffman v. Rashid, No. 10-1186, 388 F. App'x 121 (3d Cir. 2010) (per

curiam), for the proposition that "under binding Third Circuit law" a prior determination by the

FCC regarding a defendant's conduct is "an essential prerequisite" for asserting claims under §

201(b) of the FCA.  (Defs.' Mot. Br. at 1.)  As an initial matter, as it was decided by per curiam

opinion, Hoffman is not "binding Third Circuit law," but may be considered as persuasive

authority.  New Jersey, Dept. of Treasury, Div. of Inv. v. Fuld, 604 F.3d 816, 823 (3d Cir. 2010).

As Verizon bases its argument on Hoffman and no precedent appears to directly address the

question of whether a prior determination by the FCC is "an essential prerequisite" for asserting

claims under § 201(b), the Court begins by examining the language of the relevant statutes.

Section 201(b) of the FCA states that it is "unlawful" for common carriers to engage in

any "charge, practice, classification, or regulation that is unjust or unreasonable."  47 U.S.C. §

201(b).  Section 206 in turn provides that a common carrier is "liable" for "damages sustained in

consequence of" the carrier's engaging in "any act, matter, or thing in this chapter prohibited or

declared to be unlawful."  47 U.S.C. § 206 (emphasis added).  Section 207 then provides that

"[a]ny person claiming to be damaged by any common carrier . . . may either make complaint to

the Commission . . . or may bring suit . . . in any district court of the United States of competent

jurisdiction" for "recovery of the damages for which such common carrier may be liable under

the provisions of this chapter."  47 U.S.C. § 207 (emphasis added).  However, "such person shall

not have the right to pursue both such remedies."  Id.  With this statutory framework in mind, the

Court now turns to the case law cited by Verizon.

In <u>Hoffman</u>, the Third Circuit considered a claim that a carrier's practice of publishing certain "routing numbers" in its telephone records violated "some unspecified provision" the FCA.  388 F. App'x at 122.  Ruling on a motion to dismiss, the District Court had held the plaintiff's FCA claims to be time-barred, but went on to conclude that even if such claims were timely, they failed to state a claim under the FCA upon which the Court could grant relief. <u>Hoffman v. Rashid</u>, No. 07-3159, 2009 WL 5084098, at *6 (E.D. Pa. Dec. 9, 2009).  The Court of Appeals summarily affirmed, stating that "even assuming, <u>arguendo</u>, that his claims were timely raised, we conclude that Hoffman's claims under . . . the FCA are not viable because they do not demonstrate conduct by [the carrier] that could form the basis of an FCA violation." <u>Hoffman</u>, 388 F. App'x at 123.  The Court of Appeals began its analysis by noting that under § 201(b) business practices of common carriers may not be "unjust or unreasonable" and that the plaintiff had "ostensibly" claimed that the carrier's publication of routing numbers violated this provision.  <u>Id.</u>  The Court then explained, "However, it is within the purview of the Federal Communications Commission, not [the plaintiff], 'to determine whether a particular practice constitutes a violation for which there is a private right to compensation.' "  <u>Id.</u> (quoting <u>North County Commc'ns Corp. v. California Catalog & Tech.</u>, 594 F.3d 1149, 1158 (9th Cir. 2010), <u>cert. denied</u> 131 S.Ct. 645).  It is this final statement regarding the availability of a "private right to compensation" upon which Verizon bases its argument.

The Third Circuit's statement regarding private rights of action under § 201(b) quotes <u>North County Communications v. California Catalog & Technology</u>, a recent decision from the Ninth Circuit, while also citing the Supreme Court's 2007 decision in <u>Global Crossing</u>

Telecommunications v. Metrophones Telecommunications, 550 U.S. 45 (2007).[1]  In North

County, a competitive local exchange carrier ("CLEC") brought an action against certain

commercial mobile radio service ("CMRS") providers, seeking a declaratory judgment that it

was entitled to compensation for the CMRS providers' refusal to pay for services rendered by the

carrier because such practice constituted an "unjust and unreasonable practice" in violation of §

201(b) of the FCA.  594 F.3d at 1153–54.  The Ninth Circuit denied such relief, holding that §

201(b) does not permit a private right to compensation absent a prior determination by the FCC

that "particular practice" complained of is unjust or unreasonable under the statute.  Id. at 1158.

