UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **RALPH DEMMICK , et al.,**<br>　　Plaintiffs,<br>v.<br>**CELLCO PARTNERSHIP,**<br>　　Defendant. | )<br>)<br>)<br>)　No. 06-2163 (JLL)<br>)<br>)<br>) |

## OBJECTION TO SETTLEMENT AND REQUEST FOR ATTORNEY'S FEES

Class member Nancy C. Corser, 291 County Road 959, Logan, Alabama 35098, Verizon Cell Numbers 256-338-1035, 256-338-1158, 256-338-5840 and 256-338-6507, hereby objects to the proposed settlement and Class Counsel's fee request. Ms. Corser subscribed to a Family SharePlan covering the four Verizon telephone numbers listed above between May, 2002 and May 10, 2006, and, after exhausting her plan allowance, was billed under the VISION or 12K billing system at a higher rate than the one associated with the phone making or receiving the calls. Ms. Corser will appear at the fairness hearing scheduled for March 30, 2015 through her undersigned counsel or counsel to be admitted *pro hac vice*.

This Court may not approve this settlement until the amount of direct benefit to the class is known. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2014)(court should "withhold final approval of a settlement until the actual distribution of funds can be estimated with reasonable accuracy"). The parties must provide this Court with data about how many of the PIN calling units are actually used after the 24-month usage period has expired. The PINs are likely to have little value to the class members, since all class members by definition subscribe to a Verizon Wireless cell phone plan that provides a certain number of included minutes. Many, if not most, Verizon Wireless

subscribers today have unlimited calling plans, and therefore will have no need for additional calling minutes through the PINs.   The PINs may simply be window dressing intended to inflate the nominal value of the settlement to facilitate Class Counsel's excessive request for attorneys' fees, and not a real value to the class.  Only time and actual usage data will tell whether the PINs are a real benefit of value to class members, or simply a means of inflating the value of the settlement.

Class Counsel seek $19.26 million of the $36.7 million cash settlement fund, or ***52% of the settlement's current value***, based on the projection that 100% of the PINs made available through this settlement will be used by class members.  This is improper.  Valuation of a claims made settlement must be based upon actual usage of in-kind or discount relief.  *See Fitzgerald v. Gann Law Books*, 2014 U.S. Dist LEXIS 174567 (D.N.J. Dec. 17, 2014)(in-kind benefits may not be included in settlement value if not used).  *See also Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014)(only claimed coupons may be included in settlement value); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) (reversible error to include unclaimed funds in settlement value).

*Fitzgerald* was almost identical to this settlement.  The parties established a $1.145 million cash fund, and made up to $1.88 million worth of webinars available to class members.  Class Counsel asserted that the total settlement value was $3.02 million and asked for a third of that total settlement value as fees, which amounted to 4.78 times their lodestar.  Only 216 class members, however, actually claimed the webinars, for a total webinar value of $49,680.  The court held that the true value of the settlement was not $3.02 million, but $1.194 million.  *Id*. at \*\*16-22.  "[T]he total settlement value

2

figure is inflated, because it includes the value of non-cash benefits that the participants surely suspected, and now know, the defendant will never pay." *Id*. at *17.

The district court in *Fitzgerald* went on to award Class Counsel a fee of twice their lodestar, or $421,577. *Id*. at *53.

Here, Class Counsel likewise seek an exorbitant lodestar-multiplier of 3.97, based upon an inflated valuation of the settlement at $64.2 million. Instead, as *Fitzgerald* instructs, the true settlement value here is the $36.7 million cash fund, less administration and notice costs, or $34.2 million[1], plus the value of any PINs actually used by the class members. Based upon the currently ascertainable settlement value of $34.2 million, Class Counsel should receive a fee of no more than 30% of that figure, or $10.26 million. Significantly, this results in a far more reasonable lodestar multiplier of 2.11, or slightly more than the multiplier approved in *Fitzgerald*.

Moreover, New Jersey state law limits maximum attorneys' fees in actions brought pursuant to statutes that contain a fee-shifting provision, like this one[2], regardless of whether those actions result in the creation of a common fund. *See Rendine v. Pantzer*, 661 A.2d 1202, 1231 (N.J. 1995). In *Rendine*, the court opined:

---

[1] Administrative costs are not properly counted towards the settlement value since they are of benefit primarily to the defendant and class counsel, and not to the class. *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014).

[2] While this case does contain one federal cause of action for violation of the FCA, in addition to the three counts arising under New Jersey state law, that should not remove it from the general rule that New Jersey law applies to fee awards in cases arising under New Jersey law. *See Chin v. Chrysler, LLC,* 538 F.3d 272, 279 (3d Cir. 2008); *Security Mutual Life Ins. Co. v. Contemporary Real Estate Assocs.*, 979 F.2d 329, 331-32 (3d Cir. 1992). Three of the four counts in this action arise under New Jersey law; therefore, the fee award in this case should be guided by the application of New Jersey fee law.

