**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RALPH DEMMICK, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 06-2163 (JLL) |
| CELLCO PARTNERSHIP, | ) Honorable José L. Linares |
| Defendants. | ) Hearing Date: March 30, 2015 |
| | ) Hearing Time: 10:00 a.m. |

**NOW COMES** Kimberly Baker ("Baker")[1], by and through her undersigned counsel, pursuant to (1) the Notice of Proposed Settlement of Class Action, (2) Rule 23(d) of the Federal Rules of Civil Procedure, and (3) equity, and would respectfully submit her Notice of Objection, Intention to Appear and Request to Be Heard at the March 30, 2015 Fairness Hearing.

## I. PRELIMINARY STATEMENT OF OBJECTIONS

Ms. Baker respectfully submits that the proposed settlement is unfair and unreasonable, that a large portion of the proposed settlement is illusory, that Class Counsel's fee request is exorbitant, and that Class Counsel have betrayed their appointed allegiance to the very consumers they purport to represent.

For these reasons, and those that follow, final approval should be denied.

First, the proposed settlement is generally unfair, unreasonable, and

---

[1] Kimberly Jane Baker has been a long-time customer of Verizon Wireless and was a customer during the entirety of the class period. Ms. Baker's Verizon mobile numbers are as follows: 865-250-9013; 865-310-0997; and 865-850-1335.

inadequate, including, most notably, the largely illusory nature of the $27,700,000 in non-cash relief. While the parties advocate approval of this proposed class action settlement by claiming its total value to be $64,200,000, the truth is that the cash value of the proposed settlement – the only portion which can reasonably be credibly valued – is $36,700,000, while the additional $27,500,000 – fully 43% of the purported total settlement amount – consists of artificial relief in the nature of PINS, or so-called "free" calling units. The putative value of such "free" calls is undermined by the fact that a substantial number of settlement class members already have calling plans that permit them to make an unlimited number of free calls within the United States.

Moreover, the undeniable fact is that settlement class members use of such "free" call units – serviced by IDT America Corp. ("IDT") – is significantly restricted by the proposed settlement and by IDT, the third-party provider selected by the parties to service this poorly-crafted aspect of the proposed settlement. For instance, IDT states[2] that:

- units and rates "are subject to change without notice"
- [a]ll calls must be made from the U.S."
- "[c]ompleted calls are rounded to the next full minute"
- "the PINs expire two years from the date of the mailing or emailing"

---

[2]https://www.verizonfspclassaction.com/Documents/Terms%20and%20Conditions.pdf

- "the PINs are not refundable"
- the PINs "cannot be recharged"
- the PINs "have no cash redemption value," and
- IDT provides a laundry list of liability waivers.

In the last analysis, the tacked-on $27,500,000 appears to add very little value to most settlement class members, while adding substantial value – $8,250,000 to be exact – to Class Counsel's fees. Nothing presented by the parties justifies an award of this nature to Class Counsel for obtaining for such exaggerated and artificial relief.

Second, as stated above, the tacked-on $27,500,000 value does nothing but give class counsel a larger fee. If Class Counsel was seeking 30% of the cash settlement of $36,700,000, that request alone may present its own problems of propriety, but here, Class Counsel seeks not only 30% of the cash portion of the proposed settlement, but 30% of the tacked-on $27,500,000 as well. Thus, Class Counsel's fee request is for 30% of $64,200,000, or $19,260,000. This request is more than half, 52.5% to be precise, of the cash portion of the proposed settlement. After deductions are made for attorneys' fees ($19,260,000), expenses ($2,500,000), and incentive fees ($30,000), less than $15,000,000 of the $36,700,000 cash portion of the proposed settlement would remain for distribution.

Make no mistake, a lawyer who recovers a common fund for a class she represents is entitled to reasonable attorneys' fees and reimbursement of expenses prior to the distribution of the balance to the class. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). And courts have wide discretion when awarding attorneys' fees. *In re Thirteen Appeals Arising Out of San Juan*, 56 F.3d 295, 307 (1st Cir. 1995). However, in addition to ensuring that Class Counsel is fairly compensated for their efforts, a district court is also obligated to function as "a quasi-fiduciary to safeguard the corpus of the fund for the benefit of the plaintiff class." *In re Fidelity/Micron Sec. Litig. v. Fidelity Magellan Fund*, 167 F.3d 735, 736 (1st Cir. 1990).

