## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RALPH DEMMICK , et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 06-2163 (JLL) |
| | ) |
| CELLCO PARTNERSHIP, | ) Honorable José L. Linares |
| | ) |
| Defendants. | ) Hearing Date: March 30, 2015 |
| | ) Hearing Time: 10:00 a.m. |

## OBJECTOR KIMBERLY BAKER'S REPLY
## TO PLAINTIFFS' SUPPLEMENTAL BRIEF [Doc. 167]

**NOW COMES** Kimberly Baker ("Mrs. Baker"), through counsel, and

respectfully submits her Reply to Plaintiffs' 43-page "Supplemental Brief in

Response to Requests for Exclusion and Objections to Settlement."

### I.    INTRODUCTION

> *The judge asked to approve the settlement of a class
> action is not to assume the passive role that is appropriate
> when there is genuine adverseness between the parties
> rather than the conflict of interest recognized and
> discussed in many previous class action cases, and
> present in this case. Critically the judge must assess the
> value of the settlement to the class and the
> reasonableness of the agreed-upon attorneys' fees for
> class counsel, bearing in mind that the higher the fees the
> less compensation will be received by the class members.
> When there are objecting class members, the judge's task
> is eased because he or she has the benefit of an
> adversary process: objectors versus settlors (that is,
> versus class counsel and the defendant).*[1]

---

[1] *Redman v. Radioshack Corp.*, 2014 U.S. App. LEXIS 18181, at \*\*13-14
(7th Cir. Sept. 19, 2014) (Posner, J.) (citations omitted).

Predictably, Plaintiffs present the proposed settlement in its most favorable light, failing to acknowledge with even the slightest effort at candor the possible weaknesses or problems presented by them. Enter the objectors, nine of them here, without whom there would be no adversarial proceeding of any type as to (a) whether the requirements of Rule 23 are met, (b) whether the proposed settlement is fair, adequate, and reasonable, or © whether class counsel's request for an attorneys' fee withstands scrutiny when that fee would significantly surpass the actual cash benefit made available to settlement class members. Frankly, without such an adversarial process, the Court is poorly situated to assess the fairness of the proposed settlement.

In their response to the objections, Plaintiffs discount and brush aside all of Mrs. Baker's objections, suggesting that each lacks any merit whatsoever. In summary, Mrs. Baker objected to the proposed settlement on four[2] primary grounds [Doc. 164, at pp. 1-8]:

> (1) the $27,700,000 in non-cash relief (PIN cards) is largely illusory because (a) a substantial number of settlement class members already have calling plans that permit them to make an unlimited number of free calls within the United States, and (b) actual use of the PIN cards by settlement class members is significantly restricted by the proposed settlement and by the PIN administrator;

---

[2]In her opening submission, Mrs. Baker also adopted by reference the objections asserted by the other objectors. Thus, when Plaintiffs assert that an objection was made by another objector, that objection, whatever it's basis, was also asserted by Mrs. Baker.

-2-

> (2) the PIN card portion of the proposed settlement – purportedly valued $27.7 million – allows Class Counsel to obtain an additional $8.25 million in attorneys' fees from the cash-portion of the proposed settlement, effectively diluting the benefit available to FSP settlement class members – who would not even receive PIN card benefits – from $36.7 million to below $15 million;
>
> (3) the high 3.97 multiplier sought by Class Counsel, combined with the fact Class Counsel seeks 30% of an illusory $27.5 million in non-cash benefits, is excessive by Third Circuit standards; and
>
> (4) the attorneys' fee request is undermined by a clear-sailing provision whereby the Defendant agreed not to oppose a fee requested by Class Counsel, regardless of amount.

