Kendrick Jan (Pro Se)
5464 Carlsbad Boulevard
Carlsbad, CA 92008
Phone: (619) 231-7702
Fax: (619) 230-1839
Email: kendrickjan@hotmail.com

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2015 JUL 20 P 1: 55

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RALPH DEMMICK, on behalf of himself and all others similarly situated; DONALD BARTH, on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CELLCO PARTNERSHIP, a Delaware General Partnership doing business as Verizon Wireless; and DOES 1 through 10, <br><br> Defendant. | **Civ. Act. No. 06-2163 (JLL)** <br><br> **Honorable José L. Linares** <br><br> **OPPOSITION BY KENDRICK JAN TO MOTION TO REQUIRE OBJECTOR APPELLANTS TO POST BONDS ON APPEAL** <br><br> **Motion Date: August 3, 2015** |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 1

   A. The Legal Standard For Imposing an Appellate Bond .......................... 1

II.  ARGUMENT ..................................................................... 2

   A. No Bond is Required to Provide Adequate Security and
      Plaintiffs Request for a Bond is for an Improper Purpose ..................... 2

    1. The four factor test routinely used in the Third Circuit to
       determine whether a Rule 7 bond is appropriate indicates
       the court should not impose a Rule 7 bond on these appellants ............... 2
       a. Whether the amount of the bond is "necessary to assure
         adequate security" ...................................................... 3
       b. The risks that appellant will not pay the costs if he
         loses the appeal ........................................................ 4
       c. The appellant's financial ability to post the bond .................... 5
       d. Whether the amount of the bond will effectively
         preclude pursuit of the appeal ........................................ 5

    2. The merits of the Appeal and Appellants lack of bad faith
       or vexatious conduct indicate an appeal bond is unwarranted ............... 6
       a. All class members have standing to object to the PINs as the
         valuation of the PINs impacts all class members ...................... 6
       b. The PINS are coupons ................................................. 6
       c. The court failed to adequately (and accurately) assess the
         value of the PINs to class members ................................... 7
       d. The court erred in basing a percentage attorneys' fee award
         on the face value of the PINs ......................................... 8
       e. Appellants have shown no bad faith or vexatious conduct .............. 9

   B. Only Those Costs Enumerated In Fed. R. App. Proc. 39 Should
      Be Included In A Bond Motion Brought Under Fed. R. App. Proc. 7 .......... 9

    1. Rule 39 costs are likely to amount to a small fraction of the $25,000
       requested by plaintiffs, and each appellant should only be responsible
       for costs likely to be incurred responding to their individual appeal ......... 10
    2. Administrative delay costs are generally not considered costs taxable
       on appeal and requiring posting of a bond to cover these costs would
       hinder the ability to pursue this appeal ................................... 11

III. CONCLUSION .................................................................. 15

## TABLE OF AUTHORITIES

### Cases

*Adsani v. Miller*
139 F.3d 67, 71 (2d Cir. 1998) ……………………………………………………………… 1, 4, 5

*Azizian v. Federated Dep't Stores, Inc.*
499 F.3d 950, 955 (9th Cir.2007) ……………………………………………………………… 1, 10

*Baker v. Urban Outfitters, Inc.*
No. 01 CV 5440 LAP, 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006) ……………… 4

*Clark v. Universal Builders, Inc.*
501 F.2d 324, 341 (7th Cir. 1974) ……………………………………………………………… 5

*Cobell v. Salazar*
816 F. Supp. 2d 10 (D.D.C. 2011) ……………………………………………………………… 13

*Dardarian v. Officemax N. Am., Inc.*
No. 11-cv-00947, 2013 U.S. Dist. LEXIS 98653, at *6-*7 (N.D. Cal. July 12, 2013) …. 7

*Devlin v. Scardelletti*
536 US 1 (2002) ……………………………………………………………………………………… 1

*Dewey v. Volkswagen of Am.*
No. 07-2249, 2013 WL 3285105, at *2-4 (D.N.J. Mar. 18, 2013) …………………… 2, 3

*Eubank v. Pella Corp.*
13-2091, 2014 WL 2444388 at *3 (7th Cir. June 2, 2014) …………………………………… 15

*Hirschensohn v. Lawyers Title Ins. Corp.*
No. 96–7312, 1997 WL 307777, * 1 (3d Cir. June 10, 1997) ………………………… 1, 11

*In re AOL Time Warner, Inc.*
2007 WL 2741033, *4 (S.D.N.Y. Sept. 20, 2007) ……………………………………………… 1

*In re American President Lines, Inc,*
779 F.2d 714, 717 (D.C. Cir. 1985) ……………………………………………………… 6, 10, 12,13

*In re Cardizem CD Antitrust Litig.*
391 F.3d 812 (6th Cir. 2004) ……………………………………………………………………… 13

*In re Certainteed Fiber Cement Siding Litig.*
2014 U.S. Dist. LEXIS 71702, *2 [No. 2270, 2014 WL 2194513]
(E.D. Pa. May 27, 2014) ………………………………………………………………………… 3, 6, 11

*In re Checking Account Overdraft Litigation*
2012 U.S. Dist LEXIS 18384 (S.D. Fla. Feb. 14, 2012) ....................................... 14

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*
2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003) ...................................... 9, 14

*In re Currency Conversion Fee Antitrust Litig.*
No. M 21-95, 2010 WL 1253741, at *3 (S.D.N.Y. Mar. 5, 2010) ........................... 12