The Court reasoned that "entry of a declaratory judgment 'would . . . put interpretation of a

finely-tuned regulatory scheme squarely in the hands of private parties and some 700 federal

district judges, instead of in the hands of the Commission.' "  Id. (quoting Greene v. Sprint

Commc'ns Co., 340 F.3d 1047, 1053 (9th Cir. 2003)).  The Court further explained that the

language of §§ 206 and 207, which creates liability for the "unlawful" activities of common

carriers and permits "[a]ny person" to "bring suit for the recovery of the damages for which such

common carrier may be liable . . . in any district court of the United States," provides only

"procedures for private parties to pursue claims in federal court, but does not establish an

independent private right of action for compensation."  Id. at 1160.  While noting that "[i]t is

arguable that the plain language of § 201(b) contains an implication that private parties may

---

[1]The Third Circuit also cited Prometheus Radio Project v. F.C.C., 373 F.3d 372, 391 (3d Cir. 2004), in which the Court of Appeals described the periodic review provisions of § 202(h) and stated that "[u]nder 47 U.S.C. § 201(b) the Commission is authorized to 'prescribe such rules and regulations [regarding services and charges of communications common carriers] as may be necessary in the public interest to carry out the provisions of this Act.' " (alteration in original).

pursue remedies for violations of the statute," the Court in North County nonetheless concluded

based on policy concerns that no independent right to compensation is available under § 201(b)

absent a prior determination by the FCC as to liability.  Id.

Like the Third Circuit in Hoffman, the Ninth Circuit cited favorably to the Supreme

Court's decision in Global Crossing.  In that case the Supreme Court addressed whether a

particular FCC regulation had lawfully implemented § 201(b)'s "unreasonable practice"

provision.  Global Crossing, 550 U.S. at 54–55.  In framing the issue, the Supreme Court

observed, "The difficult question . . . is not whether § 207 covers actions that complain of a

violation of § 201(b) as lawfully implemented by an FCC regulation.  It plainly does."  Id. at 54.

The Court explained that the "purpose of § 207 is to allow persons injured by § 201(b) violations

to bring federal-court damages actions," id. at 53, and that Congress "expressly linked" the

substantive provisions of § 201(b) to the "right of action provided in § 207," id. at 59.  Extending

this reasoning to the regulation at issue, the Court reasoned that "[a] Congress that intends the

statute to be enforced through a private cause of action intends the authoritative interpretation of

the statute to be so enforced as well."  Id. (quoting Alexander v. Sandoval, 532 U.S. 275, 284

(2001)).  Thus, on its way to holding that the FCC regulation at issue was lawful and that § 207

authorized the instant federal court damages action, the Supreme Court implicitly recognized a

private right of action for compensation under §§ 201(b) and 207.  The Court, however, did not

explicitly address whether such right of action could be predicated upon the existence of a prior

ruling by the FCC regarding the conduct challenged in that case.[2]

---

[2]Verizon counters that the Supreme Court's statement that the language of § 207 "makes clear that the lawsuit is proper if the FCC could properly hold that a carrier's failure to pay compensation is an 'unreasonable practice' deemed 'unlawful' under § 201(b)," Global Crossing,

The Ninth Circuit distinguishes Global Crossing on this ground, framing the Supreme Court's case as one in which a ruling under § 201(b) had already been made by the FCC.  North County, 594 F.3d at 1160.  The Ninth Circuit conversely framed North County as a case in which the FCC had "not determined that the CMRS providers' lack of compensation to CLECs violate[d] § 201(b)," which in its view caused the CLECs' claims to be "fatally flawed."  Id. at 1156.  The FCC rulings at issue in Global Crossing were orders issued on February 4, 1999 and October 3, 2003 to promulgate and explain new rules regarding carriers' reimbursement of payphone operators and to declare certain violations of those rules "unreasonable" within the meaning of § 201(b).[3]  550 U.S. at 51–52.  The FCC orders set forth generally applicable rules and guidelines and were not directed to the parties before the Supreme Court in Global Crossing or to the precise claims at issue there.  See id. at 70 ("the FCC has never determined that petitioner is in violation of its regulation and ordered compliance.  Rather, respondent has alleged such a violation and has brought that allegation directly to District Court without prior agency adjudication") (Scalia, J., dissenting).  The FCC orders in Global Crossing therefore did not determine the reasonableness of the defendant's "particular practices," as apparently required

_____

550 U.S. at 52–53 (emphasis in original), does explicitly support the view adopted in North County.  However, this reading focuses on the "if" but ignores the "could"; the sentence can hardly be read as mandating prior FCC review.