3

> We also discern from our review of the extensive litigation concerning contingency enhancements that fee awards of double the lodestar represent the high end of attorney fee awards under fee-shifting statutes:
>
>> Before the Supreme Court began to address contingent multipliers, the size of contingency enhancements varies both according to the type of litigation and the degree of risk involved in the individual lawsuit. Although the lower courts' tendency to fail to spell out precisely how much of a fee enhancement was due to contingency and how much to other factors makes any breakdown inherently imprecise, a total multiplier of 2, representing all enhancing factors, appears typically to have been applied as a ceiling in public interest litigation….
>
> …
>
> We conclude that contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar. Such enhancements should never exceed one-hundred percent of the lodestar, and an enhancement of that size will be appropriate only in the rare and exceptional case in which the risk of nonpayment has not been mitigated at all, i.e., where the "legal" risk constitutes "an economic disincentive independent of that created by the basic contingency in payment… and the result achieved… is significant and of broad public interest."

*Id.* at 1230-31.

The New Jersey Supreme Court has affirmed the continuing application of *Rendine* to common fund class action settlements arising under New Jersey law. *See The Education Station Day Care Center Inc. v. Yellow Book USA, Inc.*, 194 N.J. 271, 944 A.2d 31 (2008).

The New Jersey Supreme Court has never approved the application of a pure percentage of the fund analysis without reference to the lodestar, and has never approved a lodestar multiplier of more than 1.5. *Rendine* remains the law of the land.

In *Sutter v. Horizon Blue Cross/Blue Shield of New Jersey*, 966 A.2d 508 (App. Div. 2009)(*Sutter I*), the Appellate Division described the two methods of calculating

4

attorneys' fees in a class action, citing exclusively to federal law. *Id*. at 519. The Appellate Division cited to no New Jersey case permitting the application of the common fund method in a class action settlement. *Id*. Because the Appellate Division cannot overrule the New Jersey Supreme Court, that portion of *Sutter I* that provides a summary of federal fee law must be considered mere *dicta* and non-binding. The Appellate Division reversed and remanded to the lower court because the court had not performed an adequate review of the fee and had not determined "the hourly rate derived from the percentage." *Id*. at 520.

*Sutter* was, like the PIN portion of this settlement, a non-cash settlement in which the value derived mostly from injunctive relief, and thus valuation of the settlement depended upon expert testimony and projections of value to the class. Therefore, it is not surprising that, on remand, the superior court calculated an attorneys' fee based upon class counsel's lodestar, guided by *Rendine, supra*. *See Sutter v. Horizon Blue Cross/Blue Shield of New Jersey,* 2012 N.J. Super. Unpub. LEXIS 1661 at **18-19 (July 12, 2012)(*Sutter II*)("citing *Rendine* ... the judge noted that multiplier should be in twenty-five to thirty-five percent range").

Based upon the outcome in *Sutter II, supra*, in which the trial court ultimately followed the New Jersey Supreme Court's opinion in *Rendine* and awarded a fee based upon class counsel's lodestar multiplied by 1.35, it is clear that anything the Appellate Division stated in *Sutter I* is pure *dicta*, since it was unnecessary to the result reached in that case.

Furthermore, pursuant to N.J. Court Rule 4-42-9(b), an application for attorneys' fees must be supported by "an affidavit of services addressing the factors enumerated by RPC 1.5(a)."[3] This requirement applies not only to an effort to recover attorneys' fees authorized by statute, N.J. Court Rule 4:42-9(a)(8), but also to the recovery of attorneys' fees in a class action. Thus, N.J. Court Rule 4:32-2(h), by its terms, specifically incorporates the requirements of Rule 4:42-9(b) to an application for attorneys' fees in a class action. It provides:

> In an action certified as a class action, an application for the award of attorney's fees and litigation expenses, if fees and costs are authorized by law, rule or the parties' agreement, shall be made in accordance with R.4:42-9.

Here, the class plaintiffs are prevailing parties under the New Jersey Consumer Fraud Act ("CFA"). It is undisputed that the Settlement Agreement results in the entry of a final judgment which is enforceable in federal court. That judgment provides the class with much of the relief sought in the complaint. Accordingly, plaintiffs' attorneys are entitled to fees pursuant to the CFA.

---

[3] RPC 1.5(a) lists the following factors:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent.