Here, Class Counsel appear to think that the Rule 23(h) hearing is simply for show, disregarding the fact that in "common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002). While Class Counsel is on the same side as settlement class members when it comes to establishing the size of the settlement fund, making discovery on those issues redundant, Class Counsel's position becomes adverse to the settlement class members when it comes to the issue of how much of the $36,700,000, that is, the $64,200,000, will be awarded as fees.[3]

---

[3] Here, Class Counsel's fee for limited work evokes the observation of the California Court of Appeals nearly forty (40) years ago:

What's more, the parties' agreement on a fee award is not the end of the inquiry, for "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth Headset Product Liability Lit.*, 654 F.3d 935, 941 (9th Cir. 2011). After all, the district court's discretion is not unlimited, and "[a] conclusory statement that a fee is reasonable in light of the success obtained is generally insufficient." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988). One court aptly put the situation into its proper context:

> In the vast majority of cases class counsel appears before the court to request a big percentage of the settlement fund, cooperative settling defendants offer no opposition, and class members rarely oppose the request. The court is abandoned by the adversary system and left to the plaintiff's unilateral application and the judge's own good conscience. [citation omitted] The situation is a fundamental conflict of interest and is inherently collusive . . . . The lack of opposition to a proposed fee award give a court the sometimes false impression of reasonableness, and the court might simply approve a request for fees without adequate inquiry or comment.

> [t]hat the use of the device of a class action is subject to abuse in a number of ways is a well known fact. . . . [I]t is the responsibility of the court to guard the integrity of the class action device as well as its own integrity. . . . The present arrangement leaves the unfortunate impression that defendants are buying themselves out of a lawsuit by direct compensation of plaintiffs' counsel.

*Anthony v. Superior Court*, 59 Cal. App.3d 760, 130 Cal. Rptr. 758, 766 (Cal. App. 1976).

*In re Quantum Health Resources, Inc. Securities Litigation*, 962 F. Supp. 1254, 1255 (C.D. Cal. 1997); *see also Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515 (6th Cir. 1993).[4]

Third, the lodestar cross-check for the requested fee reveals a multiplier of nearly 4.0, 3.97 to be exact. This high multiplier, combined with the fact Class Counsel seeks 30% of an illusory $27,500,000, is excessive by Third Circuit standards. The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S.

---

[4]Awarding attorney's fees out of the common fund logically raises concerns that class members no longer have someone representing their interests. The Sixth Circuit has accurately characterized these fears:

> In assessing the reasonableness of requests for fees in class actions resulting in the creation of a common fund, a court must consider factors that are not present in statutory fee shifting cases. The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. In addition, there is often no one to argue for the interests of the class (that their recovery should not be unfairly reduced), since it is to be expected that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel.

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). As a result, the Court approving the settlement must take on the fiduciary mantle discarded by class counsel and act as a fiduciary for all parties, but particularly for absent class members. *Court Awarded Attorney Fees, Report of the Third Circuit Task Force,* 108 F.R.D.237, 255 (1985).

424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). Here, Class Counsel have calculated a lodestar resulting in a multiplier of 3.97, well above the range of multipliers approved as reasonable in this Circuit. *See e.g., In re Cendant Corp.*, 243 F.3d at 742 (3d Cir. 2001) (suggesting a lodestar multiplier of 3 "is the appropriate ceiling for a fee award"). Accordingly, the fee request should be denied.

Fourth, the proposed settlement further reveals that the Defendant agreed not to oppose any fee which Class Counsel might eventually seek. *See* Article IV, Section 7, at page 15 [Doc. 152-2]. This version of a clear-sailing agreement is even worse than others, as it fails to even pretend to put a cap on Class Counsel's fee request. *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991) (a clear-sailing agreement "is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling"). When confronted with such provisions, courts have a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the Class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

The Third Circuit has held that a "thorough judicial review of fee applications is required in all class action settlements." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819 (3d Cir. 1995). This

is especially true where, as here, the parties negotiate class relief and attorneys' fees simultaneously, creating a potential conflict of interest. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) (quoting *Weinberger*, 925 F.2d at 524) ("When parties are negotiating settlements, the court must always be mindful of the danger that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees."). By their nature, such provisions deprive the court of the advantages of the adversary process in resolving fee determinations, and are therefore disfavored. *Weinberger*, 925 F.2d at 525.