Notwithstanding Plaintiffs' contention that she is a FSP class member only, and thus, purportedly lacks standing to object to terms of the proposed settlement which pertain to the "In-Network" (PIN card) settlement class, Mrs. Baker reiterates all of those objections[3] here. As Mrs. Baker will demonstrate below, even if, *arguendo*, she is not a member of the "In-Network" (PIN card) settlement class, the In-Network terms of the proposed settlement, particularly the illusory benefit and $8.25 million attorneys' fee carved out of the cash settlement for it,

---

[3]Plaintiffs suggest that Mrs. Baker did not object to the "allocation" formula provided in the terms of the proposed settlement. That is not strictly true. As noted below, Mrs. Baker objected to the fact that under the proposed settlement, $8.25 million is deducted from the cash portion of the settlement to pay attorneys' fees related to the $27.5 million non-cash (PIN card) portion of the proposed settlement. That was even *before* knew that she was not a member of the In-Network PIN card settlement class. This . . . allocation . . . unfairly dilutes the benefits of Mrs. Baker and other members of the FSP settlement class.

-3-

drastically affect her own claims. Accordingly, the efficacy of her objections regarding the non-cash PIN card portion of the proposed settlement is not at all diminished.

Finally, the requested allocation of attorneys' fees in this proposed settlement is, to say the least, fundamentally unfair. In the end, Class Counsel fee request – for 30% of the cash and non-cash value of the purported settlement ($64,200,000) – would be $19,260,000. If approved, this award would constitute *more than half (52.5%)* of the cash portion of the proposed settlement. Moreover, after deductions are made for attorneys' fees ($19,260,000), expenses ($2,500,000), and incentive fees ($30,000), the fact is that at most, less than $15 million of the $36.7 million gross cash portion of the proposed settlement would actually make it to settlement class members.

In other words, Class Counsel would walk away with several million dollars more than the aggregate cash benefit for both settlement classes. To be sure, that result is not an "excellent" one at all for settlement class members. It is, however, an excellent pay day for Class Counsel.

## II.  The Court Should Consider the Substance of Each Objection and Not Be Persuaded by Plaintiffs' Invective Against the Objectors as Individuals or as a Group.

Plaintiffs begin their response to the nine objections not by articulating their positions in support of the proposed settlement, and not by addressing the substance of the various objections, but instead, by castigating all objectors as a

-4-

group, denigrating objections to class action settlements in general, and by criticizing the fact that there were any objections to the proposed settlement at all. Plaintiffs even cite several district court decisions from Massachusetts, Minnesota, Pennsylvania, and Texas referring to objectors as "pariahs," "marauders," and "remoras," and other unflattering terms. This ignoble assault by Plaintiffs on Mrs. Baker, her counsel, and other objectors demonstrates a fundamental misconception of the importance and role of objectors in the class action settlement process.

In contrast to Plaintiffs' condemnation of objectors, well-respected judges[4] and commentators[5] alike have taken a decidedly different view of class action objectors, acknowledging the important role they play in the final approval determination. More than anything else, objectors are a tool for ensuring that settlements are fair, reasonable, and adequate. Among other benefits, objectors:

---

[4]*E.g.*, *Redman v. Radioshack Corp.*, 2014 U.S. App. LEXIS 18181, at \*\*13-14 (7th Cir. Sept. 19, 2014) (Posner, J.).

[5]Wasserman, R.; *Dueling Class Actions*, 80 B. U. L. Rev. 461, 483 (April 2000) (concluding that objectors are the only parties with an incentive to uncover flaws in the proposed settlement); Morrison, Alan B., *Improving the Class Action Settlement Process: Little Things Mean a Lot*, 79 Geo. Wash. L. Rev. 428 (Feb. 2011) ("objectors make the system work better overall, and perhaps even make it more difficult for class counsel to overreach in a way that harms defendants. Judges . . . increasingly realize that counsel for objectors can help them carry out their responsibilities.")

> ■ can focus the Court's attention on problems in the
> proposed settlement that neither the plaintiffs' nor the
> defense counsel want to call to the Court's attention
> because they want the settlement finally approved;
>
> ■ can force the settling parties to justify these
> weaknesses in the proposed settlement; and
>
> ■ can either prompt an improvement in the proposed
> settlement's terms or convince the Court that approval
> of the proposed settlement is not warranted, making the
> parties return to litigation.