*In re Diet Drugs Products Liab. Litig.*
No. MDL 1203, Civ. A. 99–20593, 2000 WL 1665134, at *4 (E.D.Pa. Nov. 6, 2000) .... 11

*In re HP Inkjet Printer Litig.*
716 F.3d 1173, 1181 (9th Cir. 2013) ............................................................. 7, 8

*In re Initial Pub. Offering Sec. Litig.*
728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) ...................................................... 5

*In re IPO Sec. Litig.*
728 F. Supp. 2d 289 (S.D.N.Y. 2010) ............................................................ 12

*In re Magsafe Apple Power Adapter Litig.*
12-15757, 2014 WL 1624493 at *1 (9th Cir. Apr. 24, 2014) ...................... 1, 10, 13

*In re Merrill Lynch Relocation Mgmt., Inc.*
812 F.2d 1116, 1123 (9th Cir.1987) ............................................................. 2

*In re NASDAQ Mkt.-Makers Antitrust Litig.*
187 F.R.D. 124 (S.D.N.Y. 1999) ................................................................. 14

*In re Nutella Mktg. & Sales Practices*
No. CIV.A. 11-1086 FLW, 2012 WL 6013276 (D.N.J. Nov. 20, 2012) ...................... 12

*In re Nutella Mktg. & Sales Practices Litig.*
589 Fed. App'x 53 (3d Cir. 2014) ................................................................ 12

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Products Liab. Litig.*
2:11-MD-2233, 2014 WL 2931465 (S.D. Ohio June 30, 2014) .............................. 13

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*
No. 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *6 (D. Minn. Sept. 11, 2012) ....... 14

*Lindsey v. Normet*
405 U.S. 56, 77-79 (1972) ................................................................. 4, 5, 14

*Riss v. Normet*
405 U.S. 56, 79 (1972) ................................................................................ 4

*Rossi v. Proctor & Gamble Co.*
No. CIV.A. 11-7238 JLL, 2014 WL 1050658, at *2 (D.N.J. Mar. 17, 2014) ............... 11

*Ryan v. Endo Pharm., Inc.*
No. CIV.A. 05-3450, 2014 WL 4209219, at *2 (E.D. Pa. Aug. 25, 2014) .................. 2

*Schindler Elevator Corp. v. United States ex rel. Kirk*
131 S. Ct. 1885, 1891 (2011) ...................................................................... 7

*Selletti v. Carey*
173 F.3d 104, 112 (2d Cir.1999) .............................................................. 2, 3

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*
463 F.3d 646, 654 (7th Cir. 2006) ........................................................... 7, 8

*Taniguchi v. Kan Pac. Saipan, Ltd.*
132 S. Ct. 1997, 2006 (2012) ..................................................................... 15

*Vaughn v. Am. Honda Motor Co.*
507 F.3d at 298-99 .................................................................................... 13

## Codes, Rules and Other Materials

15 U.S.C. §15 ........................................................................................ 14
28 U.S.C. §1711 ...................................................................................... 7
28 U.S.C. §1712 ................................................................................... 6, 8
28 U.S.C. §1712(a) ................................................................................. 8
28 U.S.C. §1920 .................................................................................... 15

Federal Rules of Appellate Procedure
7 ........................................................................ 1, 2, 5, 6, 9-14
8 ........................................................................................... 13
23 ............................................................................................ 1
39 ................................................................... 5, 9-11, 13, 15
39(e) (1-2) ............................................................................. 9, 10
39(e) (3) ................................................................................. 10
62(d) ...................................................................................... 13

Third Circuit Local Appellate Rule 39.3 ...................................................... 10

American Heritage Dictionary of the English Language
(5th ed., Houghton Mifflin Harcourt Publishing Company 2013) ........................... 7

iv

Webster's Ninth New Collegiate Dictionary (1988) ..................................... 7

Class Action Professional Objectors: What to do About Them?
John E. Lopatka and D. Brooks Smith, 39 Fl. St. Univ. L. Rev. 865 (2012) ........... 5, 6

## I.   INTRODUCTION

Plaintiffs' motion for an appeal bond is aimed at discouraging appeal of this court's approval of a class action settlement. The motion misconstrues the objections and related appeals and reflects a lack of respect for the Rule 23 objection process and objectors' right to appeal. The appeal concerns honest and meritorious objections to the settlement, including the court's award of attorneys' fees and expenses amounting to 59% of the cash portion of the settlement fund. Plaintiffs' counsel stands to profit handsomely if their motion to require posting of a bond leads to dismissal of objectors' appeals. The U.S. Supreme Court upheld the right to appeal in *Devlin v. Scardelletti*, 536 US 1 (2002). The court should reject plaintiffs' attempt to interfere with objectors' ability to appeal.

### A.  The Legal Standard For Imposing an Appellate Bond

Rule 7 of the Federal Rules of Appellate Procedure provides for the posting of a bond, "to ensure payment of costs on appeal." Fed. R. App. Proc. 7. The purpose of the rule is to "protect ... an appellee against the risk of nonpayment by an unsuccessful appellant." *In re AOL Time Warner, Inc.*, 2007 WL 2741033, *4 (S.D.N.Y. Sept. 20, 2007). The Third Circuit has held that the "costs' referred to in Rule 7 are those that may be taxed against an unsuccessful litigant under Federal Rule of Appellate Procedure 39." *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96–7312, 1997 WL 307777, * 1 (3d Cir. June 10, 1997) (citation omitted).