[3]See In re Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, 14 F.C.C.R. 2545, 2631–2632, ¶¶ 190–191 (1999) (setting compensation amount and describing methodology); In re the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, 18 F.C.C.R. 19975, 19990, ¶ 32 (2003) (providing that a "failure to pay in accordance with the Commission's payphone rules, such as the rules expressly requiring such payment that we adopt today, constitutes both a violation of section 276 and an unjust and unreasonable practice in violation of section 201(b) of the Act"); see also 47 C.F.R. § 64.1300(d).

under North County, but instead announced a more general rulemaking.  This Court therefore

doubts that the facts of North County can be meaningfully distinguished on this basis from those

of Global Crossing, as in neither case had the claims at issue under § 201(b) been previously

adjudicated by the FCC.

       In light of this potential conflict and considering both the plain language of the statute and

the Supreme Court's observation that Congress "expressly linked" the substantive provisions of §

201(b) to the "right of action provided in § 207," the Court declines to follow the Ninth Circuit's

decision in North County, as arguably applied in the Third Circuit's non-precedential opinion in

Hoffman.  Absent more conclusive guidance from the Court of Appeals, this Court is not

persuaded that the administrative prerequisite argued for here can or should be read into this

statutory scheme.  Global Crossing did not involve a prior adjudication by the FCC, and even if

the FCC rule at issue in that case were so precisely directed to the defendant's "particular

practice" as to operate effectively as an adjudication, nowhere did the Supreme Court predicate

the statutory right of action under §§ 201(b) and 207 on any regulatory act by the FCC.  Instead,

the Supreme Court made clear that the "purpose of § 207 is to allow persons injured by § 201(b)

violations to bring federal-court damages actions."  This Court therefore concludes that

Plaintiffs' failure to plead a prior FCC determination as to the reasonableness of Verizon's

conduct is not fatal to their claims under the FCA.  However, as discussed more fully below, the

availability of a federal cause of action does not necessarily mean that federal court is the

appropriate forum for such claims.

**B.**      **Primary Jurisdiction**

       Verizon argues that even if the FCA provides a private right of action to Plaintiffs, the

doctrine of primary jurisdiction requires the Court to refer Plaintiffs' FCA claims to the FCC for adjudication by that agency. (Defs.' Mot. Br. at 11–12 n.3.) The doctrine of primary jurisdiction is an abstention doctrine that "requires a court to transfer an issue within a case that involves expert administrative discretion to the federal administrative agency charged with exercising that discretion for initial decision." Richman Bros. Records, Inc. v. U.S. Sprint Communications Co., 953 F.2d 1431, 1435 n.3 (3d Cir. 1991). Four factors that courts should consider when applying this doctrine are "(1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made." Global Naps, Inc. v. Bell Atlantic-New Jersey, Inc., 287 F. Supp. 2d 532, 548 (D.N.J. 2003). Issues involving "abstract statutory terms such as 'reasonable' or 'public interest' " are particularly well suited for transfer to an administrative agency. Alves v. Verizon, No. 08-3196, 2010 WL 2989988, at *4 (D.N.J. July 27, 2010) (quoting FTC v. Verity Int'l, Ltd., 443 F.3d 48, 61 (2d Cir. 2006)). However, "courts must balance the advantages of applying the primary jurisdiction doctrine against the potential costs resulting from complications and delay in the administrative proceedings." Waudby v. Verizon Wireless Services, LLC, No. 07-470, 2007 WL 1560295, at *4 (D.N.J. May 25, 2007).

In Alves, the District Court considered claims that various practices of a carrier, including charging the plaintiff for calls that she allegedly never made, violated § 201(b) as "charging unjust and unreasonable rates." 2010 WL 2989988, at *1–2, 9. The Court stated that "with respect to plaintiff's claim for violation of . . . § 201(b), transfer to the FCC under the doctrine of

primary jurisdiction is appropriate.  This statute requires telephone service providers to utilize practices that are 'just and reasonable.'  Claims 'based on section 201(b) of the Communications Act are within the primary jurisdiction of the FCC.' "  Id. at *10 (quoting In re Long Distance Telecommc'ns Litig., 831 F.2d 627, 631 (6th Cir. 1987); citing North County[4]) (internal citation omitted).  As in Alves, courts have consistently found that reasonableness determinations under § 201(b) lie within the primary jurisdiction of the FCC, because they involve policy considerations within the agency's discretion and particular field of expertise.  See, e.g., Richman Bros. Records, 953 F.2d at 1435; Palermo v. Bell Telephone Co. of Pa., 415 F.2d 298, 300 n.4 (3d Cir. 1969); Oh v. AT & T Corporation, 76 F. Supp. 2d 551, 557 (D.N.J. 1999);  Telstar Res. Group, Inc. v. MCI, Inc., 476 F. Supp. 2d 261, 272 (S.D.N.Y. 2007); cf. Ambassador v. United States, 325 U.S. 317, 324 (1945) (noting that "where the claim of unlawfulness of a regulation is grounded in lack of reasonableness, the objection must be addressed to the [FCC] and not as an original matter brought to the court").