New Jersey law is settled that a plaintiff can "prevail" for fee-shifting purposes through settlement as well as through litigation:

> It is by now clear that adjudication of liability under a fee-shifting statute is not a prerequisite to fee entitlement under that statute so long as the relief obtained in a settlement of the litigation is substantially that sought in the complaint, is evidenced by an enforceable judgment, and was brought about by the litigation. See, e.g., *Tarr v. Ciasulli*, 181 N.J. 70, 85-87, 853 A.2d 921 (2004); *Warrington v. Vill. Supermarket, Inc.*, 328 N.J. Super. 410, 420-23, 746 A.2d 61 (App.Div. 2000); *Stockton v. Rhulen*, 302 N.J. Super. 236, 240-43, 695 A.2d 309 (App.Div.1997); *H.I.P. (Heightened Independence & Progress, Inc.) v. K. Hovnanian at Mahwah VI, Inc.*, 291 N.J. Super. 144, 154-57, 676 A.2d 1166 (Law Div.1996); See also, *Coleman v. Fiore Brothers, Inc.*, 113 N.J. 594, 552 A.2d 141 (1989) (authorizing counsel fees in settlement of CFA claims).

*Schmoll v. J.S. Hovnanian & Sons, LLC*, 394 N.J. Super. 415, 417-8, 947 A.D.2d 146, 147-8 (App.Div. 2007) (finding class plaintiffs were prevailing parties based on injunctive relief agreed to in settlement of CFA claim).

In *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 860 A.2d 435 (2004), the New Jersey Supreme Court held: "Rule of Professional Conduct 1.5(a) commands that a lawyer's fee shall be reasonable in **all** cases, not just fee-shifting cases. RPC 1.5(a) catalogues the 'factors to be considered in determining the reasonableness of a fee,'… Those factors must inform the calculation of the reasonableness of a fee award in this and **every** case." *Id*. at 21-22 (citations and quotations omitted) (emphasis added); s*ee also Township of West Orange v. 769 Associates, LLC*, 198 N.J. 529, 532, 969 A.2d 1080 (2009) ("In respect of the calculation of fees, we hold that, as in **all** other cases, the analysis is governed by the reasonableness principles of RPC 1.5."); *Rendine,* 141 N.J. 292 (1995) (It is well settled in New Jersey that lodestar is the appropriate standard to be applied in evaluating the reasonableness of a fee award); *Heinl v. Heinl*, 287 N.J. Super. 337, 350, 671 A.2d 420 (App. Div. 1996) ("In determining the reasonableness of **any**

7

fee award, '[t]he initial focus in the calculus is appropriately directed to the time expended in pursuing the litigation.'"). *Cf. City of Englewood v. ExxonMobil Corp.*, 406 N.J. Super. 110, 124-125, 966 A.2d 1082 (App. Div. 2009) (holding the lodestar provisions of RPC 1.5 apply to statutory fee-shifting cases as well as cases not involving fee-shifting statues).

Finally, under federal law there is a "strong presumption" that the lodestar figure is a reasonable fee. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1667 (2010).

## **CONCLUSION**

Class Counsel's request for a fee representing almost four times their lodestar is excessive under both New Jersey and federal law.  Class Counsel may receive no more than a reasonable percentage of amounts actually claimed by or paid to the class.  Valuation of in-kind benefits, if any, must await the close of the redemption period for those benefits.  The fee award should be informed by the application of NJ fee law and its limits on lodestar multipliers.  This Court should award Class Counsel no more than $10.26 million in fees.

_____
Nancy C. Corser


Respectfully submitted,
Nancy C. Corser
By her attorney,


*/s/ Vincent S. Verdiramo, Jr.*_____
VINCENT S. VERDIRAMO, JR.
VERDIRAMO & VERDIRAMO ESQS, PA
3163 Kennedy Blvd.
Jersey City NJ 07306
(201) 798-7082
(201) 798-4627
mmf036@aol.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed via the ECF filing system on February 24, 2015, and that as a result electronic notice of the filing was served upon all attorneys of record.

*/s/ Vincent S. Verdiramo*
Vincent S. Verdiramo

## CONCLUSION

Class Counsel's request for a fee representing almost four times their lodestar is excessive under both New Jersey and federal law. Class Counsel may receive no more than a reasonable percentage of amounts actually claimed by or paid to the class. Valuation of in-kind benefits, if any, must await the close of the redemption period for those benefits. The fee award should be informed by the application of NJ fee law and its limits on lodestar multipliers. This Court should award Class Counsel no more than $10.26 million in fees.

_Nancy C. Corser_
Nancy C. Corser

Respectfully submitted,
Nancy C. Corser
By her attorney,

/s/ *Vincent S. Verdiramo, Jr.*
VINCENT S. VERDIRAMO, JR.
VERDIRAMO & VERDIRAMO ESQS, PA
3163 Kennedy Blvd.
Jersey City NJ 07306
(201) 798-7082
(201) 798-4627
mmf036@aol.com