In the end, the proposed settlement appears to be premised upon a fictive world. However, "[c]ases are better decided on reality than on fiction." *United States v. Priester*, 646 F.3d 950, 953 (6th Cir. 2011). Unfortunately, the stark reality of this particular proposed settlement is that it benefits Class Counsel vastly more than it does the consumers who comprise the settlement class. The conclusion is unavoidable: this proposed settlement gives preferential treatment to Class Counsel, not to the unnamed consumers whose interests they were appointed to safeguard.

For all of this, the proposed settlement in this case is not fair within the meaning of Rule 23, should be rejected, and the application of attorneys' fees should be summarily denied.

## II. STANDARD OF REVIEW

### A. Standard for Approving Class Action Settlements in General

> *"Because class actions are rife with potential conflicts of interests between class counsel and class members, district judges are expected to give careful scrutiny to the terms of the proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole."*[5]

A district court may approve a settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. p. 23(e)(1)©; *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996), "or (in shorthand) 'reasonable,'" *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009). If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable. *City P'ship*, 100 F.3d at 1043.

Absent class members have little at stake and thus insufficient incentive to closely monitor class counsel and his strategic choices. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987). Accordingly, the role of the District Courts in evaluating proposed settlements is akin "to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002). District Courts must "exercise the highest degree of vigilance in scrutinizing proposed settlements of

---

[5]*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (citations omitted) (collecting cases).

class actions." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Reynolds*, at 279).

### B. The Settlement in This Case Demands Stricter Scrutiny

When, as here, judicial approval of a proposed settlement is sought prior to class certification, the Court must determine whether a class can be certified pursuant to Fed. R. Civ. P. 23(a) and 23(b). "A class settlement cannot technically be approved unless, by definition, a class is upheld." 4 *Newberg on Class Actions* § 11.27 (4th ed. 2006). When, as in this case, the Court is asked to certify a class and approve its settlement in a single proceeding, the requirements of Rule 23(a), which are intended to protect the rights of absent class members, "demand undiluted, even heightened, attention." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 259 (2d Cir. 2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Most importantly, the Court's consideration of a proposed settlement is binary: it must either approve or reject the settlement as proposed. If the Court concludes that there a proposed settlement is deficient, it must reject the entire settlement outright, and may not "delete, modify, or substitute certain provisions." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 176 (W.D. N.Y. 2011).

### C. The Importance of Objectors in Class Action Settlements

*"[T]here is a recognition that objectors make the system work better overall, and perhaps even make it more difficult for class counsel to overreach in a way that harms defendants. Judges are more cognizant of their responsibilities under Rule 23(e), and they increasingly realize that counsel for objectors can help them carry out their responsibilities."*[6]

Class actions are "unique creatures with enormous potential for good and evil." *Johnson v. General Motors Corp.*, 598 F.2d 432, 439 (5th Cir. 1979) (Fay, J., specially concurring). In virtually every class action seeking money damages, the person with the most at stake financially is the attorney representing the class. Commentator's recognize that the attorney's interest in securing the highest fee and the class members' interest in attaining the greatest recovery often diverge. John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 686-91 (1986). The class members, with so little at stake in the first place, have insufficient incentive to closely monitor class counsel and her strategic choices. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987).

Even if the class has a very strong claim on the merits and class counsel ordinarily would prefer to go to trial rather than settle at a discount, the attorney

---

[6] Morrison, Alan B., *Improving the Class Action Settlement Process: Little Things Mean a Lot*, 79 Geo. Wash. L. Rev. 428 (Feb. 2011).

must acknowledge that she cannot control the pace at which the court will entertain her action. Thus, class counsel most likely will decide that it is in his or her own best interest to settle the action and guarantee compensation for his or her work. Similarly, the defendant is aware that class counsel is under substantial pressure to settle. Indeed, legal scholars have noted that the pressure on class counsel to collude with the defendant in this manner may be extreme. *See, e.g.*, Tim Oliver Brandi, *The Strike Suit: A Common Problem of the Derivative Suit and the Shareholder Class Action*, 98 Dick. L. Rev. 355, 391 (1994).