Significantly, the *Amchem*,[6] *Ortiz*,[7] and *Devlin* Supreme Court decisions are three of the leading class action cases of the last two decades. All three were the result of objectors who litigated successfully all the way through to the Supreme Court. Make no mistake, there is a type of objector who understands that if she holds up a settlement, she may get paid to go away. However, there is also a set of objectors who really are motivated by a desire to improve the settlement for class members and to protect class members from receiving an unfair deal. For good reason, Plaintiffs do not tag Mr. McDonald as being a "serial' or

---

[6] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

[7] *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841-845, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999).

"professional" objector.  A cursory glance at PACER shows that Mrs. Baker's counsel is most often listed as plaintiff's counsel in class actions, not as counsel for objectors.[8]

Nevertheless, it is difficult, if not impossible, to parse out which objectors are before the Court to actually improve the terms of the settlement for absent class members and which objectors are there merely seeking a personal payout. Therefore, the solution is for the Court to focus on the substance of the actual objections made, and not who made them.  Regardless of who's objecting, the arguments are either valid or they are not, and the Court, as a fiduciary to the settlement class,[9] is obliged to at least read and consider them.  In the final analysis, it really should not matter if an objector is a prolific objector or if they have never before objected.  What is important is what they are saying.  After all, even so-called serial or professional objectors may – every now and then – hit on a meritorious point.

---

[8]Mrs. Baker has never previously objected to a class action settlement.

[9]*See Laguna v. Coverall N. Am., Inc.*, 2014 U.S. App. LEXIS 10259 (9th Cir. Cal. June 3, 2014) (Chen, dissenting); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2011) ("'trial judges bear the important responsibility of protecting absent class members,' and must be 'assur[ed] that the settlement represents adequate compensation for the release of the class claims'"); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) (noting that "the district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately") (internal quotation marks omitted).

-7-

Mrs. Baker and her counsel are convinced that the Court will well-perform its unique fiduciary role and consider both her submissions and those of other objectors, serial, professional, or otherwise.

## III. Mrs. Baker Has Standing to Object to All Terms of the Settlement.

There is no dispute that Mrs. Baker is a member of the FSP class. Plaintiffs maintain, however, that none of the objectors, including Mrs. Baker, are members of the In-Network settlement class, who are slated to receive $27.5 million worth of "PIN cards," in addition to an equal portion of the $36.7 million cash benefit.[10] Thus, Mrs. Baker will not receive one of the PIN cards. Consequently, Plaintiffs incorrectly contend that Mrs. Baker lacks standing to challenge final approval based on "any criticism related to the desirability or utility of the PIN-accessible calling units."

At bottom, the most notable fallacy in Plaintiffs' standing argument is that the PIN card portion of the settlement, which, Mrs. Baker maintains, is largely illusory given the nature and restrictions for PIN card use, substantially and directly impacts, affects, and dilutes Mrs. Baker's cash benefit claim, and the claims of all other FSP settlement class members. Why? Because Class Counsel is seeking payment of $8.25 million out of the $36.7 million cash portion of the

---

[10]As Mrs. Baker demonstrated on page 3 of her opening submission [Doc. 164], after deductions are made for attorneys' fees ($19,260,000), expenses ($2,500,000), and incentive fees ($30,000), less than $15 million of the $36.7 million cash benefit would remain for distribution.

-8-

proposed settlement as a 1/3 attorneys' fee award for the $27.5 million non-cash, PIN card, In-Network settlement class portion of the proposed settlement.

That Mrs. Baker is not a member of the In-Network settlement class, yet will nevertheless see her cash claim – *and the claims of all FSP members* – substantially diluted to pay the $8.25 million in attorneys' fees sought by Class Counsel based on the value of the In-Network settlement class benefits gives her – and every other FSP settlement class member – a personal stake in the $27.5 million In-Network terms of the proposed settlement.