Although normally the appeals court reviews the district court's post-judgment order pursuant to Rule 7 for abuse of discretion, where an appeal challenged the extent and type of costs allowable under Rule 7, a *de novo* standard of review applies. *Adsani v. Miller*, 139 F.3d 67, 71 (2d Cir. 1998). *Accord., In re Magsafe Apple Power Adapter Litig.*, 12-15757, 2014 WL 1624493 at *1 (9th Cir. Apr. 24, 2014) *quoting Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 955 (9th Cir.2007) ("[W]e review objections to the amount of a bond for abuse of discretion. However, the meaning of the phrase 'costs on appeal' [in Fed. R. App. Proc. 7] is a question of law that we review de novo.")

A cost bond should not be imposed where it will unduly burden an appellant's right to maintain his appeal. A cost bond is meant "to insure that whatever assets a party does possess

1

will not have been dissipated or otherwise have become unreachable by the time such costs actually are awarded." *Selletti v. Carey*, 173 F.3d 104, 112 (2d Cir.1999); *see also In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1123 (9th Cir.1987). A cost bond should not work as a sanction against the appellant. The merits of the appeal, and the question of whether the appeal was filed in good faith, are questions for the appeals court, not the district court.

## II.    ARGUMENT

### A.  No Bond is Required to Provide Adequate Security and Plaintiffs Request for a Bond is for an Improper Purpose

#### 1.  *The four factor test routinely used in the Third Circuit to determine whether a Rule 7 bond is appropriate indicates the court should not impose a Rule 7 bond on these appellants.*

The first question before the court is whether a Rule 7 bond is appropriate. Plaintiffs argue appellants should be required to post a bond because "there is a substantial likelihood that the objectors will lose their appeals and be required to pay Plaintiffs' costs on appeal." Dkt. 205-3, page 5. Focusing on the possibility that the objectors might lose, plaintiffs fail to analyze the factors that courts in the Third Circuit routinely consider when determining whether to require a bond, or the amount of the bond, if any.

In *Dewey v. Volkswagen of Am.*, No. 07-2249, 2013 WL 3285105, at *2-4 (D.N.J.

Mar. 18, 2013) this court stated that a court should consider the following four factors:

> (1) whether the amount of the bond is "necessary to assure adequate security" (citations omitted);
>
> (2) the risks that the appellant will not pay the costs if it loses the appeal (citations omitted);
>
> (3) the appellant's financial ability to post the bond (citations omitted); and
>
> (4) whether the amount of the bond will effectively preclude pursuit of the appeal (citations omitted).

The Eastern District of Pennsylvania cited the same four factors in *U.S. ex rel. Ryan v. Endo Pharm., Inc.*, No. CIV.A. 05-3450, 2014 WL 4209219, at *2 (E.D. Pa. Aug. 25, 2014) *recons. denied*, No. CIV.A. 05-3450, 2014 WL 4933006 (E.D. Pa. Oct. 1, 2014).

In lieu of the fourth factor included in the above test, plaintiffs enumerated an

2

alternative two factors, as cited in *In re Certainteed Fiber Cement Siding Litig.* 2014 U.S.

Dist. LEXIS 71702, *2 [No. 2270, 2014 WL 2194513] (E.D. Pa. May 27, 2014). In addition

to the first three factors listed above, in *Certainteed* the court considered (4) the merits of the

appeal, and (5) whether appellant has shown any bad faith or vexatious conduct. Dkt. 205-3,

pages 8-9. Reliance on the *Certainteed* test allows plaintiffs to ignore the issue of whether

imposing the bond will interfere with appellants' ability to pursue the appeal. Instead, their

motion focuses on claims related to objectors' reported status as serial objectors in

connection with other class action settlements and other issues related unrelated to this

appeal. Nevertheless, under either the *Dewey* test or the *Certainteed* test, a cost bond is

unwarranted.

### a) *Whether the amount of the bond is "necessary to assure adequate security".*

Generally the consideration of whether the amount of the bond is "necessary to assure

adequate security" relates to the need to preserve assets for the real parties in a lawsuit (not

their attorneys). For example, in *In re Certainteed, supra,* the court found it appropriate to

require an appeal bond because it was "necessary to assure adequate security to protect the

interests of the settlement class." *In re Certainteed*, 2014 WL 2194513, *1. In that case class

members had claims related to damaged siding, and plaintiffs argued a lengthy appeal could

have "a potential impact on class members' ability to protect what is likely their most

valuable asset" (their homes) and concern that "each claimant's home will be subjected to

another rainy season and winter before repair is an option for many claimants." *Id. See also*

*Selletti,* 173 F.3d at 112 (a cost bond is meant "to insure that whatever assets a party

*does* possess will not have been dissipated or otherwise have become unreachable by the time

such costs actually are awarded.").

Under the terms of the settlement agreement entered into in this case, Verizon

Wireless was to transfer the $36.7 million cash portion of the settlement to the settlement

administrator within seven days following the date of filing of the motion for preliminary

approval. The funds satisfying plaintiffs' judgment are thus being held by the settlement

administrator for the class, and there is little risk to the plaintiffs that the settlement will be

dissipated as a result of these appeals. Dkt. 152-2, page 10.