As Plaintiffs' FCA claims here rest entirely upon a determination as to reasonableness, the first two factors of the primary jurisdiction inquiry weigh in favor of referral to the FCC. With respect to the third factor, while nothing on the record suggests that other district courts have addressed practices similar to those alleged here, the FCC has issued a notice of proposed rulemaking regarding disclosures made by carriers "at the point of sale."  See In re Truth-in-Billing and Billing Format, 20 F.C.C.R. 6448, 6476–77 (2005) (soliciting public comment on the tentative conclusion that "disclosure at the point of sale must occur before the

---

[4]Along with its analysis of private rights of action under the FCA, the Ninth Circuit in North County applied primary jurisdiction doctrine in dismissing the plaintiff's § 201(b) claims. See 594 F.3d at 1162.

customer signs any contract for the carrier's services") (emphasis in original).  The third factor

thus tips slightly in favor of referral, as the FCC's proposed rulemaking may be relevant to

Plaintiffs' claims regarding Verizon's alleged "undisclosed" billing practices.  With respect to

the fourth factor, however, Plaintiffs have made no prior application to the FCC regarding

Verizon's practices.  Only where a prior application has been made does this factor support the

application of primary jurisdiction doctrine, because in such cases the issue to be referred may

already be pending before the agency.  Telstar, 476 F. Supp. 2d at 272–73.  The fourth factor

therefore weighs against referral in this case.

Where, as here, only the fourth factor weighs against applying the doctrine, courts have

referred proceedings before them to the FCC, but have done so by means of a stay, rather than a

dismissal.  See, e.g., Telstar, 476 F. Supp. 2d at 273 (citing cases).  Entry of a stay is particularly

appropriate in the class action context, as "the FCC rules do not provide for class actions or the

award of attorneys' fees, and hence [federal court] may provide the only forum capable of

providing the remedy the plaintiff seeks."  Id.; see Waudby, 2007 WL 1560295, at *6 (noting that

following a decision by the FCC while an action was stayed, class action plaintiffs were entitled

to return to the district court to "proceed to final judgment"); Oh, 76 F. Supp. 2d at 557

("because of potential prejudice to the plaintiffs, stay of an action pending an agency

determination of liability is a more appropriate course than outright dismissal").  Here, stay of the

proceedings would defer to the FCC's discretion in determining the reasonableness of Verizon's

actions while permitting Plaintiffs to return to this Court to obtain the class action remedies they

seek.  Furthermore, while referral to the FCC might delay the ultimate resolution of this case,

class notice and merits discovery have not yet begun, so the costs of delay are likely to be

limited.  Nor would entry of a stay necessarily complicate the resolution the overall action here, as Plaintiffs' state law claims are based on the same underlying conduct as their FCA claims and may be subject to a preemption defense, should such federal claims be deemed cognizable.[5]  (See Defs.' Mot. Br. at 15; Answer to Second Am. Compl. at 27.)  Thus, balancing the advantages of referral against the costs of complication and delay, the Court concludes that Plaintiffs' claims under § 201(b) lie within the primary jurisdiction of the FCC and that it is appropriate to stay this action and refer those claims to the FCC.[6]

## IV.    CONCLUSION

For the foregoing reasons, Verizon's motion for judgment on the pleadings is denied. However, this action will be stayed pending FCC review of Plaintiffs' claims under the FCA. Because the FCA does not provide a mechanism by which the Court can directly refer this matter to the FCC, it is incumbent upon Plaintiffs to file an administrative complaint.  An appropriate Order accompanies this Opinion.

DATED: March 29, 2011                      /s/ Jose L. Linares_____
                                           JOSE L. LINARES
                                           UNITED STATES DISTRICT JUDGE

---

[5]Defendants' counterclaims, sounding in breach of contract and unjust enrichment, also appear to arise from the same underlying conduct as Plaintiffs' FCA claims.  (See Answer to Second Am. Compl. at 31–33.)

[6]Having so ruled, the Court declines to consider the remainder of Verizon's arguments in support of its motion.