In this case, the parties predictably present the proposed settlement to both the settlement class and the Court in the most favorable light, downplaying any possible weaknesses or problems with the deal. It is also generally the duty of the court as well as counsel for the parties present in the action to allow objectors to testify and state their objections on the record. *Waters v. City of Chicago*, 420 N.E.2d 599 (Ill. App. 1981). After all, it has been said that objectors are the *only* parties with an incentive to uncover flaws in the proposed settlement. Wasserman, R., *Dueling Class Actions*, 80 B. U. L. Rev. 461, 483 (April 2000).

In the absence of an adversarial proceeding, however, this Court is poorly situated to uncover any potential conflicts between Class Counsel and the Class, or among various Class members, or to otherwise assess the fairness of the proposed settlement. Hence, the significance of hearing the contentions of

objectors.[7] When the terms of the settlement impose unreasonable requirements on and erect unnecessary barriers to settlement class members who would like to weigh in on the reasonableness of the proposed settlement, the Court is denied the benefit of contrary views, especially of those views constructively offered to improve the settlement.

As Judge Posner of the Seventh Circuit recently observed, the submissions and arguments of objectors are often important to the Court's consideration of class action settlements. In *Redman v. Radioshack Corp.*, 2014 U.S. App. LEXIS 18181, at **13-14 (7th Cir. Sept. 19, 2014), Judge Posner stated:

> The judge asked to approve the settlement of a class action is not to assume the passive role that is appropriate when there is genuine adverseness between the parties rather than the conflict of interest recognized and discussed in many previous class action cases, and present in this case. *See, e.g., Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014); *Staton v. Boeing Co.*, 327 F.3d 938, 959-61 (9th Cir. 2003); *In re GMC Pick—Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 801, 819-20 (3d Cir. 1995). Critically the judge must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class

---

[7]There are three main kinds of objectors to class settlements – (1) those who genuinely want to improve or scuttle an inadequate settlement, (2) those attorneys in competing class actions who simply want a piece of the fee pie, without any really significant improvements in the settlement for class members, and (3) those competing class counsel who have filed class actions elsewhere but who have been 'low-balled' out of their own cases by defendant picking the group of class counsel who will settle on terms most favorable to defendants. . . ." 19 Class Action Rep. 207 (1996).

> members. When there are objecting class members, the judge's task is eased because he or she has the benefit of an adversary process: objectors versus settlors (that is, versus class counsel and the defendant).

*Id.* at *13-14.

For the reasons set forth above, the Court should consider Ms. Baker's objections in the vein in which Judge Posner characterized the beneficial nature of the arguments asserted by objectors.

### III. NOTICE OF APPEARANCE, INTENTION TO APPEAR, AND REQUEST TO BE HEARD

**NOTICE** is hereby given that the undersigned counsel is appearing on behalf of Ms. Baker in the above-styled action. Counsel for Ms. Baker requests that he be allowed to be heard via telephone at the Fairness Hearing currently scheduled for March 30, 2015. If the Court will not permit participation by telephone, counsel will make every effort to appear in-person.

### IV. ADOPTION OF OTHER OBJECTIONS

Ms. Baker hereby adopts and incorporates by reference herein all other proper and timely objections submitted by other objectors in this matter, including Docs. 160 and 161.

### V. CONCLUSION

Ms. Baker respectfully requests that this Court:

1. Reject the proposed settlement; and

2. Award such other relief as is just and necessary in this matter.

Respectfully submitted, this 26th day of February, 2015.

_____
Kimberly Baker
9256 Linksvue Drive
Knoxville, Tennessee 37922
Tel: 865-693-6644.


_____
W. Allen McDonald, Esq.
249 N Peters Road
Suite 101
Knoxville, TN 379234917
Tel: 865 246 0800

*Counsel for Kimberly Baker*

**CERTIFICATE OF SERVICE**

I do hereby certify that on February 26, 2015, a copy of the foregoing was served, via Federal Express overnight delivery, on the following:

> U.S. District Court
> District of New Jersey
> 50 Walnut Street
> Newark, NJ 07101
>
> Robert A. Curtis, Esq.
> Foley Bezek Behle & Curtis, LLP
> 15 West Carrillo Street
> Santa Barbara, CA 93101
>
> Henry Weissmann, Esq.
> Munger, Tolles & Olson LLP
> 355 South Grand Avenue
> 35th Floor
> Los Angeles, CA 90071

This 27th day of February, 2015.

_____
W. Allen McDonald