**IV. It Is Unfair That the $8.25 Million in Attorneys' Fees Attributable to the Alleged Value of the PIN Cards Distributed to the In-Network Class (and Not the FSP Class) Will Be Deducted from the Cash Benefit.**

The total settlement is valued at $64.2 million ($36.7 million cash, $27.5 million non-cash). The requested attorneys' fees are 30% of $64.2 million (although the $27.5 million is not a cash settlement fund), or $19.26 million. Under the terms of the proposed Settlement "[m]embers of the FSP settlement class and members of the In-Network settlement class are each entitled to receive an equal portion of the $36.7 million cash portion of the settlement fund that remains after the costs of notice and settlement administration, court-approved attorneys' fees and expenses, and payments to the Class Representatives are deducted."

In addition to cash, members of the In-Network settlement class will *also* be entitled to receive PIN cards containing calling units that can be used to make free

telephone calls. In fact, a total of 275 million calling units will be made available as part of the settlement. Based on a ratio of 10 cents per calling unit, the value of the PINs will purportedly be $27.5 million.

Plaintiffs have provided information that Mrs. Baker is not a member of the In-Network class (which receives PIN Cards) and that she is only a member of the FSP class, which will not receive PIN cards. Thus, Plaintiffs argue that Mrs. Baker lacks standing to object to the In-Network part of the settlement. Assuming this is accurate, it is unfair that the $8.25 million in attorneys' fees attributable to the alleged value of the PIN cards distributed to the In-Network class will be deducted from the cash settlement paid to Mrs. Baker and other members of the FSP settlement class. In sum, the FSP class is paying the fees for the In-Network class. That is fundamentally unfair.

For all of this, Mrs. Baker's objections to the illusory nature of the PIN card benefit are not only valid, but they are demonstrably cogent and persuasive. Plaintiffs offer no satisfactory explanation as to why the PIN cards are such an enormous value to the proposed settlement. For example, if an In-Network settlement class member received a PIN card but already possesses a Verizon or AT&T or Us Cellular or other cell phone (or a land-line, for that matter) which offers unlimited and free long distance calling within the United States, what exactly is the benefit of the PIN card to her? There is none. Plaintiffs argue that the PIN cards can me used from any phone (except a pay phone). But common

sense nullifies such logic: why would someone use a cell phone or land line other than their own to make a call that they can make just as easily, and certainly more conveniently, on their own phone . . . and do it without costs?  Frankly, Plaintiffs cannot provide a satisfactory answer to that query because no reasonable answer exists.

And what's more, all assurances aside, that units and rates "are subject to change without notice," that "[a]ll calls must be made from the U.S.," that "[c]ompleted calls are rounded to the next full minute," that "the PINs expire two years from the date of the mailing or emailing," that "the PINs are not refundable," that the PINs "cannot be recharged," that the PINs "have no cash redemption value," and finally, that IDT provides a laundry list of liability waivers, all appear to make the convenience and utility of the PIN cards a less than satisfactory choice for settlement class members.

## V.    Mrs. Baker's Objection to Class Counsel's Attorneys' Fees Demonstrates the Impropriety of the Requested Fee.

"A robust and thorough judicial review of fee applications is required in all class action settlements." *In re Schering-Plough Corp.*, 2013 U.S. Dist. LEXIS 147981 at *18 (D.N.J. Aug. 27, 2013).  American judges are accustomed to presiding over adversary proceedings. They expect the clash of the adversaries to generate the information needed to decide the case.  But when a judge is being urged by both adversaries to approve the class-action settlement that they have negotiated, the judge is at a distinct disadvantage in evaluating the fairness of the

-11-

settlement to the class. *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 789-90 (3d Cir. 1995).

Here, because the Defendant, caring only about the gross amount to be paid for the settlement, has little or no incentive to challenge Class Counsel's fee request (which the Defendant neither challenged nor establish a "ceiling" for), the burden necessarily falls upon objectors to force Class Counsel to establish their right to such an enormous fee award.