The Supreme Court's ruling in *Lindsey v. Normet* suggests the need for adequate security must be tied to the need to protect the appellees. Requiring security to protect appellees is valid if "reasonably tailored to achieve these ends and uniformly and nondiscriminatorily applied." *Riss v. Normet,* 405 U.S. 56, 79 (1972). Here, deep pocketed plaintiffs' attorneys are clearly seeking a bond in an amount calculated to discourage class members from appealing the court's approval of the settlement. Their exaggerated "need" for $55,000 (amounting to approximately 0.2 % of the attorneys' fees they will be receiving in this case) is vastly overstated.

### *b) The risks that appellant will not pay the costs if he loses the appeal.*

Plaintiffs' argument in this regard boils down to the fact that the appellants come from different states so collecting from them will be difficult. Doc. 205-3, page 10. I have been a practicing attorney in good standing in the state of California for 33 years. Plaintiffs have provided no basis for concluding that I would not pay costs should I lose on appeal. Courts finding this factor supports imposing an appeal bond have typically found appellants posed a high risk of non-payment based on their failure to pay costs already ordered by the court. In *Baker v. Urban Outfitters, Inc.*, No. 01 CV 5440 LAP, 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006), for example, the court found that appellants had already failed to pay $473,455.04 of court ordered costs. The court was also persuaded by the fact that one of the appellants resided in a foreign country (not merely another state), and had no assets in the United States, so "recovery of appeal costs through the judicial process seems unlikely." *Id. Accord. Adsani*, 139 F.3d at 79 (imposing an appeal bond where risk of non-payment was especially high given that $57,993.39 in unsecured trial costs had already been taxed against appellant and remained unpaid, beyond that covered by the $50,000.00 trial bond, and appellant had no assets in the United States and thus was unlikely to pay any unsecured costs).

No such situation applies here, where plaintiffs have presented no evidence suggesting I would not pay any court ordered costs. This factor suggests imposition of an

4

appeal bond is unwarranted.

### c) *The appellant's financial ability to post the bond.*

Plaintiffs claim "There is no evidence that Objector Appellants will be able to fully pay Plaintiffs' costs on appeal if they lose their appeals" Dkt. 205-3, page 9). Plaintiffs essentially ask the court to presume the objectors are unable to pay. Where there is no evidence suggesting an inability to pay, however, the court should presume that the appellants *are* able to pay the costs. *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) (presuming objectors have the financial ability to post a bond when no evidence to the contrary was presented). In light of a lack of any evidence to the contrary, the court should presume appellants could pay costs taxable on appeal. *See Adsani*, 139 F.3d at 79 (a district court's imposition of any sort of cost bond "can always be described as an implicit finding . . . that the appellant poses a payment risk").

### d) *Whether the amount of the bond will effectively preclude pursuit of the appeal.*

While appellants may be *able* to post a Rule 7 bond to secure costs taxable under FRAP 39, imposition of such bonds often unduly burdens the appeal process resulting in objectors dismissing their appeal. The Supreme Court has indicated that a district court may not impose a bond in an amount beyond what is necessary to insure adequate security if to do so would effectively preclude pursuit of an appeal. *Lindsey v. Normet*, 405 U.S. 56, 77-79 (1972) (holding that statute conditioning appeal on posting of double bond was unconstitutional under Fourteenth Amendment equal protection clause). District courts cannot require appellants post a bond in order to discourage exercise of the right to appeal. *See Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974) (stating that "any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated").

Despite the clear mandate from the Supreme Court and the courts of appeal that appeal bonds should not be imposed for the purpose of discouraging appeal, plaintiffs' attorneys seek appeal bonds for just that purpose. An article by John E. Lopatka, a law professor at Pennsylvania State University, and D. Brooks Smith, a Third Circuit judge, entitled "Class Action Professional Objectors: What to do About Them?" catalogs "methods

5

of suppressing professional objectors", while part four describes the use of "appeal bonds as the least imperfect approach." 39 Fl. St. Univ. L. Rev. 865 (2012).

Rule 7 was not intended to be used as a means of discouraging appeals, even if perceived by the trial court to be less than meritorious. *See In re American President Lines, Inc*, 779 F.2d 714, 717 (D.C. Cir. 1985) (denying bond request because it failed as legitimate means of protecting Appellee against possibility that appeal might turn out to be frivolous).

## 2. *The merits of the Appeal and Appellants lack of bad faith or vexatious conduct indicate an appeal bond is unwarranted.*

The alternative factors referenced in In re *Certainteed*, (4) the merits of the appeal, and (5) whether appellant has shown any bad faith or vexatious conduct, also weigh against imposing a bond on appellants. I believe the appeal has merit. Although the district court's order raises several issues indicating appellate review is appropriate, for the purposes of this motion, discussion of two important issues is appropriate. The first issue is whether the court's determinations regarding the PIN portion of the settlement constituted abuse of discretion or clear error. The second is the court's award of attorneys' fees based on its valuation of the PINs.

### a) *All class members have standing to object to the PINs as the valuation of the PINs impacts all class members.*

As a preliminary matter, I believe the court erred in determining that class members who are not part of the In-Network Settlement Class have no standing to challenge the court's ruling regarding the PINs. The court accepted the parties' valuation of the PIN portion of the settlement at $27.5 million. I believe this constituted error. I further believe that all class members have standing to object to the PINs as the attorneys' fee award was partially based on the valuation of PINs but paid out of the cash portion of the common fund. Accordingly, I have standing to object to the court's rulings regarding the PINs.