Not surprisingly, Class Counsel advocate the use of a percentage-of-the-fund method to calculate their fee award in this case. Mrs. Baker does not dispute that this is an appropriate case to apply the percentage method. However, she strongly disputes the propriety of an award of 30% of the gross settlement fund in this particular case, especially when a substantial portion of the fees are unfairly tied to the value of the non-cash benefit.

First, Plaintiffs contend that the 3.97 multiplier[11] is within the range approved by the Third Circuit. They cite a 1998 decision by the Third Circuit, *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F. 3d 283, 341 (3d Cir. 1998). However, three years after the *Prudential* decision, the Third Circuit decided *In re Cendant Corp.*, 243 F.3d at 742 (3d Cir. 2001) and suggested

---

[11]By requesting a multiplier of their purported actual charges, Class Counsel have opened the door to discovery of their time records and Marlow respectfully asks the Court to either require Class Counsel to turn over copies of those records or at least present them to the Court for an *in-camera* inspection.

a lodestar multiplier of 3, not 4, "is the appropriate ceiling for a fee award." Obviously, a multiplier of 3.97 is clearly above that ceiling.

Second, calling the arrangement "not unusual," Plaintiffs also dispute the significance of the clear-sailing agreement entered into between Class Counsel and the Defendant, whereby the Defendant agreed not to oppose an attorneys' fee of any size or amount. Plaintiffs maintain the settlement and fee agreement were the result of months-long mediation and Verizon agreed to let the Court decide the fee award. However, Plaintiffs fail to cite even a single case to counter Mrs. Baker's argument and the authority she cites.

For the reasons set forth herein, in Mrs. Baker's opening submission, and in the other objections adopted herein, Plaintiffs' request for attorneys' fees should be denied.

## VI. Adoption of Other Objections

Mrs. Baker hereby adopts and incorporates by reference herein all other proper and timely objections, replies, and other supporting submissions by other objectors in this matter.

## VII. CONCLUSION

For all of this, the proposed settlement in this case is unfair, should be rejected, and the application of attorneys' fees should be summarily denied.

Respectfully submitted, this 21st day of March, 2015.


W. Allen McDonald, Esq.
249 N Peters Road
Suite 101
Knoxville, TN 379234917
Tel: 865 246 0800

*Counsel for Kimberly Baker*

## CERTIFICATE OF SERVICE

I do hereby certify that on March 21, 2015, a copy of the foregoing was

served, via Federal Express overnight delivery, on the U.S. District Court District

of New Jersey, 50 Walnut Street, Newark, NJ 07101, and via U.S. Mail, postage

prepaid, on the following:

Wanda J. Cochran
1385 Russell Drive
Streetsboro, OH 44241

Kendrick Jan
402 West Broadway, 27th Floor
San Diego, CA 92101

Michael Narkin
85391 Chezem Road
Eugene, OR 97405

Michael J. Rinis
4128 NW 13th Street
Gainesville, FL 32609

Thomas D. Domonoske
461 Lee Avenue
Harrisburg, VA 22802

Shannon Leigh Adams
223 View Street
Asheville, NC 28806

John Finn
5241 Del Sur Cir.
La Palma, CA 90623-2211

Stephen L Dreyfuss
Hellring Lindeman Goldstein & Siegal
One Gateway Center
Newark, NJ 07102

Peter J. Bezek
Robert A. Curtis
Foley, Bezek, Behle & Curtis LLLP
15 West Carilllo St.
Santa Barbara, CA 93101

J. Paul Gignac
Aries Ozzello & Gignac LLLP
115 S. La Cumbre Lane, Ste 300
Santa Barbara, CA 93105

Philip R. Sellinger
Todd Lawrence Schleifstein
Greenberg Traurig, LLP
200 Park Avenue
P.O. Box 677
Florham Park, NJ 07932-0677

Heather V. Taylor
William T. Reilly
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Vincent Savino Verdiramo
Verdiramo & Verdiramo
3163 Kennedy Blvd.
Jersey City, NJ 07306

This 21st day of March, 2015.

_____
W. Allen McDonald