### b) *The PINS are coupons.*

My objection pointed out that the PINS are coupons and should be subjected to the heightened scrutiny required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712. The court disagreed ("The Court first notes that the PINs are not coupons as they are fully

6

redeemable or transferable without entering into a new business relationship with Defendant. Put differently, the PIN's value can easily be realized in and of itself without predicating use on, for example, another product of Defendant."). Dkt. 181, page 26. Respectfully, the court erred in this determination.

Congress does not define the term "coupon" anywhere in CAFA. *See* 28 U.S.C. §1711 (definition section). "Where a statute does not define a key term, [courts] look to the word's ordinary meaning." *In re HP Inkjet Printer Litig.,* 716 F.3d 1173, 1181 (9th Cir. 2013), citing *Schindler Elevator Corp. v. United States ex rel. Kirk,* 131 S. Ct. 1885, 1891 (2011). Ordinary usage does not limit "coupons" to either discount or "a requirement to enter into a business relationship."

According to the AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed., Houghton Mifflin Harcourt Publishing Company 2013), *available at* http://ahdictionary.com/word/search.html?q=coupon a coupon is "a ticket, card, or advertisement that entitles the holder to a certain benefit, such as a cash refund or a gift." Webster's Dictionary also defines coupons as "a form surrendered in order to obtain an article, service or accommodation." Coupons are commonly given for merchandise for which no cash payment is expected in exchange. *Dardarian v. Officemax N. Am., Inc.,* No. 11-cv-00947, 2013 U.S. Dist. LEXIS 98653, at \*6-\*7 (N.D. Cal. July 12, 2013) (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988)). Accordingly, the PINs fall within the ordinary definition of a coupon.

### c) The court failed to adequately (and accurately) assess the value of the PINs to class members.

Unlike the cash portion of the settlement, the actual value of the PINs differs significantly from their face value. CAFA was born of the recognition that "[c]ompensation in kind is worth less than cash of the same nominal value." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 654 (7th Cir. 2006) (internal quotation omitted). Coupons that can be redeemed for an entire product suffer from the same shortcomings as those that can only be used for a discount, including as noted in *Synfuel* "(1) it is doubtful that they provide meaningful compensation to most class members; (2) they often fail to disgorge ill-

7

gotten gains from the defendant". *Synfuel*, 463 F.3d at 653 (internal quotations omitted).

Verizon has itself even argued that for revenue recognition purposes calling card minutes cannot be assessed at face value. *See* Verizon letter to the FCC dated April 30, 2010, *available at* http://commlawmonitor2.wp.lexblogs.com/wp-content/uploads/sites/512/2010/05/Verizon.pdf, attached hereto as Exhibit 1 (informing FCC that retroactive to January 1, 2010, Verizon will report the revenues actually received from selling prepaid cards to distributors or other carriers, rather than the face value of the cards).

Given the reality that a PIN does not have the same value to class members as cash, nor involve the same cost to the defendant as would a cash award equivalent to the face value of the PIN, the court erred in valuing the settlement based on the face value of the PINs.

### d) The court erred in basing a percentage attorneys' fee award on the face value of the PINs.

I appealed based on my understanding that the court's decision to award percentage attorneys' fees based in part on the face value of the PINs constituted error. CAFA regulates attorney's fees in coupon settlements by providing that any portion of fees attributable to the award of the coupons "shall be based on the value to class members of the coupons that are redeemed" rather than the theoretical value of the coupons available for redemption. 28 U.S.C. §1712(a). The problem with the PINS, and coupons in general, is that they "mask [ ] the relative payment of the class counsel as compared to the amount of money actually received by the class members." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1179 (9th Cir. 2013). "[T]he attorneys' fees provisions of § 1712 are intended to put an end to the 'inequities' that arise when class counsel receive attorneys' fees that are grossly disproportionate to the actual value of the coupon relief obtained for the class." *In re Inkjet,* at 1179 (quoting SEN. REP. NO. 109-14, at 29-32 (2005), reprinted in 2005 USCCAN 3).

The above arguments are based on CAFA, but even if the appeals court determines the PINs are not technically coupons under CAFA, the court's fairness determination should still include an adequate assessment of the value of the settlement to the class. Awarding approximately 60% of the settlement's cash value as attorneys' fees was grossly unfair to the class, and disadvantaged Family Share Plan class members vis-à-vis In-Network class

8

members. The court evidently disagreed with these arguments, but these are not frivolous arguments. Moreover, the fact that each of the objectors took issue on some level with the PINs suggests this portion of the settlement is problematic, contrary to the court's determination.

Class counsel's arguments notwithstanding, the instant appeal was brought in good faith out of a belief that the settlement, allocation of settlement funds, and attorney fee awards in the case are unfair to the class.

### *e) Appellants have shown no bad faith or vexatious conduct.*

Plaintiffs have alleged no bad faith or vexatious conduct in the instant litigation. Rather, their entire argument as to objectors' bad faith stems from the fact that some of the objectors have previously appeared in other class action litigation. These arguments ignore the important role played by objectors in policing class action settlements. The court's comments in *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, a case cited by Plaintiffs (Dkt. 205-3, page 14), are instructive.

> But I am also mindful of the fact that objectors sometimes serve a useful role in helping police class action settlements in cases where the assumptions that customarily underlie the adversary system may be inaccurate (for example, defendants may co-opt plaintiffs' counsel by agreeing to unreasonably high attorney fees). To pose too high a hurdle for objectors, therefore, could create a general deterrent that might well not comport with public policy.4

2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003) (imposing a bond of only 10% of the amount originally sought by class counsel).

The court's ruling on this bond motion should reflect the important role played by objectors in helping to improve the fairness of the settlement for other class members. The court should deny the bond motion in its entirety as it is unnecessary to secure costs on appeal and brought for the improper purpose of discouraging appeal.

### B. Only Those Costs Enumerated In Fed. R. App. Proc. 39 Should Be Included In A Bond Motion Brought Under Fed. R. App. Proc. 7.

Notwithstanding the foregoing, should the court find a bond is warranted, the next step is to determine an appropriate amount. There is no dispute that a Rule 7 bond may include costs enumerated in Fed. R. App. Proc. 39, subdivision (e) "(1) the preparation and

9

transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a *supersedeas* bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." *See American President Lines,* 779 F.2d at 716 ("Appellate Rule 7 specifies that a 'district court may require an appellant to file a bond or provide other security in such form and amount as it finds necessary to ensure payment of costs on appeal in a civil case.' The costs referred to, however, are simply those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39").

Recently the Ninth Circuit held that, "The district court may not include in an appeal bond any expenses beyond those referenced in Fed. R. App. Proc. 39 unless such expenses may be shifted pursuant to another statute." *In re Magsafe Apple Power Adapter Litig.,* supra, *citing Azizian, supra,* 499 F.3d at 959–60.

### 1. *Rule 39 costs are likely to amount to a small fraction of the $25,000 requested by plaintiffs, and each appellant should only be responsible for costs likely to be incurred responding to their individual appeal.*

Although itemization of costs may not be required before ordering imposition of an appeal bond, some connection with potential costs is warranted. Third Circuit Local Appellate Rule 39.3 sets the maximum rate for taxation of reproduction costs in this Circuit at $.10 per page. 3d Cir. L.A.R. 39.3. Appellants will be paying the costs for preparation and transmission of the record and the reporter's transcript directly. Fed. R. App. Proc. 39(e) (1-2). No *supersedeas* bond has been requested. Fed. R. App. Proc. 39(e) (3). Even if plaintiffs are required to file multiple briefs and utilize different parts of the record to address different arguments (see Dkt. 205-3, page 16), it is unlikely plaintiffs' costs will amount to more than $1,000 to $2,000 (for copying and binding of responsive briefs). As many of the appellants had similar objections to the PINs, the need to reproduce large parts of the record is unlikely. At any rate, should the court determine a bond is warranted, each individual objector should only be required to post a bond sufficient to cover costs to prepare a brief responsive to that objectors' appeal. At least as far as brief preparation costs are concerned, there is little rationale for joint and several liability for a large bond. If individual appellants choose to dismiss their appeals, the costs to respond will decline, as will the need for a large bond.

10

Should the court impose a bond, the $25,000 requested by plaintiffs is clearly excessive.

## 2. *Administrative delay costs are generally not considered costs taxable on appeal and requiring posting of a bond to cover these costs would hinder the ability to pursue this appeal.*

Rather than merely seeking a bond to cover costs enumerated in Fed. R. App. Proc.
39, Plaintiffs also seek $30,000 to cover settlement administration costs plaintiffs suggest are
likely to be incurred. The $30,000 request is itself excessive for maintaining a website that
will largely be inactive during the pendency of the appeal. Plaintiffs indicate the costs will
include periodic updates or document postings on the website. Doc. 205-3, page 16. In
practice, I do not believe appellate documents are ever posted on a settlement website.
Settlement administrators typically place a brief announcement on a settlement website
indicating that the settlement approval has been appealed, and little else is required. The
$30,000 request is another inflated request. Leaving this aside, I believe it is improper to
include administrative delay costs in an appeal bond.

Multiple courts within the Third Circuit have rejected requests for inclusion of such
costs in an appeal bond, in keeping with the reasoning found in *Hirschensohn v. Lawyers
Title Ins. Corp.* For example *In re Certainteed Fiber Cement Siding Litig.*, No. 2270, 2014
WL 2194513 (E.D. Pa. May 27, 2014) chose not to include costs associated with continued
administration of a settlement fund in determining the amount of an appeal bond. The court
observed:

> "most decisions within this Circuit that have considered this question have
> decided that a bond imposed under Rule 7 cannot secure costs associated with
> continued administration of a settlement fund or damages caused by delay
> incident to an appeal."

*In re Certainteed Fiber Cement Siding*, at *3, *citing In re Diet Drugs Products Liab.
Litig.*, No. MDL 1203, Civ. A. 99–20593, 2000 WL 1665134, at *4 (E.D.Pa. Nov. 6, 2000)
(finding insufficient support for plaintiffs' contention that a bond under Rule 7 can secure
damages caused by appeal) *and Rossi v. Proctor & Gamble Co.*, No. CIV.A. 11-7238 JLL,
2014 WL 1050658, at *2 (D.N.J. Mar. 17, 2014) ("Because Rule 39 does not enumerate any
additional administrative costs caused by delay in the disbursement of settlement funds,

11

inclusion of these costs is denied.").

Recently, however, a court in this circuit did determine that administrative costs could be secured by a Rule 7 bond. *See In re Nutella Mktg. & Sales Practices*, No. CIV.A. 11-1086 FLW, 2012 WL 6013276 (D.N.J. Nov. 20, 2012) *aff'd sub nom. In re Nutella Mktg. & Sales Practices Litig.*, 589 Fed. App'x 53 (3d Cir. 2014). This bond was upheld by the Third Circuit, which noted in its ruling that the appellants had not meaningfully responded to the plaintiffs' motion seeking the bond. The district court also reduced the delay costs requested by half and noted the amount of the bond was "not so high as to preclude the Objectors from taking an appeal—especially considering that the bond is shared by the ten appealing Objectors." 2012 WL 6013276, at *3. Despite this, respectfully, I feel this decision is somewhat anomalous and inconsistent with most decisions in the Third Circuit and around the country.

A majority of courts around the country explicitly reject the contention that settlement administration or "delay" expenses can be included in an appeal bond. District Courts in the Second Circuit have routinely held that administrative delay costs cannot be included in a Rule 7 appeal bond. For example, *In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95, 2010 WL 1253741, at *3 (S.D.N.Y. Mar. 5, 2010) the court held that "Class Counsel's contention that this bond should include the costs to the settlement fund *fails.*" (emphasis added) . Although *Currency Conversion* imposed a bond, the amount of the bond was based on "the voluminous record and the number of appellants." *Id.* The court declined to include any costs for delay or settlement administration expenses in its order and explicitly stated that the bond was to "cover the taxable costs of the appeals" only. Similarly, in *In re IPO Sec. Litig.*, 728 F. Supp. 2d 289 (S.D.N.Y. 2010), the court imposed a bond, but explicitly held that "Costs for delay and attorneys' fees, on the other hand, are not appropriate." *Id.*

Other Circuits are in agreement that administrative costs associated with the delay in implementing a settlement cannot be included in an appeal bond. The D.C. Circuit's ruling in *American President Lines, supra,* is widely cited for its clear holding that a Rule 7 bond may only include "that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39 . . . not attorneys' fees or other expenses." *Id.* at 717.

12

The Ninth Circuit also recently affirmed that "The district court may not include in an appeal bond any expenses beyond those referenced in Fed. R. App. Proc. 39 unless such expenses may be shifted pursuant to another statute." *In re Magsafe Apple Power Adapter Litig.*, 12-15757, 2014 WL 1624493 at *1 (9th Cir. Apr. 24, 2014). Regarding allowable costs, the court noted "these costs rarely exceed a few hundred dollars when taxed against an appellant." *Magsafe*, at *1. *Magsafe*'s holding is particularly instructive. The court found:

> The district court abused its discretion by requiring the objectors to post $15,000 appeal bonds given that the only applicable fee-shifting statute is Fed. R. App. Proc. 39. Accordingly, we vacate the district court's May 29, 2012, order. On remand, the district court may impose an appeal bond that more accurately reflects the amount that a prevailing appellee would be entitled to recover from a losing appellant under Fed. R. App. Proc. 39.

*Id.*

Some courts have found that costs of delay can only be included in a *supersedeas* bond available under Fed. R. App. Proc. 8 or Fed. R. Civ. Proc. 62(d). *See, e.g., Vaughn v. Am. Honda Motor Co.*, 507 F.3d at 298-99 *and American President Lines,* 779 F.2d at 717-18. Yet the word *"supersedeas"* and the relevant legal rules are entirely absent from the motion papers. When the plaintiffs sought to include identical administrative costs in an appeal bond in *Cobell v. Salazar*, 816 F. Supp. 2d 10 (D.D.C. 2011), the district court issued an order to show cause why plaintiffs should not be sanctioned for the request. *See also In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Products Liab. Litig.*, 2:11-MD-2233, 2014 WL 2931465 (S.D. Ohio June 30, 2014) (reducing bond amount from the $176,474.50 requested by plaintiffs, to $2,474.50 to cover expenses related to preparing and filing the appellate briefs, as well as printing and copying costs allowed under another statute). These authorities all affirm that a district court has no "inherent or rule-based power" to impose an appeal bond beyond "security for payment of costs on appeal." *American President Lines,* 779 F.2d at 716.

The authorities plaintiffs' cite to in support of their contention that administrative delay costs can be included in a Rule 7 bond should be scrutinized carefully:

> • The court *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004), determined that prospective administrative costs and attorney

13

fees could be included as part of the appeal bond, but did so based on the Tennessee statute giving rise to the suit, not Fed. R. App. Proc. 7. The court found that Tennessee's consumer protection statute underlying the class member's individual suit against drug manufacturers determined which fees could be included in the appeal bond. By contrast, plaintiffs' in this case have no statutory basis for inclusion of delay costs in their bond.

- *In re Compact Disc Minimum Advertised Price Antitrust Litig No. MDL 1361*, 2003 WL 22417252, at *1 (D. Me. Oct. 7, 2003), for example, imposed a $35,000 bond, but that amounted to less than 10% of the amount requested by plaintiffs (i.e., $350,300), and the court did not specify which costs the $35,000 were to cover.

- The bond in *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 124 (S.D.N.Y. 1999) included amounts that could be recovered under the Clayton Act. "Costs' under Rule 7 may include the definition of 'costs' contained in the relevant substantive statute under which appeal is sought . . . In the present action, the relevant substantive statute is section four of the Clayton Act, which provides for the recovery of the "cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15. Id., at 128.

- The plaintiffs in *In re Checking Account Overdraft Litigation*, 2012 U.S. Dist LEXIS 18384 (S.D. Fla. Feb. 14, 2012) sought both a Rule 7 bond and a Rule 8 *supersedeas* bond. That appeal was unfortunately dismissed shortly after the court's ruling on the bond motion, underscoring the concern that plaintiffs are hampering class members' ability to appeal through excessive bond requests.

- The large bond imposed in *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *6 (D. Minn. Sept. 11, 2012) was to be shared among 38 appellants. The bond was to include an additional $125,000 in class notice costs. In that case, the court found the objectors guilty of bad faith and vexatious conduct as one group of objectors were not even class members and had no standing to appeal.

The U.S. Supreme Court's decisions warn against unduly burdening the right to appeal and against improperly expanding the definition of taxable costs. In *Lindsey v. Normet*, 405 U.S. 56 (1972), the court found the excessive bond imposed by the lower court violated the Equal Protection Clause because it "arbitrarily discriminates against tenant wishing to appeal". . . . "heavily burden[ed]" the right to appeal and was "not necessary to effectuate the State's purpose of preserving the property at issue." More recently, in a case

considering taxable costs under 28 U.S.C. § 1920 the Supreme Court found that:

> "Taxable costs are limited to relatively minor, incidental expenses as is
> evident from § 1920, which lists such items as clerk fees, court reporter fees,
> expenses for printing and witnesses, expenses for exemplification and copies,
> docket fees, and compensation of court-appointed experts."

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012). The Court

reasoned that it "s[aw] no compelling reason to stretch the ordinary meaning of the cost items

Congress authorized in § 1920." *Id.*

In keeping with the important role objectors play in ensuring that class action

settlements are fair to absent class members, the court should reject the moving parties'

tactical effort aimed at limiting objectors' right to appeal. *See Eubank v. Pella Corp.*, 13-

2091, 2014 WL 2444388 at *3 (7th Cir. June 2, 2014) (noting "The case underscores the

importance both of objectors (for they are the appellants in this case—without them there

would have been no appellate challenge to the settlement) and of intense judicial scrutiny of

proposed class action settlements.")

## III.    CONCLUSION

Plaintiffs ask this court to interfere with objectors' ability to appeal this class action

settlement. Although the court determined the settlement was fair, this appellant believes the

court committed legal error by including the face value of the PINs in its valuation of the

settlement. This led to a further error in that the court awarded excessively high attorneys'

fees in light of the real cash value of the settlement. This appeal was brought in good faith to

improve the fairness of the settlement for all class members. The court would commit further

legal error by imposing an appeal bond sought entirely for the purpose of interfering with

objectors' ability to appeal. I respectfully request that the court reject the bond request

outright, or in the alternative, set the bond at the $1,000.00 to cover costs enumerated under

Fed. R. App. Proc. 39.

Dated:  July 20, 2015                          By:  _____

                                                     Kendrick Jan

                                                     Objector in pro per

## CERTIFICATE OF SERVICE

Re:  Case Name:          DEMMICK v. CELLCO PARTNERSHIP
     USCA Docket No.:    15-2286
     USDC Case No.:      06-2163 (JLL)

In the referenced matter, I certify that on July 20, 2015, I served the following document(s):

### OPPOSITION BY KENDRICK JAN TO MOTION TO REQUIRE OBJECTOR APPELLANTS TO POST BONDS ON APPEAL

as follows:

I faxed the document to the persons at their respective facsimile numbers:

**COURT APPOINTED CLASS COUNSEL:**
**Stephen L. Dreyfuss**
**Matthew E. Moloshok**
HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
One Gateway Center
Newark, New Jersey 07102-5323
Phone: (973) 621-9020
Fax: (973) 621 -7406

**Peter J. Bezek**
**Robert A. Curtis**
**J. Paul Gignac**
FOLEY BEZEK BEHLE & CURTIS, LLP
15 West Carrillo Street
Santa Barbara, California 93101
Phone: (805) 962-9495
Fax: (805) 962-0722

**COUNSEL FOR DEFENDANT CELLCO PARTNERSHIP:**
**Philip R. Sellinger**
**Todd L. Schleifstein**
GREENBERG TRAURIG, LLP
200 Park Avenue
PO Box 677
Florham Park, NJ 07932-0677
Phone: (973) 360-7900
Fax: (973) 301-8410
Email: sellingerp@gtlaw.com
Email: schleifsteint@gtlaw.com

**Heather V. Taylor**
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 639-5905
Fax: (973) 624-7070

I further certify that on July 20, 2015, I mailed the document by First-Class Mail, postage prepaid, to each of the following:

**COUNSEL FOR OBJECTOR KIMBERLY BAKER:**
**W. Allen McDonald, Esq.**
249 N Peters Road, Suite 101
Knoxville, TN 37923-4917

**OBJECTORS PRO SE:**

| Janet S. Hale | Wanda J. Cochran |
|---|---|
| 1033 Williams Rd. | 1385 Russell Drive |
| Burnet, TX 78611-5652 | Streetsboro, Ohio 44241 |
| John Finn | Michael J. Rinis |
| 5241 Del Sur Cir. | 4128 NW 13th Street |
| La Palma, CA 90623-2211 | Gainesville, FL 32609 |
| | |
| Michael Narkin | Thomas D. Domonoske |
| 85391 Chezem Road | 461 Lee Avenue |
| Eugene, OR 97405 | Harrisburg, VA 22802 |

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Dated: July 20, 2015

Kendrick Jan
Objector in pro per